## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § | **CASE NO. 15-70095-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 LLC;** | § | **CASE NO. 15-70096-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § | **CASE NO. 15-70097-rbk** |
| | § | |
| **Jointly Administered Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 15-70094-rbk)** |
| | § | |

## FIRST AMENDED DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC

HOLLAND & KNIGHT LLP
Robert W. Jones
Brent R. McIlwain
Brian Smith
200 Crescent Court, Suite 1600
Dallas, TX  75201
Telephone:     (214) 964-9500
Facsimile:     (214) 964-9501

*Counsel for the*
*Debtors and Debtors in Possession*

Dated: January 5, 2016

## TABLE OF CONTENTS

ARTICLE 1.  INTRODUCTION AND BACKGROUND.............................................6

    A.    SUMMARY.........................................................................6

    B.    THE CHAPTER 11 CASES ..........................................................8

    C.    THE DISCLOSURE STATEMENT ....................................................8

    D.    BANKRUPTCY COURT APPROVAL OF THIS DISCLOSURE STATEMENT.......................8

    E.    HOLDERS OF CLAIMS ENTITLED TO VOTE ..........................................9

ARTICLE 2. THE PLAN PROPONENTS RECOMMEND THAT HOLDERS OF CLAIMS IN CLASS 2 VOTE TO ACCEPT THE PLAN. ...................................................10

    A.    OVERVIEW OF PLAN TREATMENT ................................................10

ARTICLE 3. THE DEBTORS AND THESE CHAPTER 11 CASES .........................................15

    A.    CORPORATE STRUCTURE AND OWNERSHIP ..........................................15

    B.    OVERVIEW OF ASSETS AND LIABILITIES ..........................................16

    C.    EMPLOYEES ....................................................................16

    D.    EVENTS LEADING TO THE FILING OF THE CHAPTER 11 CASES .........................17

    E.    THE DEBTORS' CHAPTER 11 CASES ..............................................17

ARTICLE 4. THE PLAN ....................................................................18

ARTICLE 5. CONFIRMATION PROCEDURES; CONFIRMATION HEARING ...................18

    A.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN............................19

    B.    BEST INTERESTS OF CREDITORS TEST/LIQUIDATION ANALYSIS ...........................20

    C.    PROJECTIONS/FEASIBILITY.......................................................21

    D.    ACCEPTANCE BY IMPAIRED CLASSES...............................................22

    E.    CONTACT FOR MORE INFORMATION ................................................23

ARTICLE 6. PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN...........................23

    A.    PARTIES-IN-INTEREST MAY OBJECT TO THE CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...........................................................23

    B.    FAILURE TO SATISFY VOTE REQUIREMENT ..........................................24

    C.    THE DEBTORS MAY NOT BE ABLE TO SECURE CONFIRMATION OF THE PLAN........24

    D.    NONCONSENSUAL CONFIRMATION .................................................25

    E.    THE REORGANIZED DEBTORS MAY OBJECT TO THE AMOUNT OR CLASSIFICATION OF A CLAIM................................................25

#37935173

F.     RISK OF NON-OCCURRENCE OF THE EFFECTIVE DATE ............................................25

G.     CONTINGENCIES NOT TO AFFECT VOTES OF IMPAIRED CLASSES TO ACCEPT OR REJECT THE PLAN ......................................................................................................25

H.     RISK FACTORS THAT MAY AFFECT DISTRIBUTIONS UNDER THE PLAN ...................25

I.     RISK FACTORS RELATING TO SECURITIES LAWS .....................................................25

J.     DISCLOSURE STATEMENT DISCLAIMER.....................................................................26

K.     LIQUIDATION UNDER CHAPTER 7 .............................................................................26

L.     ALTERNATIVE PLAN OF REORGANIZATION ..............................................................26

M.     INHERENT UNCERTAINTY OF PROJECTED DISTRIBUTION ANALYSIS ......................26

N.     RISKS RELATED TO ASSUMPTION OF FRANCHISE AGREEMENTS.............................27

O.     RISKS RELATED TO PLAN VOTING CLASSIFICATION .................................................27

ARTICLE 7. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES...........................28

ARTICLE 8.   29

DEFINED TERMS ............................................................................................................29

ARTICLE 9. CONCLUSION AND RECOMMENDATION......................................................29

#37935173

## NOTICE

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC FILED BY THE DEBTORS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN. YOU SHOULD NOT RELY UPON OR USE THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS

DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTORS' POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. RATHER, HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE REORGANIZED DEBTORS MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS. THE PLAN RESERVES FOR THE REORGANIZED DEBTORS THE RIGHT TO BRING CAUSES OF ACTION AND RETAINED CAUSES OF ACTION (DEFINED IN THE PLAN) AGAINST ANY ENTITY OR PARTY IN INTEREST EXCEPT THOSE SPECIFICALLY RELEASED.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED THEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS FROM INFORMATION PROVIDED BY THE DEBTORS AND THE DEBTORS' PRIOR STATEMENTS AND PLEADINGS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.

NO ENTITY HAS AUDITED THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT, WHICH IS BASED, IN PART, UPON INFORMATION PREPARED BY PARTIES OTHER THAN THE DEBTORS. ALTHOUGH THE DEBTORS HAVE MADE EVERY REASONABLE EFFORT TO BE ACCURATE IN ALL MATERIAL MATTERS, THE DEBTORS ARE UNABLE AND DO NOT WARRANT OR REPRESENT THAT ALL THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE.

#37935173

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT, THEY HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND EQUITY INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE FILING OF THIS DISCLOSURE STATEMENT. HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

## ARTICLE 1.[1]
## INTRODUCTION AND BACKGROUND

**A.      Summary**

Pursuant to section 1125 of the Bankruptcy Code, the Debtors submit this Disclosure Statement to Holders of Claims and Equity Interests in connection with (a) the solicitation of votes to accept or reject the Plan dated as of December 10, 2015, a copy of which is annexed hereto as **Exhibit A** (and incorporated herein for all purposes), and (b) the Confirmation Hearing, which the Debtors intend to request that the Bankruptcy Court schedule on or before January 29, 2016.

The Debtors filed the Plan concurrently with this Disclosure Statement. As described in Article 4.E.2 of the Plan, the Plan provides for two alternative paths to consummate the Plan: (i) the Refinancing Confirmation Option and; (ii) the Conversion Confirmation Option. The Refinancing Confirmation Option allows the Debtors to satisfy and discharge the Senior Lender Claims through the Refinancing Transactions. If the Debtors satisfy all requirements for the Refinancing Confirmation Option by the RCO Deadline, then the Refinancing Confirmation Option shall be implemented. If the Debtors do not satisfy all requirements for the Refinancing Confirmation Option, then the Conversion Confirmation Option shall be implemented.

If the Refinancing Confirmation Option is implemented, then the Senior Lender will receive, on the Effective Date, the Refinancing Transactions Payoff Amount.  For the avoidance of Doubt, if the Refinancing Confirmation Option is selected, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

#37935173

If the Conversion Confirmation Option is implemented, on the Effective Date:

1.  The Senior Lender will receive on the Effective Date all of the New RREAF Manager LLC Interests; and

2.  The Senior Lender shall retain its claims against the Debtors and Reorganized Debtors, the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and Reorganized Debtors, and the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors, the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and

3.  The Prepetition Loan Documents shall be amended to provide (i) for a maturity date of January 31, 2017, and (ii) to the extent that a monthly interest payment exceeds the Reorganized Debtors' excess cash flow, that portion of such monthly interest payment shall be paid in kind (all such paid in kind interest shall be added to the principal amount outstanding of the debt under the Prepetition Loan Agreements and shall accrue interest at the applicable rate set forth in the Prepetition Loan Agreements).  At any time prior to the Effective Date, the Senior Lender shall have the option to elect to have a portion of the Senior Lender's claims converted, upon the Effective Date, to New RREAF Manager LLC Interests.

If the Conversion Confirmation Option is selected, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

All Holders of Allowed Secured Governmental Unit Claims, Other Secured Claims, and Unsecured Priority Claims will be paid in full or otherwise rendered Unimpaired on the Effective Date; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed Unsecured Priority Claim in Class 4 or Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

If the Refinancing Confirmation Option is implemented, then all Holders of General Unsecured Claims shall be paid in respect of such Claim the full amount thereof in Cash on the later of the on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claims become Allowed, provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

However, if the Conversion Confirmation Option is implemented, then Holders of General Unsecured Claims will be discharged and eliminated, without payment or receipt of any

7

distributions of property from the Estates under the Plan on account of such Claims (provided, however, that Holders of RREAF2 Specified General Unsecured Claims and RREAF3 Specified General Unsecured Claims will retain the right to receive distributions from the RREAF2 Specified General Unsecured Account or RREAF3 Specified General Unsecured Account, as applicable, which accounts are not property of the Estates).

If the Refinancing Confirmation Option is implemented, then all Holders of Allowed Equity Interests in RREAF2 Manager and RREAF3 Manager shall retain their Pro Rata Equity Interests in such Debtors.  If the Conversion Confirmation Option is implemented, all Equity Interests in RREAF2 Manager and RREAF3 Manager will be cancelled on the Effective Date and receive no Distribution from the Estates under the Plan. The equity structure of RREAF2 and RREAF3 will remain the same under either confirmation option.

As set forth in the Plan, under both the Refinancing Confirmation Option and the Conversion Confirmation Option, the Debtors intend to assume, on the Effective Date, all of their Executory Contracts, other than (i) Executory Contracts that have previously been assumed or rejected, (ii) Executory Contracts that are subject to a separate motion, pending on the Effective Date, to assume or reject such Executory Contract, and (iii) Executory Contracts that are identified on the Contracts Schedule as rejected agreements.  The Debtors believe that they will have ample liquidity under either the Refinancing Confirmation Option or Conversion Confirmation Option to satisfy all anticipated cure claims associated with the assumption of such Executory Contracts.

**The Debtors believe that the Plan provides the best recoveries possible for Holders of Allowed Claims and strongly recommends that, if such Holders are entitled to vote, they vote to accept the Plan.**

## B.     The Chapter 11 Cases

On July 8, 2015, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and in connection with the solicitation of acceptances of the Plan.

## C.     The Disclosure Statement

The purpose of this Disclosure Statement is to set forth information that (a) outlines the history of the Debtors and their business and (b) summarizes the Plan. No solicitation for votes on the Plan may be made except pursuant to this Disclosure Statement.

## D.     Bankruptcy Court Approval of this Disclosure Statement

The Debtors intend to request that the Bankruptcy Court hold a hearing to consider and approve this Disclosure Statement on or before January 10, 2016, finding that it contains adequate information of a kind and in sufficient detail to enable each Creditor of the Debtors to make an informed judgment as to whether to vote to accept or reject the Plan.

#37935173

## E.    Holders of Claims Entitled to Vote

Pursuant to the provisions of the Bankruptcy Code, only Holders of allowed Claims or Equity Interests in Classes of Claims or Equity Interests that are Impaired and that are not deemed to have rejected the Plan are entitled to vote to accept or reject the Plan. Classes of Claims or Equity Interests that are Impaired but will not receive or retain any property under the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Classes of Claims or Equity Interests in which the Holders of Claims or Equity Interests are Unimpaired under the Plan are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. For a detailed description of the treatment of Claims and Equity Interests under the Plan, see Article 3.D of this Disclosure Statement.

Claims in Class 2[2] (Senior Lender Claims) of the Plan are Impaired, and to the extent Claims in Class 2 are Allowed, the Holders of such Claims will receive distributions under the Plan. As a result, Holders of Claims in that Class are entitled to vote to accept or reject the Plan. Under the Plan, the only Impaired Class that will be entitled to vote in respect of the Plan will be Class 2 (Senior Lender Claims).  In the event that Class 2 does not vote in favor of the Plan, the Debtors' ability to confirm the Plan may be impeded, and in such instance, the Debtors may need to modify or withdraw the Plan.

If, and to the extent any other Class identified as being Unimpaired is Impaired (whether as a result of the terms of the Plan or any modification or amendment thereto), upon such determination, such Class shall be entitled to vote to accept or reject the Plan.

Claims in Class 1 (Secured Governmental Unit Claims), Class 3 (Other Secured Claims), Class 4 (Unsecured Priority Claims), and Classes 6A and 6C (Equity Interests in the subsidiaries) are Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims and Equity Interests in those Classes are therefore conclusively presumed to have accepted the Plan, and the votes of Holders of such Claims and Interests will therefore not be solicited.

Claims in Class 5 (General Unsecured Claims) and Classes 6B and 6D (RREAF2 Manager and RREAF3 Manager Equity Interests) will be rendered Unimpaired if the Refinancing Confirmation Option is implemented.  If the Refinancing Confirmation Option is Implemented, pursuant to Section 1126(f) of the Bankruptcy Code, Holders of Claims and Interests in Such Classes will be conclusively presumed to have accepted the Plan.  However, if the Conversion Confirmation Option is implemented, Holders of Claims and Interests in Class 5 (General Unsecured Claims), and Classes 6B and 6D (RREAF2 and RREAF3 Manager Equity Interests) will receive no Distribution from the Estates under the Plan.  If the Conversion Confirmation Option is implemented, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in those Classes are therefore conclusively presumed to have rejected the Plan.  Consequently, the votes of Holders of such Claims and Equity Interests will not be solicited.

---

[2]    As set forth below, the Plan provides for six primary Classes 1 through 6, which are each further divided into sub-classes A through D. Unless otherwise specified, any reference to a primary Class shall include and be a reference to all sub-classes within such primary Class. For example, a reference to Class 2 shall be considered a reference to Classes 2A, 2B, 2C, and 2D.

#37935173

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the Plan.

If a Class of Claims rejects the Plan, the Debtors may request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code permits the confirmation of a plan of reorganization notwithstanding the rejection of a plan by one or more impaired classes of claims or equity interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting class.

**ARTICLE 2.**
**THE PLAN PROPONENTS RECOMMEND THAT HOLDERS OF CLAIMS**
**IN CLASS 2 VOTE TO ACCEPT THE PLAN.**

**A.      Overview of Plan Treatment**

The following table summarizes the classification and treatment of Allowed Administrative Claims, Claims, and Equity Interests under the Plan:

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| -- | Administrative Claims: Non-Professional Fee Claims | Paid in full, in Cash without interest, on the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Administrative Claim; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating to such Ordinary Course Administrative Claims. | 100% |
| -- | Professional Fee Claims | Paid in full, in Cash, without interest in accordance with the Interim Compensation Order and/or any order of the Bankruptcy Court entered with respect to final fee applications filed by any Professional. Notwithstanding anything herein or in the Plan to the contrary: (i) the aggregate amount of Professional Fee Claims payable by the Debtors and/or the Reorganized Debtors (including all amounts paid by the Debtors after the Petition Date and prior to the Effective Date) shall not exceed the Debtors' Fee Cap; and (ii) any Professional Fee Claims by persons other than the Debtors' counsel | 100% |

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | associated with the marketing and/or refinancing of the Properties shall not be Allowed. | |
| -- | Priority Tax Claims | Unimpaired.<br><br>As shall have been determined by the Reorganized Debtors, each Holder shall be entitled to receive (a) on the Initial Distribution Date, Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (b) deferred Cash payments over time pursuant to section 1129(a)(9)(C) of the Bankruptcy Code in an aggregate principal amount equal to the face amount of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Plan is confirmed, or (c) such other less favorable treatment as to which the Reorganized Debtors and such Holder shall have agreed upon in writing | 100% |
| 1 | Secured Governmental Unit Claims | Unimpaired.<br><br>On the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Secured Governmental Unit Claim, the Holder of such Allowed Secured Governmental Unit Claim shall receive at the election of the Reorganized Debtors, in full satisfaction, settlement, release, and discharge of and in exchange for, such Allowed Secured Governmental Unit Claim, (a) Cash equal to the value of its Allowed Secured Governmental Unit Claim, (b) the return of the Holder's Collateral securing the Secured Governmental Unit Claim, (c) payment in full as provided under sections 1129(a)(9)(C) and (D) of the Bankruptcy Code on the schedule provided for payment of General Unsecured Claims, or (d) such other less favorable treatment to which the Reorganized Debtors and such Holder shall have agreed upon in writing. To the extent such payments are paid over time, such payments shall be calculated to result in payment in full of the | 100% |

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | Allowed Secured Governmental Unit Claim with all accrued interest. | |
| 2 | Senior Lender Claims | Impaired.<br><br>The Senior Lender will receive on the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Senior Lender Claim the following treatment:<br><br>(a)      If the Refinancing Confirmation Option is implemented, then the Senior Lender will receive on the Effective Date: the Refinancing Transactions Payoff Amount.  If the Refinancing Confirmation Option is implemented, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.<br><br>or<br><br>(b)      If the Conversion Confirmation Option is implemented, then the Senior Lender will receive on the Effective Date all of the New RREAF Manager LLC Interests.  Further, if the Conversion Confirmation Option is implemented, from and after the Effective Date: (i) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (ii) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (iii) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (iv) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (v) all obligation sunder the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.  The Prepetition Loan Documents shall be amended to provide (a) for a maturity date of January 31, 2017; (b) to the | Unliquidated |

12

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | extent that a monthly interest payment exceeds the Reorganized Debtors' excess cash flow, that portion of such monthly interest payment shall be paid in kind (all such paid in kind interest shall be added to the principal amount outstanding of the debt under the Prepetition Loan Agreements and shall accrue interest at the applicable rate set forth in the Prepetition Loan Agreements).  At any time prior to the Effective Date, the Senior Lender shall have the option to elect to have a portion of the Senior Lender's claims converted, upon the Effective Date, to New RREAF Manager LLC Interests. | |
| 3 | Other Secured Claims | Unimpaired.<br><br>Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Other Secured Claim in Class 3 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Other Secured Claim, at the option of the Debtors or Reorganized Debtors:<br><br>(a)    have its Allowed Class 3 Claim reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of such Allowed Class 3 Claim to demand or receive payment of such Allowed Class 3 Claim prior to the stated maturity of such Allowed Class 3 Claim from and after the occurrence of a default; or<br><br>(b)    receive Cash in an amount equal to such Allowed Class 3 Claim, including any interest on such Allowed Class 3 Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 3 Claim. | 100% |

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| 4 | Unsecured Priority Claims | Unimpaired. Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Unsecured Priority Claim in Class 4 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Unsecured Priority Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Unsecured Priority Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed Unsecured Priority Claim in Class 4 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount. | 100% |
| 5 | General Unsecured Claims | Unimpaired if the Refinancing Confirmation Option is implemented, Impaired if the Conversion Confirmation Option is implemented (a)     If the Refinancing Confirmation Option is implemented, then, except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed General Unsecured Claim in Class 5 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed General Unsecured Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 5 General Unsecured Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount. (b)     If the Conversion Confirmation Option is implemented, then, on the Effective Date, all | 100% if the Refinancing Confirmation Option is implemented 0% if the Conversion Confirmation Option is implemented |

14

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | General Unsecured Claims will be discharged and eliminated, and the Holders of any General Unsecured Claims will not receive any distributions or property from the Estates under the Plan on account of such Claims. | |
| 6A, 6C | Equity Interests (RREAF2 and RREAF3) | Unimpaired. Holders of Allowed Equity Interests in Class 6A and Class 6C shall retain their equity interests in such entities. | N/A |
| 6B, 6D | Equity Interests (RREAF2 Manager and RREAF3 Manager) | Unimpaired if the Refinancing Confirmation Option is implemented, Impaired if the Conversion Confirmation Option is implemented (a)    If the Refinancing Confirmation Option is implemented, then Holders of Allowed Equity Interest in Classes 7B and 7D shall retain their Pro Rata Equity Interests in such Debtors. (b)    If the Conversion Confirmation Option is implemented, Holders of Allowed Equity Interests in Classes 7B and 7D shall have their Equity Interests cancelled and receive no Distribution from the Estates under the Plan. | Unliquidated |

## ARTICLE 3.
## THE DEBTORS AND THESE CHAPTER 11 CASES

**A.    Corporate Structure and Ownership**

The Debtors, for purposes of this Disclosure Statement and the Plan, include the following entities:

- RREAF O&G Portfolio #2 LLC;

- RREAF O&G Portfolio #2 Manager LLC;

- RREAF O&G Portfolio #3 LLC; and

- RREAF O&G Portfolio #3 Manager LLC.

#37935173

Each of the Debtors are Delaware limited liability companies.  RREAF O&G Portfolio #2 LLC is a wholly-owned subsidiary of RREAF O&G Portfolio #2 Manager LLC.  RREAF O&G Portfolio #3 is a wholly-owned subsidiary of RREAF O&G Portfolio #3 Manager LLC.

Non-debtor RREAF O&G Portfolio #2 Investors LLC owns 100% of RREAF O&G Portfolio #2 Manager LLC.  Non-debtor RREAF Holdings (O&G Hospitality Portfolio Number 3) owns 100% of RREAF O&G Portfolio #3 Manager LLC.

## B.    Overview of Assets and Liabilities

### 1.    The Debtors' Assets

The Debtors, which are headquartered in Dallas, Texas, are owners and eight commercial real estate hotel Properties.  These Properties are located in areas with high concentrations of oil and gas activity, including Midland, Texas.  Accordingly, the Debtors' business is closely tied to the oil and gas labor market, as many of the workers in those areas do not live in the area and therefore, require hotel accommodations.  Substantially all of the Properties are branded with well-known hotel franchises or "flags."

### 2.    The Debtors' Liabilities

(i)    *Senior Lender Claims*

RREAF2 and RREAF2 Manager are parties to a Loan Agreement dated as of April 30, 2014 (as amended from time to time, the "RREAF 2 Loan Agreement"), with Spectrum Origination as lender.  The original term of the loan evidenced by the RREAF2 Loan Agreement was one year, but the term was extended pursuant to a forbearance agreement to May 20, 2015.  As of the Petition Date, the aggregate principal amount outstanding under the RREAF2 Loan Agreement is approximately $39,118,351.

RREAF3 and RREAF3 Manager are parties to a Loan Agreement dated as of November 21, 2014 (as amended from time to time, the "RREAF3 Loan Agreement", and collectively, with the RREAF2 Loan Agreement, the "Prepetition Loan Agreements"), with Spectrum Origination as lender.  The original term of the loan evidenced by the RREAF3 Loan Agreement was also extended to May 20, 2015 pursuant to a forbearance agreement.  As of the Petition Date, the aggregate principal amount outstanding under the RREAF3 Loan Agreement is approximately $5,128,000.  Collectively, the RREAF2 Loan Agreement and RREAF3 Loan Agreement are referred to herein and in the Plan as the "Loan Agreements."  The Debtors' obligations to Spectrum Origination under the Prepetition Loan Agreements are secured by liens on substantially all of the Debtors' assets, including their hotel Properties.

## C.    Employees

None of the Debtors has any employees. Operations at the Properties are managed by a third-party management service provider, Channel Point Hospitality LLC ("Channel Point").  Channel Point provides, among other things, all employees necessary for the operation of the Properties.

#37935173

**D.      Events Leading to the Filing of the Chapter 11 Cases**

The financing obtained under the Prepetition Loan Agreements was intended to be a bridge facility to assist the Debtors in acquiring their Properties.  Prior to the Petition Date, the Debtors were actively pursuing a refinancing of their obligations to Spectrum Origination and the Senior Lender.  Though the Debtors attempted to negotiate an additional forbearance with Spectrum Origination in order to allow them to complete a refinancing of such obligations, the Debtors and Spectrum Origination were not able to reach final agreement regarding the terms of such a forbearance.

On July 6, 2015, Spectrum Origination began to exercise remedies against the Debtors, which would have impeded their ability to operate on an ongoing basis.  Consequently, the Debtors filed these cases on the Petition Date (July 8, 2015) in order to provide them with a breathing spell needed to complete their potential refinancing efforts.  The Plan preserves the Debtors' ability to complete such a refinancing, through the Refinancing Confirmation Option, so long as such refinancing is completed by the RCO Deadline.

**E.      The Debtors' Chapter 11 Cases**

The Debtors have continued to operate their business as Debtors and Debtors-in-Possession as authorized under sections 1107(a) and 1108 of the Bankruptcy Code.  Certain milestone events during the Debtors' Chapter 11 Cases are described below.

**1.      <u>Significant Events in the Debtors' Chapter 11 Cases</u>**

*(i)      Cash Collateral*

On the Petition Date, the Debtors filed a motion seeking the authority to use the Senior Lender's Cash Collateral.  The Bankruptcy Court entered an interim order authorizing cash collateral usage on July 13, 2015, and approved Cash Collateral usage on a final basis by order entered on October 7, 2015 (and subsequently corrected on October 20, 2015).  Pursuant to the final cash collateral order the Debtors are authorized to use Cash Collateral through December 31, 2015.  The Debtors anticipate that Spectrum Origination will extend the Debtors' ability to use Cash Collateral on the existing terms set forth in the final cash collateral order through the Plan's Effective Date.

*(ii)      Retention of Professionals*

The Bankruptcy Court entered an order authorizing the Debtors to retain Holland & Knight LLP, as their general bankruptcy counsel, on September 1, 2015. The Bankruptcy Court also entered an order on October 17, 2015, establishing compensation procedures for the Debtors' professionals whereby a percentage of fees and expenses of the Debtors' and other professionals may be paid on a monthly basis, subject to objection by certain parties and final approval by the Bankruptcy Court.

#37935173

(iii)    *Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs; Intercompany Receivables*

The Debtors filed their Schedules and Statements of Financial Affairs on August 10, 2015. The Schedules are available for inspection online.

(iv)    *Extension of Plan Exclusivity Period*

The Debtor's exclusivity period to file a plan pursuant to section 1121(d) of the Bankruptcy Code was extended to December 10, 2015, without prejudice to the Debtors' ability to request subsequent extensions of their exclusive plan proposal periods.  The Debtors' exclusive right to solicit acceptances of the Plan has been extended to January 31, 2015, without prejudice to the Debtors' right to request subsequent extensions of such periods.

(v)    *The Debtors' Plan*

On December 10, 2015, the Debtors filed their Plan, which provides for the restructuring of the Senior Lender Claims and other Claims and Equity Interests through one of two options: the Refinancing Confirmation Option or the Conversion Confirmation Option.

## ARTICLE 4.  THE PLAN

For purposes of this Disclosure Statement, the terms, conditions, and limitations set forth in the Plan, annexed hereto as <u>Exhibit A</u>, are incorporated by reference as if fully set forth herein.

## ARTICLE 5.
## CONFIRMATION PROCEDURES; CONFIRMATION HEARING

The Debtors intend to request that the Confirmation Hearing be held on or before January 29, 2016. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

All Plan objections must be filed with the Bankruptcy Court and served on counsel for the Plan Proponents and certain other parties, in accordance with the order of the Bankruptcy Court approving the Disclosure Statement, on or before the deadline set by the Bankruptcy Court.

Subject to the limitations contained in the Plan: (a) prior to the entry of the Confirmation Order, the Debtors expressly reserve the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code; if the Debtors make material changes in the terms of the Plan, the Debtors will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court); and (b) after the entry of the Confirmation Order, the Reorganized Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

#37935173

**<u>Plan objections must be served on all of the following parties:</u>**

**Counsel to the Debtors:**

> HOLLAND & KNIGHT LLP
> 200 Crescent Court, Suite 1600
> Dallas, TX 752011
> Attn: Brent R. McIlwain

**Counsel to Spectrum Origination:**

> **KING & SPALDING LLP**
> 1180 Peachtree Street NE
> Atlanta, GA 30309
> Attn: Sarah Borders

**Clerk of the Bankruptcy Court:**

> **CLERK OF THE BANKRUPTCY COURT**
> U.S. Bankruptcy Court for the Western District of Texas
> 615 E. Houston Street, Room 597
> San Antonio, TX 78205

**United States Trustee:**

> OFFICE OF THE UNITED STATES TRUSTEE
> 615 E. Houston Street, Suite 533
> San Antonio, TX 78205
> Attn: James Rose

## A.    Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The Debtors have complied with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (a) made before the Confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

#37935173

5.      Each Holder of an Impaired Claim or Interest either has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

6.      Each Class that is entitled to vote on the Plan will have accepted the Plan or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code.

7.      Except to the extent the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Priority Tax Claims will be paid in full on the later of: (a) the Effective Date (or, if not then due, as soon as practicable after the date when such Allowed Administrative Claim or Priority Tax Claim is due); (b) if such Claim is Allowed after the Effective Date, as soon as practicable after the date such Claim is Allowed (or, if not then due, as soon as practicable after the date such Allowed Administrative Claim or Priority Tax Claim is due); (c) at such time and upon such terms as may be agreed upon by such Holder and the Reorganized Debtors; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

8.      The required filing fees have been or will be paid on the Effective Date pursuant to 28 U.S.C. §1930.

9.      The Reorganized Debtors will pay quarterly fees to the Office of the U.S. Trustee, when due, until the case is closed, converted, or dismissed, whichever occurs first.

**B.      Best Interests of Creditors Test/Liquidation Analysis**

Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property with a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the bankruptcy court must: (a) estimate the Cash liquidation proceeds that a chapter 7 trustee would generate if each Debtor's chapter 11 cases were converted to a chapter 7 case and the assets of such Debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation distribution to the Plan distribution that such holder would receive if the Plan were confirmed.

In chapter 7 cases, creditors and equity interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

#37935173

The Debtors believe that the chapter 7 liquidation value available for satisfaction of Claims and Interests in the Debtors would be reduced by: (a) the costs, fees, and expenses of the liquidation under Chapter 7, which would include disposition expenses and the compensation of one or more trustees and their counsel and other retained professionals, (b) the fees of the Chapter 7 trustee(s) and (c) certain other costs arising from conversion of these Chapter 11 Cases to Chapter 7. Further, in a chapter 7 liquidation, Channel Point and the Debtors' Affiliates that currently provide management and strategic advice would be unlikely to continue providing such services that are essential to the operation of the Properties. It is a reasonable assumption that without the benefit of such services, the Debtors' financial performance would quickly deteriorate.

Attached to this Disclosure Statement as **Exhibit B** is an analysis of the estimated distributions under the Plan and a hypothetical chapter 7 liquidation analysis that has been prepared by the Debtors. Assumptions related to both are included with that analysis.

As is evident from the estimated distributions and liquidation analysis, the Debtors believe that Creditors will benefit from the Plan. If the Debtors' assets are liquidated by a Chapter 7 trustee, the maximum recovery will be less than under the Plan.

It is also anticipated that a Chapter 7 liquidation would result in a significant delay in payments being made to Creditors. Bankruptcy Rule 3002(c) provides that conversion of Chapter 11 cases to Chapter 7 will trigger a new bar date for filing claims against the Estates, and that the new bar date will be more than 90 days after these Chapter 11 Cases convert. Not only would a Chapter 7 liquidation delay distribution to Creditors, but it is possible that additional Claims that were not asserted in these Chapter 11 Cases, or were late-filed, could be filed against the Estates. Reopening the Bar Dates in connection with conversion to Chapter 7 would provide these and other claimants an additional opportunity to timely file Claims against the Estates.

For the reasons set forth above, the Debtors believe that the Plan provides a superior recovery for the Holders of Claims, and the Plan meets the requirements of the Bankruptcy Code's "best interests test."

## C. Projections/Feasibility

Section 1129(a) (11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by the liquidation of the Debtors or the need for further financial reorganization, unless the Plan contemplates such liquidation.

Attached hereto as **Exhibit C** is an analysis of projected cash flows and expenses of the Reorganized Debtors under the Plan's Refinancing Confirmation Option (the "Projections"). These Projections show that if the Plan is confirmed pursuant to the Refinancing Confirmation Option, the Reorganized Debtors will generate enough cash flow to support their obligations and fund their operations.[3] The Debtors believe that the Plan complies with the financial feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

---

[3] Because under the Conversion Confirmation Option, ownership of the Properties will be essentially returned to the only Impaired Class of Claims that is entitled to vote in respect of the Plan, no Projections for the Conversion Confirmation Option have been prepared.

#37935173

The Projections are based on numerous assumptions, including confirmation and consummation of the Plan in accordance with its terms; industry performance; no material adverse changes in applicable legislation or regulations, or the administration thereof, or generally accepted accounting principles; no material adverse changes in general business and economic conditions; no material adverse changes in competition; the Reorganized Debtors' retention of key internal and external management and management service providers; the absence of material contingent or unliquidated litigation, indemnity, or other claims; and other matters, many of which will be beyond the control of the Reorganized Debtors and some or all of which may not materialize.

To the extent that the assumptions inherent in the Projections are based upon future business decisions and objectives, they are subject to change. In addition, although they are presented with numerical specificity and are based on assumptions considered reasonable by the Debtors, the assumptions and estimates underlying the Projections are subject to significant business, economic, and competitive uncertainties and contingencies, many of which will be beyond the control of the Reorganized Debtors. Accordingly, the Projections are only estimates and are necessarily speculative in nature. It can be expected that some or all of the assumptions in the Projections will not be realized and that actual results will vary from the Projections, which variations may be material and are likely to increase over time. In light of the foregoing, readers are cautioned not to place undue reliance on the Projections. The Projections were not prepared in accordance with standards for projections promulgated by the American Institute of Certified Public Accountants or with a view to compliance with published guidelines of the SEC regarding projections or forecasts. The Projections have not been audited, reviewed, or compiled by any independent public accountants. The projected financial information contained in this Disclosure Statement should not be regarded as a representation or warranty by the Agent, the Debtors, the Reorganized Debtors, the Senior Lender, their respective advisors, or any other Person that the Projections can or will be achieved.

The Projections should be read together with the information in Article 6 of this Disclosure Statement entitled "Plan-Related Risk Factors and Alternatives to Confirmation and Consummation of the Plan" which sets forth important factors that could cause actual results to differ from those in the Projections.

The Debtors do not intend to update or otherwise revise the Projections, including any revisions to reflect events or circumstances existing or arising after the date of this Disclosure Statement or to reflect the occurrence of unanticipated events, even if any or all of the underlying assumptions do not come to fruition. Furthermore, the Debtors do not intend to update or revise the Projections to reflect changes in general economic or industry conditions.

**D.      Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described below, each class of claims or equity interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable, and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original

#37935173

terms of such obligation; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled or any fixed price at which the debtor may redeem the security.

Any "impaired" Classes of Claims or Equity Interests that will receive no distributions from the Estates in respect of such Claims or Equity Interests are deemed to have rejected the Plan, and therefore, solicitation of acceptances of such impaired Classes of Claims or Equity Interests receiving no property or distributions from the Estates pursuant to the Plan is not required.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired interests as acceptance by holders of at least two-thirds in amount and more than one-half in number of such interests.

The following Class of Claims is Impaired and entitled to vote in respect of the Plan:

- Class 2 – Senior Lender Claims.

### E.     Contact for More Information

Any interested party desiring further information about the Plan may contact legal counsel to the Debtors by writing to Holland & Knight LLP, 200 Crescent Court, Suite 1600, Dallas, TX 75201, Attn: Brent R. McIlwain.

## ARTICLE 6.
## PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND/OR EQUITY INTERESTS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.

### A.     Parties-in-Interest May Object to the Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Plan creates six primary Classes, each with four sub-Classes, of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#37935173

**B.**     **Failure to Satisfy Vote Requirement**

If votes are received in an amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan. Because there is only one Impaired Class of Claims or Equity Interests that is entitled to vote in respect of the Plan (Class 2 Senior Lender Claims), any rejection of the Plan by the Holders of Class 2 Senior Lender Claims could impede the Debtors' ability to confirm the Plan.

In the event that sufficient votes to confirm the Plan are not received, the Debtors may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims and Equity Interests as those proposed in the Plan.

**C.**     **The Debtors May Not Be Able to Secure Confirmation of the Plan**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, including, among other requirements, a finding by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization; and (c) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim and/or Equity Interest might challenge whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in the Plan. If the Plan is not confirmed, it is unclear what Distributions, if any, Holders of Allowed Claims and Equity Interests would receive with respect to their Allowed Claims and/or Equity Interests.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for confirmation. The Debtors, in conjunction with their advisors, continue to evaluate any and all possibilities to ensure that the best recoveries for all constituencies are realized. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan.

#37935173

### D.     Nonconsensual Confirmation

In the event that any impaired class does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Plan Proponents reserve the right to request such nonconsensual Confirmation in accordance with section 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will approve non-consensual confirmation of the Plan.

### E.     The Reorganized Debtors May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtors (or the Reorganized Debtors) reserve the right to object to the amount or classification of any Claim. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated Distributions described in this Disclosure Statement.

### F.     Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur reasonably promptly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### G.     Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan

The Distributions available to Holders of Allowed Claims and Equity Interests under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies, which could affect Distributions available to Holders of Allowed Claims and Equity Interests under the Plan, will not affect the validity of the vote taken by the Impaired Class to accept or reject the Plan or require any sort of revote by the Impaired Class.

### H.     Risk Factors that May Affect Distributions Under the Plan

The Claims estimates set forth herein are based on various assumptions. The actual amounts of Allowed Claims may differ significantly from those estimates should one or more underlying assumption prove to be incorrect. Additionally, the Debtors have made certain assumptions, as described herein, regarding liquidation under chapter 7 of the Bankruptcy Code, **which should be read carefully**.

### I.     Risk Factors Relating To Securities Laws

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan from registration under the Securities Act and state securities laws if three principal requirements are satisfied: (a) the securities must be offered and sold under a plan and must be securities of the debtor, an affiliate participating in a joint plan with the debtor, or a successor to

#37935173

the debtor under the plan; (b) the recipients of the securities must hold a prepetition or administrative expense claim against the debtor or an interest in the debtor; and (c) the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property. To the extent that the New LLC Interests are deemed to constitute securities issued in accordance with the Plan, the Debtors believe that such interests satisfy the requirements of § 1145(a)(1) of the Bankruptcy Code and, therefore, such interests are exempt from registration under the Securities Act and applicable state securities laws.

**J.      Disclosure Statement Disclaimer**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Reorganized Debtors, the Agent, or other parties in interest, to object to that Holder's Allowed Claim, or the Reorganized Debtors to bring Causes of Action or Retained Causes of Action regardless of whether any Claims, Causes of Action, and/or Retained Causes of Action are specifically or generally identified herein or in the Plan.

**K.      Liquidation Under Chapter 7**

If the Plan is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Debtors for Distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that any such conversion would likely reduce any Distribution to Holders of Claims and Equity Interests based on, among other things, (a) the increased costs of a chapter 7 case arising from the fees payable to a chapter 7 trustee and professional advisors to such trustee; (b) substantial increases in claims which would be satisfied on a priority basis; and (c) the substantially longer period of time that would elapse until distributions could be made under chapter 7. The Debtors believe that, in the event of a liquidation pursuant to chapter 7 of the Bankruptcy Code, unsecured Creditors and Holders of Equity Interests will receive no recovery for their Claims and Equity Interests whatsoever.

**L.      Alternative Plan of Reorganization**

If the Plan is not confirmed, the Bankruptcy Court may confirm another plan that may be filed by the Debtors.

**M.      Inherent Uncertainty of Projected Distribution Analysis**

The Projections are based on numerous assumptions, including confirmation and consummation of the Plan in accordance with its terms; industry performance; no material adverse changes in applicable legislation or regulations, or the administration thereof, or generally accepted accounting principles; no material adverse changes in general business and economic conditions; no material adverse changes in competition; the absence of material contingent or unliquidated litigation, indemnity, or other claims; and other matters, many of which will be beyond the control of the Debtors and the Reorganized Debtors and some or all of which may not materialize.

#37935173

To the extent that the assumptions inherent in the estimated distributions are based upon future business decisions and objectives, they are subject to change. In addition, although they are presented with numerical specificity and are based on assumptions considered reasonable by the Debtors, the assumptions and estimates underlying the estimated distributions are subject to significant business, economic, and competitive uncertainties and contingencies, many of which will be beyond the control of the Debtors. Accordingly, the Projections are only estimates and are necessarily speculative in nature. It can be expected that some or all of the assumptions in the estimated distributions will not be realized and that actual results will vary from the estimated distributions, which variations may be material and are likely to increase over time. In light of the foregoing, readers are cautioned not to place undue reliance on the estimated distributions. The estimated distributions were not prepared in accordance with standards for projections promulgated by the American Institute of Certified Public Accountants or with a view to compliance with published guidelines of the SEC regarding projections or forecasts. The estimated distributions have not been audited. The estimated distributions information contained in this Disclosure Statement should not be regarded as a representation or warranty by the Debtors, their advisors or Representatives, or any other Entity, that the estimated distributions can or will be achieved.

**N.      Risks Related To Assumption of Franchise Agreements**

As set forth above, substantially all of the Debtors' Properties are branded with well-known hotel franchises or "flags." The Debtors' rights to use such hotel "flags" are governed by executory franchise agreements with various hotel franchisors. Certain franchisors have indicated that they believe that implementing the Plan pursuant to the Conversion Confirmation Option may result in the termination of such franchise agreements, as such franchise agreements are not assignable as a matter of law unless the Senior Lender is able to apply for, and receive a new license from the applicable hotel franchisor(s) prior to the Effective Date. Such franchisors also allege that execution of the New Management Agreement contemplated under the Conversion Confirmation Option  would require prior approval by the franchisors, and that failure to obtain such approval could result in termination of one or more franchise agreements. The franchisors also allege that if their franchise agreement is terminated upon implementation of the Conversion Confirmation Option, then the Debtors would need to immediately cease use of all marks and other rights set forth in the franchise agreement. The Debtors dispute such allegations set forth by the franchisors. However, in the event that the franchisors prevail in respect of such arguments, the Debtors' future operations under the Conversion Confirmation Option could be significantly impaired.

**O.      Risks Related to Plan Voting Classification**

One creditor has indicated that it believes that as a holder of a Class 5 general unsecured claim against the Debtors' estates, it should be entitled to vote in respect of the Plan because payment to Class 5 creditors under the Refinancing Confirmation Option is conditioned upon the Senior Lender first receiving payment of the Refinancing Transactions Payoff Amount. The Debtors dispute such allegations and believe that the only creditor entitled to vote in respect of the Plan is the Senior Lender.

27

## ARTICLE 7.
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

THE TAX CONSEQUENCES UNDER THE PLAN TO HOLDERS OF CLAIMS OR EQUITY INTERESTS MAY VARY BASED UPON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW AND THE TIME THAT MAY ELAPSE BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND FINAL DISTRIBUTIONS UNDER THE PLAN. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED WITH RESPECT THERETO.

THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THE DEBTORS AND THEIR ADVISORS AND REPRESENTATIVES CANNOT PROVIDE ANY SUCH ADVICE. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE UPHELD. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PLAN.

INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE U.S. INTERNAL REVENUE SERVICE, ANY STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) ARE NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE CODE. STATEMENTS REGARDING TAX IMPLICATIONS CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) ARE NOT WRITTEN TO SUPPORT THE MARKETING OR PROMOTION OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE

DISCLOSURE STATEMENT. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

TAX CONSEQUENCES MAY VARY BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER, OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

#37935173

## ARTICLE 8.
## DEFINED TERMS

As set forth in footnote 1 above, capitalized terms used, but not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

## ARTICLE 9.
## CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interests of all Holders of Claims and urge all Holders of Claims entitled to vote to accept the Plan.

Dated: January 5, 2016

Respectfully submitted,

HOLLAND & KNIGHT LLP
Robert W. Jones
Brent R. McIlwain
Brian Smith
200 Crescent Court, Suite 1600
Dallas, TX  75201
Telephone:     (214) 964-9500
Facsimile:     (214) 964-9501

*Counsel for the*
*Debtors and Debtors in Possession*

*[signature on following page]*

#37935173

Dated:  January 5, 2016

RREAF O&G PORTFOLIO # 2 LLC

By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer

RREAF O&G PORTFOLIO # 2 MANAGER LLC

By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer

RREAF O&G PORTFOLIO # 3 LLC

By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer

RREAF O&G PORTFOLIO # 3 MANAGER LLC

By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer

## EXHIBIT A

## <u>Plan</u>

(Filed concurrently with this Disclosure Statement)

**EXHIBIT B**

**Estimated Distributions/Liquidation Analysis**

(See Attached)

In re RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC
Case Nos. 15-70094-rbk, 15-70095-rbk
United States Bankruptcy Court - WD Texas

**Disclosure Statement Liquidation Analysis**

| | Refinancing Confirmation Option | | | | Conversion Confirmation Option | | | | Chapter 7 Liquidation | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Assets/Funds Used for Distribution to Creditors: | | | | | | | | | | | |
| Net Proceeds from Refinancing/Sale: | $ 60,500,000.00 | | | | N/A | | | | N/A | | |
| Lender Cash Collateral Used for Plan Funding: | | | | | $ 2,000,000.00 | | | | N/A | | |
| Liquidation Value - Cash and Cash Equivalents: | N/A | | | | N/A | | | | $ 2,000,000.00 | | |
| Liquidation Value - Accounts Receivable: | N/A | | | | N/A | | | | $ 375,000.00 | | |
| Liquidation Value - Deposits and other Current Assets: | N/A | | | | N/A | | | | $ 10,000.00 | | |
| Liquidation Value - Real Property and FF&E (7 Hotels): | N/A | | | | N/A | | | | $ 35,070,000.00 | | |
| Total Funds Available for Distribution to Creditors: | $ 60,500,000.00 | | | | $ 2,000,000.00 | | | | $ 37,455,000.00 | | |
| | | | | | | | | | | | |
| | | | | Recover Greater than or Equal to Chapter 7 | | | | Recover Greater than or Equal to Chapter 7 | | | |
| Creditor Claims to be Satisfied: | | Recovery Amt | Recovery % | Recovery? | | Recovery Amt | Recovery % | Recovery? | | Recovery Amt | Recovery % |
| Estimated Secured Claims of Spectrum Origination:[B] | $ 40,122,810.28 | $ 40,122,810.28 | 100.00% | Yes | $ 40,122,810.28 | $ 40,122,810.28 | 100.00% | Yes | $ 40,122,810.28 | $ 36,885,000.00 | 91.93% |
| Chapter 7 Trustee Fees & Expenses: | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $ 100,000.00 | $ 100,000.00 | 100.00% |
| Chapter 7 Wind Down Costs: | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $ 100,000.00 | $ 100,000.00 | 100.00% |
| Professional Fees: | $ 220,000.00 | $ 220,000.00 | 100.00% | Yes | $ 220,000.00 | $ 220,000.00 | 100.00% | Yes | $ 220,000.00 | $ 150,450.00 | 68.39% C |
| Other Administrative Claims: | $ 10,000.00 | $ 10,000.00 | 100.00% | Yes | $ 10,000.00 | $ 10,000.00 | 100.00% | Yes | $ 10,000.00 | $ - | 0.00% |
| Taxing Authority Claims: | $ 370,000.00 | $ 370,000.00 | 100.00% | Yes | $ 370,000.00 | $ 370,000.00 | 100.00% | Yes | $ 370,000.00 | $ 370,000.00 | 100.00% |
| Other Priority Claims: | $ 10,000.00 | $ 10,000.00 | 100.00% | Yes | $ 10,000.00 | $ 10,000.00 | 100.00% | Yes | $ 10,000.00 | $ - | 0.00% |
| Cure Claims: | $ 715,000.00 | $ 715,000.00 | 100.00% | Yes | $ 715,000.00 | $ 715,000.00 | 100.00% | Yes | $ 715,000.00 | $ - | 0.00% |
| General Unsecured Claims: | $ 440,000.00 | $ 440,000.00 | 100.00% | Yes | $ 440,000.00 | $ - | 0.00% | Yes | $ 440,000.00 | $ - | 0.00% |
| Net Amount Available for Distribution to Equity: | | $ 18,612,189.72 | | Yes | | $ - | 0.00% | Yes | | $ - | 0.00% |
| Spectrum Preferred Equity Payout: | | $ 11,378,453.68 | | Yes | | $ - | 0.00% | Yes | | $ - | 0.00% |
| Net Amount Available for Distribution to other Equity Holders: | | $ 7,233,736.04 | | Yes | | $ - | 0.00% | Yes | | $ - | 0.00% |

A  Note, this is a consolidated liquidation analysis for RREAF O&G Portfolio #2 LLC and RREAF Portfolio #2 Manager #2 LLC.  Because RREAF Portfolio #2 Manager LLC has no assets and has only one contingent, unliquidated claim filed against its estate, the inclusion of Portfolio #2 Manager in this analysis does not impact the outcome or results of such analysis.

B  Note, this amount of Spectrum Origination's estimated secured claim is based on the amounts set forth in Spectrum's proof of claim, and is included herein for informational purposes only. The Debtors do not concede that this is the correct value of Spectrum's claim, and reserve all rights to challenge the calculation of such claim and the secured status of all or any portion of such claim.

C  Note, professional fee recoveries in a Chapter 7 proceeding are listed only to the extent of remaining retainers held by the applicable professionals.

**In re RREAF O&G Portfolio #3 LLC, RREAF Portfolio #3 Manager LLC**
**Case Nos. 15-70096-rbk, 15-70097-rbk**
**United States Bankruptcy Court - WD Texas**

**Disclosure Statement Liquidation Analysis**



| | Refinancing Confirmation Option | | | Conversion Confirmation Option | | | Chapter 7 Liquidation | | |
|---|---|---|---|---|---|---|---|---|---|
| **Assets/Funds Used for Distribution to Creditors:** | | | | | | | | | |
| Net Proceeds from Refinancing/Sale: | $ 7,500,000.00 | | | N/A | | | N/A | | |
| Lender Cash Collateral Used for Plan Funding: | | | | $ 150,000.00 | | | N/A | | |
| Liquidation Value - Cash and Cash Equivalents: | N/A | | | N/A | | | $ 150,000.00 | | |
| Liquidation Value - Accounts Receivable: | N/A | | | N/A | | | $ 11,250.00 | | |
| Liquidation Value - Deposits and other Current Assets: | N/A | | | N/A | | | $ 500.00 | | |
| Liquidation Value - Real Property and FF&E (1 Hotel): | N/A | | | N/A | | | $ 4,830,000.00 | | |
| **Total Funds Available for Distribution to Creditors:** | $ 7,500,000.00 | | | $ 150,000.00 | | | $ 4,991,750.00 | | |
| | | Recovery Amt | Recovery % | Recover Greater than or Equal to Chapter 7 Recovery? | Recovery Amt | Recovery % | Recover Greater than or Equal to Chapter 7 Recovery? | Recovery Amt | Recovery % |
| **Creditor Claims to be Satisfied:** | | | | | | | | | |
| Estimated Secured Claims of Spectrum Origination:[A] | $ 5,211,654.46 | $ 5,211,654.46 | 100.00% | Yes | $ 5,211,654.46 | $ 5,211,654.46 | 100.00% | Yes | $ 5,211,654.46 | $ 4,955,750.00 | 95.09% |
| Chapter 7 Trustee Fees & Expenses: | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $ 15,000.00 | $ 15,000.00 | 100.00% |
| Chapter 7 Wind Down Costs: | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $ 15,000.00 | $ 15,000.00 | 100.00% |
| Professional Fees: | $ 29,000.00 | $ 29,000.00 | 100.00% | Yes | $ 29,000.00 | $ 29,000.00 | 100.00% | Yes | $ 29,000.00 | $ 19,550.00 | 67.41%[C] |
| Other Administrative Claims: | $ 1,500.00 | $ 1,500.00 | 100.00% | Yes | $ 1,500.00 | $ 1,500.00 | 100.00% | Yes | $ 1,500.00 | $ - | 0.00% |
| Taxing Authority Claims: | $ 6,000.00 | $ 6,000.00 | 100.00% | Yes | $ 6,000.00 | $ 6,000.00 | 100.00% | Yes | $ 6,000.00 | $ 6,000.00 | 100.00% |
| Other Priority Claims: | $ 1,500.00 | $ 1,500.00 | 100.00% | Yes | $ 1,500.00 | $ 1,500.00 | 100.00% | Yes | $ 1,500.00 | $ - | 0.00% |
| Cure Claims: | $ 82,000.00 | $ 82,000.00 | 100.00% | Yes | $ 82,000.00 | $ 82,000.00 | 100.00% | Yes | $ 82,000.00 | $ - | 0.00% |
| General Unsecured Claims: | $ 29,000.00 | $ 29,000.00 | 100.00% | Yes | $ 29,000.00 | $ - | 0.00% | Yes | $ 29,000.00 | $ - | 0.00% |
| Net Amount Available for Distribution to Equity: | $ 2,139,345.54 | | | Yes | $ - | | | Yes | $ - | | 0.00% |
| Spectrum Preferred Equity Payout: | $ - | | | Yes | $ - | 0.00% | | Yes | $ - | | 0.00% |
| Net Amount Available for Distribution to other Equity Holders: | $ 2,139,345.54 | | | Yes | $ - | 0.00% | | Yes | $ - | | 0.00% |

A Note, this is a consolidated liquidation analysis for RREAF O&G Portfolio #3 LLC and RREAF Portfolio Manager #3 LLC.  Because RREAF Portfolio #3 Manager LLC has no assets and has only one contingent, unliquidated claim filed against its estate, the inclusion of Portfolio #3 Manager in this analysis does not impact the outcome or results of such analysis.

B Note, this amount of Spectrum Origination's estimated secured claim is based on the amounts set forth in Spectrum's proof of claim, and is included herein for informational purposes only.  The Debtors do not concede that this is the correct value of Spectrum's claim, and reserve all rights to challenge the calculation of such claim and the secured status of all or any portion of such claim.

C Note, professional fee recoveries in a Chapter 7 proceeding are listed only to the extent of remaining retainers held by the applicable professionals.

**EXHIBIT C**

**Refinancing Confirmation Option Projections**

(See Attached)

**RREAF #2 Combined Financial Projections - 2016**

| | Totals | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL REVENUES** | $ 15,588,935 | $ 1,120,838 | $ 1,089,416 | $ 1,264,553 | $ 1,288,009 | $ 1,420,185 | $ 1,391,177 | $ 1,443,928 | $ 1,379,581 | $ 1,332,948 | $ 1,484,600 | $ 1,243,195 | $ 1,130,506 |
| | | | | | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Total Room Supplies Expenses | $ 2,953,816 | $ 233,422 | $ 219,865 | $ 246,045 | $ 243,559 | $ 258,291 | $ 252,804 | $ 261,233 | $ 253,650 | $ 245,676 | $ 262,014 | $ 242,111 | $ 235,146 |
| Total Admin & Gen Expenses | $ 1,548,248 | $ 134,970 | $ 130,409 | $ 137,373 | $ 123,698 | $ 127,723 | $ 125,808 | $ 128,531 | $ 128,877 | $ 126,251 | $ 132,118 | $ 126,278 | $ 126,211 |
| Total Sales, Marketing & Advertising Expense | $ 723,989 | $ 53,894 | $ 52,087 | $ 59,077 | $ 59,737 | $ 53,756 | $ 58,949 | $ 57,247 | $ 59,559 | $ 63,036 | $ 61,792 | $ 68,640 | $ 54,117 |
| Total Franchise & Royalty Fees | $ 750,915 | $ 47,711 | $ 46,195 | $ 53,010 | $ 53,756 | $ 58,949 | $ 57,247 | $ 59,559 | $ 56,689 | $ 155,456 | $ 62,583 | $ 51,824 | $ 47,938 |
| Total Maintenance & Repair Expense | $ 671,781 | $ 55,576 | $ 53,091 | $ 56,226 | $ 55,479 | $ 56,853 | $ 56,024 | $ 57,070 | $ 56,640 | $ 55,603 | $ 57,394 | $ 55,798 | $ 56,026 |
| Total Utility Expense | $ 474,047 | $ 36,775 | $ 34,995 | $ 39,774 | $ 39,513 | $ 42,604 | $ 41,535 | $ 43,104 | $ 41,142 | $ 39,648 | $ 41,670 | $ 37,671 | $ 35,617 |
| **TOTAL OPERATING EXPENSES** | $ 7,122,796 | $ 562,349 | $ 536,642 | $ 591,504 | $ 575,742 | $ 609,138 | $ 596,701 | $ 615,087 | $ 600,032 | $ 684,426 | $ 624,419 | $ 571,702 | $ 555,055 |
| | | | | | | | | | | | | | |
| **GROSS OPERATING PROFIT** | $ 8,466,139 | $ 558,489 | $ 552,774 | $ 673,049 | $ 712,267 | $ 811,047 | $ 794,476 | $ 828,842 | $ 779,548 | $ 648,522 | $ 860,181 | $ 671,493 | $ 575,452 |
| Total Other Overhead Expense | $ 1,907,242 | $ 148,195 | $ 146,309 | $ 156,864 | $ 158,277 | $ 166,238 | $ 164,497 | $ 167,668 | $ 163,791 | $ 160,967 | $ 170,081 | $ 155,563 | $ 148,792 |
| **NET OPERATING INCOME** | $ 6,558,897 | $ 410,295 | $ 406,464 | $ 516,185 | $ 553,989 | $ 644,808 | $ 629,979 | $ 661,174 | $ 615,757 | $ 487,555 | $ 690,100 | $ 515,930 | $ 426,660 |

**RREAF #3 Combined Financial Projections -  2016**

| | Totals | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL REVENUE** | $ 2,028,877 | $ 129,042 | $ 139,123 | $ 173,988 | $ 176,144 | $ 182,006 | $ 187,882 | $ 194,135 | $ 177,783 | $ 165,547 | $ 232,599 | $ 141,586 | $ 129,042 |
| | | | | | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Total Room Supplies Expenses | $ 381,306 | $ 29,570 | $ 28,342 | $ 32,359 | $ 32,192 | $ 33,144 | $ 32,683 | $ 33,651 | $ 32,730 | $ 32,471 | $ 34,016 | $ 30,577 | $ 29,570 |
| Total Admin & Gen Expenses | $ 186,017 | $ 14,832 | $ 14,349 | $ 15,730 | $ 15,556 | $ 15,900 | $ 15,782 | $ 16,133 | $ 15,810 | $ 15,380 | $ 16,826 | $ 14,886 | $ 14,832 |
| Total Sales, Marketing & Advertising Expense | $ 103,467 | $ 7,014 | $ 7,361 | $ 8,819 | $ 8,887 | $ 9,141 | $ 9,378 | $ 9,649 | $ 8,992 | $ 8,485 | $ 11,187 | $ 7,521 | $ 7,033 |
| Total Franchise & Royalty Fees | $ 105,330 | $ 6,696 | $ 7,220 | $ 9,033 | $ 9,145 | $ 9,450 | $ 9,756 | $ 10,081 | $ 9,230 | $ 8,594 | $ 12,081 | $ 7,348 | $ 6,696 |
| Total Maintenance & Repair Expense | $ 71,100 | $ 5,849 | $ 5,569 | $ 5,997 | $ 5,919 | $ 6,041 | $ 5,943 | $ 6,066 | $ 6,018 | $ 5,943 | $ 6,066 | $ 5,839 | $ 5,849 |
| Total Utility Expense | $ 49,943 | $ 3,596 | $ 3,543 | $ 4,250 | $ 4,302 | $ 4,446 | $ 4,407 | $ 4,554 | $ 4,342 | $ 4,407 | $ 4,554 | $ 3,946 | $ 3,596 |
| **TOTAL OPERATING EXPENSES** | $ 897,163 | $ 67,557 | $ 66,384 | $ 76,187 | $ 76,002 | $ 78,122 | $ 77,949 | $ 80,134 | $ 77,124 | $ 75,280 | $ 84,730 | $ 70,117 | $ 67,577 |
| | | | | | | | | | | | | | |
| **GROSS OPERATING PROFIT** | $ 1,131,714 | $ 61,484 | $ 72,739 | $ 97,802 | $ 100,142 | $ 103,884 | $ 109,933 | $ 114,001 | $ 100,660 | $ 90,268 | $ 147,869 | $ 71,469 | $ 61,465 |
| Total Other Overhead Expense | $ 202,133 | $ 14,442 | $ 15,047 | $ 17,139 | $ 17,269 | $ 17,620 | $ 17,973 | $ 18,348 | $ 17,367 | $ 16,633 | $ 20,656 | $ 15,195 | $ 14,442 |
| **NET OPERATING PROFIT** | $ 929,581 | $ 47,042 | $ 57,691 | $ 80,662 | $ 82,873 | $ 86,263 | $ 91,960 | $ 95,653 | $ 83,293 | $ 73,635 | $ 127,213 | $ 56,274 | $ 47,022 |

## EXHIBIT D

## Retained Causes of Action

The attached lists and descriptions set forth the Retained Causes of Action to be retained by the Debtors pursuant to the Plan. The Debtors reserve the right to amend this schedule to modify the description of, or add additional descriptions of, Causes of Action and/or Retained Causes of Action, at any time prior to the Plan's Effective Date.

The Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Causes of Action specifically listed herein, and the Reorganized Debtors' rights and ability to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No person or entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Reorganized Debtors will not pursue any and all available Causes of Action against any person or entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a person or entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to some other Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.

All of the Causes of Action shall vest in the Reorganized Debtors, including, without limitation:

1. All Claims and Causes of Action identified in any of the Debtors' schedules of assets and liabilities or statements of financial affairs;

2. All Claims and Causes of Action relating to, or asserted in, the suit titled: RREAF O&G Portfolio #2 LLC v. A. Sangha Investments, Inc. and Amandeep Sangha, pending in District Court for Midland County;

3. All Claims and Causes of action against, or relating to, A. Sangha Investments, Inc., Amandeep Sangha, or any affiliates or representatives of the foregoing;

4. All Causes of Action arising under Chapter 5 of the Bankruptcy Code, including, without limitation, those Causes of Action that could have been brought by any of the Debtors under sections 544, 547, 548, 549, 550, 551, 552, and/or 553 against any person or entity (collectively, the "Bankruptcy Avoidance Actions");

5. All Causes of action arising under similar state or federal statutes or federal common law as the Bankruptcy Avoidance Actions, including, without limitation, Causes of Action

under laws, rules, or regulations based on the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act.

6.  Any other Causes of Action matured or unmatured, known or unknown, then existing or thereafter arising, of any of the Debtors and/or the Estates that exist or may or could be pending on the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date;

The claims and Causes of Action described herein and retained pursuant to the Plan are additions and supplements to, and not replacements of, the claims and Causes of Action described elsewhere in the Plan, Disclosure Statement, and/or Plan Supplement.

#37935173