**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | |
| | § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § | **CASE NO. 15-70095-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 LLC;** | § | **CASE NO. 15-70096-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § | **CASE NO. 15-70097-rbk** |
| | § | |
| **Jointly Administered Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 15-70094-rbk)** |
| | § | |

<u>**NOTICE OF FIRST AMENDED PLAN AND DISCLOSURE STATEMENT**</u>

PLEASE TAKE NOTICE that on December 10, 2015, the above captioned debtors (collectively, the "<u>Debtors</u>") filed with this Court: (i) their *Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* (the "<u>December 10 Plan</u>", ECF No. 147); and (ii) their *Disclosure Statement for Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* (the "<u>December 10 Disclosure Statement</u>", ECF No. 148).

PLEASE TAKE FURTHER NOTICE that following the submission of the December 10 Plan and December 10 Disclosure Statement, the Debtors made certain immaterial modifications to both such documents, and, on January 5, 2016, filed with this Court: (i) their *First Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* (the "<u>Plan</u>",

ECF No. 157); and (ii) their *First Amended Disclosure Statement for Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* (the "Disclosure Statement", ECF No. 158).

PLEASE TAKE FURTHER NOTICE that attached hereto as Exhibit A is a blackline comparing the December 10 Plan and the Plan, which reflects the revisions incorporated into the Plan.

PLEASE TAKE FURTHER NOTICE that attached hereto as Exhibit B is a blackline comparing the December 10 Disclosure Statement and the Disclosure Statement, which reflects the revisions incorporated into the Disclosure Statement.

Dated: January 5, 2016                        Respectfully submitted,


                                              */s/ Brian Smith*
                                              Robert W. Jones
                                              robert.jones@hklaw.com
                                              Brent R. McIlwain
                                              brent.mcilwain@hklaw.com
                                              Brian Smith
                                              brian.smith@hklaw.com
                                              Holland & Knight LLP
                                              200 Crescent Court, Suite 1600
                                              Dallas, TX  75201
                                              Telephone:     (214) 964-9500
                                              Facsimile:      (214) 964-9501


                                              Counsel for the
                                              Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

I certify that on January 5, 2016, a copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas.

                                                  */s/ Brian Smith*                                  
                                              Brian Smith

## <u>Exhibit A</u>

**Blackline Comparing the December 10 Plan and the Plan**

(See Attached)

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § § | **CASE NO. 15-70095-rbk** |
| **RREAF O&G PORTFOLIO #3 LLC;** | § § | **CASE NO. 15-70096-rbk** |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § § | **CASE NO. 15-70097-rbk** |
| **Jointly Administered Debtors.** | § § | **Chapter 11** |
| | § § § § | **(Jointly Administered Under CASE NO. 15-70094-rbk)** |

**FIRST AMENDED PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC**

HOLLAND & KNIGHT LLP

Robert W. Jones

Brent R. McIlwain

Brian Smith

200 Crescent Court, Suite 1600

Dallas, TX 75201

Telephone:     (214) 964-9500

Facsimile:     (214) 964-9501

*Counsel for the*
*Debtors and Debtors in Possession*

#37907714

Dated: ~~December 10, 2015~~January 5, 2016

# TABLE OF CONTENTS

ARTICLE 1. DEFINITIONS AND RULES OF INTERPRETATION ........................................1

    A.    Definitions. ................................................................................................1

    B.    Interpretation, Application of Definitions, and Rules of Construction. .................12

    C.    Controlling Document. ................................................................................12

ARTICLE 2. ADMINISTRATIVE AND PRIORITY CLAIMS ....................................................12

    A.    Administrative Claims. ................................................................................12

    B.    Professional Fee Claims. ..............................................................................13

    C.    Priority Tax Claims. ....................................................................................13

ARTICLE 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
      INTERESTS ...............................................................................................14

    A.    Special Provision Governing Unimpaired Claims. ................................................14

    B.    Voting and Nonconsensual Confirmation. ........................................................14

    C.    Summary of Classification and Treatment of Classified Claims and Equity
          Interests. ................................................................................................14

    D.    Classification and Treatment. ......................................................................16

ARTICLE 4. IMPLEMENTATION OF THE PLAN ..................................................................19

    A.    Nonconsensual Confirmation. ......................................................................20

    B.    Alternate Confirmation Options. ....................................................................20

    C.    Cooperation of the Debtors and Senior Lender. ................................................21

    D.    Distributions in Satisfaction. ........................................................................21

    E.    Implementation of Reorganization. ................................................................22

ARTICLE 5. VOTING AND DISTRIBUTIONS ......................................................................26

    A.    Voting of Claims. ......................................................................................26

    B.    Designation of Party to Make Distributions. ....................................................26

    C.    Distributions on Allowed Claims. ..................................................................26

    D.    Interest on Claims. ....................................................................................27

    E.    Payment of Specified General Unsecured Claims. ..............................................27

    F.    Disputed Claims. ......................................................................................28

    G.    Estimation of Claims. ................................................................................29

#37907714

ARTICLE 6. TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND INSURANCE POLICIES ...................................................................29

    A.    Assumption and Rejection of Executory Contracts. ...............................29

    B.    Limited Extension of Time to Assume or Reject. ..................................30

    C.    Cure Amounts...........................................................................................30

    D.    Rejection Damage Claims. .....................................................................31

    E.    Previously Assumed Executory Contracts. ............................................31

    F.    Insurance Policies....................................................................................32

    G.    Post-Petition Date Contracts and Leases................................................32

    H.    Reservation of Rights. ............................................................................32

ARTICLE 7. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ............................................................................................32

    A.    Conditions to Confirmation.....................................................................32

    B.    Conditions to the Effective Date. ...........................................................33

    C.    Waiver of Conditions. .............................................................................34

    D.    Failure of Conditions. .............................................................................35

    E.    Substantial Consummation. .....................................................................35

ARTICLE 8. DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS .......35

    A.    Term of Injunctions or Stays. .................................................................35

    B.    Vesting of Property. ................................................................................35

    C.    Cancellation of Notes and Equity Interests. ...........................................35

    D.    Discharge.................................................................................................36

    E.    Releases. ..................................................................................................36

    F.    Exculpation.............................................................................................38

    G.    Preservation of Causes of Action. ..........................................................38

    H.    Injunctions. .............................................................................................38

    I.    Binding Effect of the Plan. .....................................................................39

ARTICLE 9. RETENTION OF JURISDICTION ......................................................................39

    A.    Retention of Jurisdiction. ........................................................................39

ARTICLE 10. MISCELLANEOUS PROVISIONS....................................................................40

    A.    Final Fee Applications.............................................................................40

    B.    Payment of Statutory Fees.......................................................................40

    C.    Modification of the Plan..........................................................................41

#37907714

D.    Revocation or Deferral of the Plan. ..................................................................41

E.    Successors and Assigns. ....................................................................................41

F.    Governing Law and Construction. .....................................................................41

G.    Reservation of Rights. .......................................................................................41

H.    Setoffs and Recoupment. ...................................................................................42

I.    Section 1145 Exemption. ...................................................................................42

J.    Effectuating Documents; Further Transactions; Exemption from Certain
      Transfer Taxes. ..................................................................................................42

K.    Section 1125(e) Good Faith Compliance. ..........................................................43

L.    Further Assurances. ...........................................................................................43

M.    Service of Documents. .......................................................................................43

N.    Filing of Additional Documents. .......................................................................44

O.    No Stay of Confirmation Order. .........................................................................44

#37907714

# INTRODUCTION

RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC (collectively, the "Debtors") propose the following plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article 1.A. of the Plan. Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, businesses, properties, results of operations, historical financial information, projections, and future operations, together with a summary and analysis of the Plan.

The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Subject to the terms hereof and the provisions of the Bankruptcy Code and Bankruptcy Rules, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to the Effective Date.

ALL HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT AND TO READ THE PLAN CAREFULLY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

# ARTICLE 1.
## DEFINITIONS AND RULES OF INTERPRETATION

**A.      Definitions.**

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

**1.**      "Administrative Claim" means a Claim arising under section 507(a)(2) of the Bankruptcy Code for costs and expenses of administration under section 503(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

**2.**      "Administrative Claims Bar Date" means the first Business Day that is thirty (30) days after the Effective Date, unless otherwise extended by the Reorganized Debtors, and is the deadline for a Holder of an Administrative Claim (other than a Professional Fee Claim, which must be filed before the Professional Fee Claim Bar Date, or an Ordinary Course Administrative Claim) to file a request with the Bankruptcy Court for payment of such Administrative Claim. All fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930 are not subject to the Administrative Claims Bar Date.

**3.**      "Administrative Claims Objection Deadline" shall mean ninety (90) days after the Administrative Expense Claim Bar Date, or as extended pursuant to Article 2.A of the Plan.

**4.**      "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

**5.**      "Allowed" means:

(x) with respect to any prepetition Claim or Equity Interest, except as otherwise provided herein: (a) as to which no objection to allowance or request for estimation has been interposed on or before the later of (i) the Claims Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; (b) a prepetition Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated, but only as to the amount listed on the Schedules for such Claim; (c) a prepetition Claim or Equity Interest that is not Disputed and has been allowed by a Final Order; (d) a prepetition Claim or Equity Interest that is expressly allowed pursuant to the terms of this Plan; or (e) a Disputed Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Deadline; and

(y) with respect to any postpetition Administrative Claim or Professional Fee Claim, either (i) an Administrative Claim or Professional Fee Claim for which allowance

1

has been timely requested, prior to the Administrative Claims Bar Date or Professional Fee Claim Bar Date (as applicable), by a motion filed with the Bankruptcy Court, which motion for allowance of such Administrative Claim or Professional Fee Claim is granted by a Final Order of the Bankruptcy Court; or (ii) an Administrative Claim that the Debtors and Spectrum Origination both deem to be an Ordinary Course Administrative Claim which is timely paid by the Debtors in the ordinary course of business following the Petition Date.

6.        "Amended and Restated Charter Documents" means the amended and restated certificate of formation, limited liability company agreement, and/or other organizational documents of each of the Reorganized Debtors, substantially in the forms included in the Plan Supplement. The Amended and Restated Charter Documents will become effective only if the Conversion Confirmation Option is implemented as of the Effective Date.

7.        "Bankruptcy Code" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time.

8.        "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas.

9.        "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Texas, the Local Rules of Civil Practice and Procedure of the United States District Court for the Western District of Texas, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

10.        "Bar Date" means November 11, 2015, the date set by the Bankruptcy Court as the deadline to file prepetition proofs of Claim.

11.        "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined by Rule 9006(a) of the Federal Rules of Bankruptcy Procedure).

12.        "Cash" means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

13.        "Cash Collateral" has the meaning ascribed to it in section 363(a) of the Bankruptcy Code.

14.        "Causes of Action" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims, cross-claims, and the like (including, without limitation, all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code), matured or unmatured, known or unknown, then existing or thereafter arising, of any of the Debtors, the

2

Debtors-in-Possession, and/or the Estates that exist or may be pending on the Effective Date against any Entity other than any Debtor, based in law or equity, including, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "Causes of Action" shall exclude any Causes of Action released under the Plan.

15.     "Chapter 11 Cases" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned the following case numbers: 15-70094-rbk, 15-70095-rbk, 15-70096-rbk, and 15-70097-rbk, which are jointly administered under case number 15-70094-rbk.

16.     "Claim" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against a Debtor.

17.     "Claims Objection Deadline" means the last day for filing objections to Claims, which day shall be the latest of (a) 365 days after the Effective Date, (b) thirty (30) days after entry of a Final Order under section 502(j) of the Bankruptcy Code, or (c) such other later dates as may be established by order of the Bankruptcy Court upon a motion (or subsequent motion) of the Reorganized Debtors.

18.     "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 3 herein pursuant to section 1122(a) of the Bankruptcy Code.

19.     "Collateral" means any property or interest in property of a Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

20.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases subject to all conditions specified in Article 7.A having been satisfied.

21.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

22.     "Confirmation Hearing" means the hearing before the Bankruptcy Court to consider Confirmation of the Plan.

23.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24.     "Contracts Schedule" means the schedule of Executory Contracts: (a) to be rejected pursuant to the Plan; and (b) to assumed pursuant to the Plan. The Contracts Schedule will initially be filed with the Plan Supplement and may, with the consent of Spectrum Origination, be amended, modified, or supplemented (including by adding or removing Executory Contracts) at any time thereafter through and including the Effective Date.

25.     "Conversion Confirmation Option" has the meaning ascribed to such term in Article 4.B.2 of the Plan.

3

26.     "Creditor" shall have the meaning in section 101(10) of the Bankruptcy Code.

27.     "Cure Claim" means a Claim based upon a Debtor's monetary defaults under an Executory Contract at the time such Executory Contract is assumed by the Debtor under section 365 of the Bankruptcy Code.

28.     "De Minimis Distribution" means any Distribution (other than a Distribution on an Allowed secured Claim) in an amount less than $50.

29.     "Debtor," "Debtors," or "Debtors-in-Possession" means, individually and collectively, RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC.

30.     "Debtors' Fee Cap" shall mean the sum of (i) the amount budgeted for Debtor Professional Fees set forth in the budget attached to the Corrected Final Order Authorizing Use of Cash Collateral [ECF No. 129] entered in the Debtors' bankruptcy cases plus (ii) the amount of any retainer held by the Debtors' professionals.

31.     "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as it may be amended, supplemented, or modified from time to time.

32.     "Disputed" means, with respect to any Claim or Equity Interest, or any portion thereof: (a) it is listed on the Schedules (as the Schedules may be amended) as unliquidated, disputed, or contingent, unless a Proof of Claim has been timely filed; (b) as to which a Debtor, any other party in interest, or a Reorganized Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules before the Claims Objection Deadline; (c) as to which a Proof of Claim or interest was required to be filed but as to which a Proof of Claim or interest was not timely or properly filed; or (d) that is otherwise disputed by the Debtors, a party in interest, or the Reorganized Debtors in accordance with applicable law or the Plan and could be the subject of a timely objection by the Debtors or Reorganized Debtors, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order. For the avoidance of doubt, notwithstanding any objection to allowance or request for estimation filed or interposed by the Debtors, the Senior Lender Claims are not Disputed.

33.     "Distribution" means the distributions of Cash, New RREAF Manager LLC Interests (if the Conversion Confirmation Option is implemented), or other consideration to be made under and in accordance with the Plan.

34.     "Effective Date" means the first Business Day on which: (a) all the conditions specified in Article 7.B.1 of the Plan have been satisfied or waived as set forth in Article 7.C; and (b) all the conditions specified in Article 7.B.2 of the Plan or Article 7.B.3 of the Plan, as applicable, have been satisfied or waived as set forth in Article 7.C.

35.     "Effective Date Notice" means the notice of the occurrence of the Effective Date, which shall be filed within three (3) Business Days after the occurrence of the Effective Date and promptly thereafter served in the manner and on the Entities identified in the Confirmation Order.

#37907714

The Effective Date Notice shall state whether the Plan has been implemented pursuant to the Refinancing Confirmation Option or the Conversion Confirmation Option.

36.      "Entity" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

37.      "Equity Interest" means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors.

38.      "Estate" means the estate of each Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

39.      "Executory Contract" means an agreement, contract, or lease, whether for real or personal property, between or among one or more of the Debtors and a third party, that qualifies as an "executory contract" or "unexpired lease" under section 365 of the Bankruptcy Code.

40.      "File" or "Filed" or "Filing" means, with respect to any pleading, the entry of such pleading on the docket of the Chapter 11 Cases and the proper service of such pleading in accordance with the Bankruptcy Rules.

41.      "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

42.      "Final Order" means an order, determination, or judgment entered on the docket of the Bankruptcy Court, or any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order, determination, or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

43.      "Gallatin Land LLC" means Gallatin Land, LLC, a Tennessee limited liability company.

44.      "General Unsecured Claim" means any Claim against any Debtor that is not an Administrative Claim, a Professional Fee Claim, a Secured Governmental Unit Claim, a Priority Tax Claim, a Senior Lender Claim, an Other Secured Claim, or an Unsecured Priority Claim.

45.      "Guarantors" means Webb M. ("Kip") Sowden, III, the Webb and Marinelle Sowden Irrevocable Trust established on June 22, 2007, and William Douglas McKnight.

46.      "Holder" means an Entity holding a Claim or Equity Interest.

5

**47.**     "Impaired" means "impaired" within the meaning of sections 1123(a) and 1124 of the Bankruptcy Code with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

**48.**     "Initial Distribution Date" means the Effective Date or as soon thereafter as practicable, but no later than sixty (60) days after the Effective Date.

**49.**     "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

**50.**     "Interim Compensation Order" means the Order Granting Motion to Establish Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Case Professionals [ECF No. 121].

**51.**     "Lien" means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation.

**52.**     "New Management Agreement" means, if the Plan is implemented pursuant to the Conversion Confirmation Option, the management services agreement to be entered into between the Reorganized Debtors and new management as selected by the Senior Lender, which shall be included in the Plan Supplement.

**53.**     "New RREAF Manager LLC Agreements" means, if the Plan is implemented pursuant to the Conversion Confirmation Option, the applicable limited liability company agreements to be entered into by Reorganized RREAF2 Manager, Reorganized RREAF3 Manager, and the Senior Lender.

**54.**     "New RREAF2 Manager LLC Interests" means, if the Plan is implemented pursuant to the Conversion Confirmation Option, the membership interests in Reorganized RREAF2 Manager that will be Distributed pursuant to Article 4.E.3 of the Plan on the Effective Date.

**55.**     "New RREAF3 Manager LLC Interests" means, if the Plan is implemented pursuant to the Conversion Confirmation Option, the membership interests in Reorganized RREAF3 Manager that will be Distributed pursuant to Article 4.E.3 of the Plan on the Effective Date.

**56.**     "New RREAF Manager LLC Interests" means, collectively, the New RREAF2 Manager LLC Interests and New RREAF3 Manager LLC Interests.

**57.**     "Ordinary Course Administrative Claim" means an Administrative Claim with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing in accordance with the terms and conditions of any agreements relating thereto, which the Debtors and Spectrum Origination recognize and acknowledge is an Ordinary Course Administrative Claim; provided, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, tenant complaints, employment law (excluding claims arising under

6

workers' compensation law), secondary payor liability, franchise agreement liability (or analagous hotel franchise arrangements), or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an Ordinary Course Administrative Claim.

58. "Other Secured Claim" means a Claim, other than a Secured Governmental Unit Claim or a Senior Lender Claim, against the Debtors that is (a) secured by a Lien on property in which the Estates have an interest, which Liens are valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (b) that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

59. "PCBH LLC" means Panama City Beach Hotel, LLC a Florida limited liability company.

60. "Person" means "person" as that term is defined in section 101(41) of the Bankruptcy Code.

61. "Petition Date" means July 8, 2015.

62. "Plan" means this plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or herewith, as the case may be.

63. "Plan Proponents" means the Debtors. The Plan Proponents are sometimes referred to individually in the Plan as a "Plan Proponent."

64. "Plan Supplement" means the supplement to the Plan, containing without limitation: (a) the Amended and Restated Charter Documents; (b) the New RREAF Manager LLC Agreements; (c) the New Management Agreement; (d) the Contracts Schedule (as the same may be amended from time to time through the Confirmation Date); (e) the identity of the initial directors, officers, managers, and/or members (as applicable) of the Reorganized Debtors; (f) the detail of RREAF2 Specified General Unsecured Claims and RREAF3 Specified General Unsecured Claims, (g) the form of Pledged Equity Option, and (h) such other documents that the Plan Proponents determine are necessary to include in the Plan Supplement for implementation of the Plan. The Plan Supplement shall be filed no later than seven (7) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan. The ~~Plan Proponents~~Debtors may, with the consent of Spectrum Origination, supplement and/or modify the Plan Supplement at a later date.

65. "Plan Supplement Documents" means the documents contained in the Plan Supplement.

66. "Pledge Agreements" means: (a) that certain Assignment of Pledged Collateral (Security Agreement/Gallatin Land) dated as of April 29, 2014, by and among RREAF Holdings, Senior Lender, Gallatin Land, LLC, RREAF2 and UCF I Trust; and (b) that certain Assignment of Pledged Collateral (Security Agreement/PCBH) dated as of April 29, 2014 by and among DM

7

#37907714

Florida, LLC, RREAF Holdings, Senior Lender, Panama City Beach Hotel, LLC, RREAF2, and UCF I Trust.

**67.** 66. "Pledged Equity" means the equity interests in PCBH LLC and Gallatin Land LLC pledged by the Pledgors.

**68.** 67. "Pledged Equity Option" means an option, substantially in the form included in the Plan Supplement, enabling the Pledgors to require Spectrum Origination (and its assignees of Senior Lender Claims) to release any and all Liens that it may hold against equity interests in PCBH LLC and Gallatin Land LLC in exchange for a release price of one million dollars ($1,000,000) paid by the Pledgors to Spectrum Origination on or before January 15, 2017.

**69.** 68. "Pledgors" means RREAF Holdings and DM Florida, LLC, a Tennessee limited liability company.

**70.** 69. "Prepetition Guaranty Documents" means, individually and collectively, any guaranty agreements supporting or relating to any of the obligations set forth in the Prepetition Loan Documents, including, without limitation, (i) that certain Guaranty of Recourse Obligations, dated on or about April 30, 2014, by and among Webb M. ("Kip") Sowden, III, the Webb and Marinelle Sowden Irrevocable Trust established on June 22, 2007, and William Douglas McKnight, and (ii) that certain Guaranty of Recourse Obligations, dated on or about November 21, 2014, by and among Webb M. ("Kip") Sowden, III, the Webb and Marinelle Sowden Irrevocable Trust established on June 22, 2007, and William Douglas McKnight.

**71.** 70. "Prepetition Loan Agreements" means, individually and collectively: (i) that certain Loan Agreement, dated as of April 30, 2014, by and among RREAF O&G Portfolio #2 LLC, as borrower, Spectrum Origination LLC, as Lender, and the other signatories thereto, as amended from time to time; and (ii) that certain Loan Agreement dated as of November 21, 2014, by and among RREAF O&G Portfolio #3 LLC, as borrower, Spectrum Origination LLC, as Lender, and the other signatories thereto, as amended from time to time.

**72.** 71. "Prepetition Loan Documents" means the Prepetition Loan Agreements, together with all security documents, pledge agreements, and all related exhibits, schedules, agreements, forbearance agreements, and other documents, as the same may have been amended from time to time. The Prepetition Guaranty Documents shall not for purposes of this Plan be considered Prepetition Loan Documents.

**73.** 72. "Prepetition Loan Facility" means the prepetition loan and credit facility, as evidenced by, among other things, the Prepetition Loan Documents.

**74.** 73. "Previously Assumed Contract" has the meaning ascribed to such term in Article 6.E of the Plan.

**75.** 74. "Priority Tax Claims" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims specifically do not include Claims for payment of real property taxes secured by a Lien on a Debtor's real or personal property; such secured claims shall be considered Secured Governmental Unit Claims.

#37907714

**76.** ~~75.~~ "Pro Rata" means, with respect to any Allowed Claim, at any time, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**77.** ~~76.~~ "Professional" means any Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**78.** ~~77.~~ "Professional Fee Claim" means an Administrative Claim for compensation for services and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

**79.** ~~78.~~ "Professional Fee Claim Bar Date" means the date that is sixty (60) days after the Effective Date.

**80.** ~~79.~~ "Proof of Claim" means a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or pursuant to any Order of the Bankruptcy Court, together with supporting documents.

**81.** ~~80.~~ "Property" or "Properties" means one or more, as appropriate, of the eight (8) commercial real estate properties owned by the Debtors.

**82.** ~~81.~~ "Refinanced Parcels" means the Properties, such Properties being the Properties included in the Refinancing Transactions.

**83.** ~~82.~~ "RCO Deadline" means 6:00 p.m (New York time) on January 15, 2016, or such later date to which Spectrum Origination may agree in writing; provided, however, that: if the Disclosure Statement is approved on or prior to January 10, 2016, then the RCO Deadline shall automatically be extended to 6:00 p.m. (New York time) on January 31, 2016, without prejudice to any additional extensions that Spectrum Origination may agree to in writing. The RCO Deadline is the last date by which the Plan may be implemented pursuant to the Refinancing Confirmation Option.

**84.** ~~83.~~ "Refinancing Confirmation Option" has the meaning ascribed to such term in Article 4.B.1 of the Plan.

**85.** ~~84.~~ "Refinancing Transactions" means the refinancing or sale of the Properties in an amount sufficient to generate proceeds no less than the Refinancing Transactions Payoff Amount that will be paid to Spectrum Origination under the Refinancing Confirmation Option. Pursuant to the Refinancing Transactions, under the Refinancing Confirmation Option, Spectrum Origination shall be paid no later than the RCO Deadline, Cash in an amount no less than the Refinancing Transactions Payoff Amount. For the avoidance of doubt, the description of the Refinancing Transactions is not intended to limit the Debtors' ability to raise the funds to pay the amounts set forth in the preceding sentence to Spectrum Origination through other transactions so long as payment of the Refinancing Transactions Payoff Amount is made to Spectrum Origination by the RCO Deadline.

#37907714

**86.** **85.** "Refinancing Transactions Payoff Amount" means the sum of: (a) $56,681,556.00 plus (b) the Spectrum Legal Fees, less (c), the Sweep Payments.

**87.** **86.** "Released Debtor Parties" means the Debtors, their Affiliates and each of their respective Representatives.

**88.** **87.** "Released Parties" means the Released Senior Lender Parties and the Released Debtor Parties.

**89.** **88.** "Released Senior Lender Parties" means the Senior Lender, its Affiliates and each of their respective Representatives.

**90.** **89.** "Reorganized Debtors" means all of the Debtors, or any successors to the Reorganized Debtors by merger, consolidation, or otherwise, on and after the Effective Date.

**91.** **90.** "Representatives" means, with regard to an Entity, that Entity's current and former officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents, and other representatives (including each of their respective officers, directors, employees, independent contractors, members, and professionals).

**92.** **91.** "Retained Causes of Action" means all Causes of Action of any of the Debtors, the Debtors-in-Possession, and/or the Estates (including, without limitation, the Causes of Action Listed on the Retained Causes of Action Schedule) that are held or may be pending on the Effective Date against any Entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "Causes of Action" shall exclude any Causes of Action released under the Plan.

**93.** **92.** "Retained Causes of Action Schedule" means the schedule of Causes of Action attached to the Disclosure Statement as Exhibit D.

**94.** **93.** "RREAF Holdings" means RREAF Holdings LLC, a Texas limited liability company.

**95.** **94.** "RREAF2" means RREAF O&G Portfolio #2 LLC, a Delaware limited liability company.

**96.** **95.** "RREAF2 Investors" means RREAF O&G Portfolio #2 Investors LLC, a Delaware limited liability company and the sole Holder of prepetition Equity Interests in RREAF2 Manager.

**97.** **96.** "RREAF2 Manager" means RREAF O&G Portfolio #2 Manager LLC, a Delaware limited liability company.

**98.** **97.** "RREAF2 Specified General Unsecured Account" means an account established for the purpose of funding RREAF2 Specified General Unsecured Claims.

10

**99.** **98.** "RREAF2 Specified General Unsecured Claims" means those General Unsecured Claims against RREAF2 that are identified by the Senior Lender as RREAF2 Specified General Unsecured Claims in the Plan Supplement.

**100.** **99.** "RREAF3" means RREAF O&G Portfolio #3 LLC, a Delaware limited liability company.

**101.** **100.** "RREAF3 Holdings" means RREAF Holdings (O&G Hospitality Portfolio Number 3), LLC, a Texas limited liability company and the sole Holder of prepetition Equity Interests in RREAF3 Manager.

**102.** **101.** "RREAF3 Manager" means RREAF O&G Portfolio #3 Manager LLC, a Delaware limited liability company.

**103.** **102.** "RREAF3 Specified General Unsecured Account" means an account established for the purpose of funding RREAF3 Specified General Unsecured Claims.

**104.** **103.** "RREAF3 Specified General Unsecured Claims" means those General Unsecured Claims against RREAF3 that are identified by the Senior Lender as RREAF3 Specified General Unsecured Claims in the Plan Supplement.

**105.** **104.** "Schedules" mean the schedules of assets and liabilities, schedules of executory contracts, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, each as may be amended from time to time, including after the Effective Date.

**106.** **105.** "Secured Governmental Unit Claim" means a Claim held by a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code that is secured by a Lien in a Debtor's Property, including, but not limited to, those Claims for payment of real property taxes secured by a Lien on a Debtor's Property.

**107.** **106.** "Senior Lender Claims" means the Claims of Spectrum Origination, including all post-petition interest, fees, and costs that may be Allowed under section 506(b) of the Bankruptcy Code, evidenced by the Prepetition Loan Documents.

**108.** **107.** "Senior Lender" means Spectrum Origination.

**109.** "Solicitation Procedures Order" means the Bankruptcy Court order granting the Debtors' *Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Shortening the Notice Period for the Plan Confirmation Hearing, (C) Establishing a Plan Objection Deadline and Related Procedures, (D) Approving the Solicitation Procedures, (E) Approving the Confirmation Hearing Notice, and (F) Establishing Procedures for the Assumption of Executory Contracts and Unexpired Leases Under the Pla*n (Docket No. 150).

**110.** **108.** "Spectrum Legal Fees" means actual legal fees, in an amount not to exceed $200,000.00 in the aggregate, incurred by Spectrum Origination in respect of the Debtors' bankruptcy cases or otherwise payable under the Prepetition Loan Documents from and after October 18, 2015.

11

**111.**  ~~109.~~ "Spectrum Origination" means Spectrum Origination LLC, a Delaware limited liability company and the lender under the Prepetition Loan Agreements.

**112.**  ~~110.~~ "Sweep Payments" means any cash payments made to Spectrum Origination LLC after November 11, 2015 in accordance with the Corrected Final Order Authorizing Use of Cash Collateral [ECF No. 129] entered in the Debtors' bankruptcy cases.

**113.**  ~~111.~~ "Trade Unsecured Claim Release" mean a release to be executed by an Eligible RREAF2 Trade Holder or Eligible RREAF3 Trade Holder (as applicable) in order to receive a Specified RREAF2 Trade Payment or Specified RREAF3 Trade Payment (as applicable), in form and substance satisfactory to the Reorganized Debtors and Spectrum Origination and substantially in the form to be set forth in the Plan Supplement.

**114.**  ~~112.~~ "U.S. Trustee" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

**115.**  ~~113.~~ "Unencumbered" means, with respect to any asset or other property, not subject to (i) a Lien or (ii) a charge to use such asset or other property for a particular purpose to which the Debtors or the Reorganized Debtors have agreed or are bound.

**116.**  ~~114.~~ "Unimpaired" means not "impaired" within the meaning of section 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

**117.**  ~~115.~~ "Unsecured Priority Claims" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

## B.    Interpretation, Application of Definitions, and Rules of Construction.

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (e) the words "herein," "hereof," "hereby," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part hereof or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

#37907714

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## C.   Controlling Document.

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and a Plan Supplement Document, the terms of the Plan shall control.

## ARTICLE 2.
## ADMINISTRATIVE AND PRIORITY CLAIMS

## A.   Administrative Claims.

Except as otherwise provided in the Plan or the Confirmation Order, subject to the Administrative Claims Bar Date and other requirements of the Plan, on the later of (i) the Initial Distribution Date, or (ii) as soon as reasonably practicable after such Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Allowed amount of the Allowed Administrative Claim or (b) such other less favorable treatment as to which the Reorganized Debtors and such Holder shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating to such Ordinary Course Administrative Claims.

Each Holder of an Administrative Claim (other than an Ordinary Course Administrative Claim or a Professional Fee Claim) shall file with the Bankruptcy Court by the Administrative Claims Bar Date a motion requesting allowance and payment of such Administrative Claim by electronic filing, mailing, hand delivering, or delivering by courier service such request for payment of Administrative Claim to the Bankruptcy Court and serve a copy on the Reorganized Debtors and the U.S. Trustee.

All objections to allowance of Administrative Claims (excluding Professional Fee Claims) must be filed by any parties in interest no later than (a) the Administrative Claims Objection Deadline or (b) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of Administrative Claims Objection Deadline or (ii) is agreed between the Reorganized Debtors and the affected Holder of an Administrative Claim.

## B.   Professional Fee Claims.

All Professionals employed by the Debtors in these Chapter 11 Cases shall file and serve on the Reorganized Debtors and all other parties entitled to receive notice of the application under the Interim Compensation Order all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code for Professional Fee Claims through the Effective Date by no later than the Professional Fee Claim Bar Date. Objections to Professional Fee Claims for compensation or reimbursement of expenses must be

#37907714

filed by any party in interest and served on counsel for the Reorganized Debtors and the Professionals or other Entities to whose application the objections are addressed on or before the objection deadline set forth in the applicable application for allowance of a Professional Fee Claim. Notwithstanding anything herein to the contrary: (i) the aggregate amount of Professional Fee Claims payable by the Debtors and/or the Reorganized Debtors (including all amounts paid by the Debtors after the Petition Date and prior to the Effective Date) shall not exceed the Debtors' Fee Cap; and (ii) any Professional Fee Claims ~~by persons other than the Debtors' counsel~~ associated with the marketing and/or refinancing of the Properties shall not be Allowed (provided, however, that notwithstanding the limitation in this clause (ii), the Debtors' counsel shall, subject to the limitation set forth in the preceding clause (i), be entitled to allowance of Professional Fee Claims for services performed on or before October 15, 2015 associated with the marketing and/or refinancing of the Properties, and for services performed in connection with preparing this Plan and the Disclosure Statement as well as any services performed in connection with obtaining approval of the Disclosure Statement, and/or confirmation of this Plan, along with any matters related thereto).

**C.      Priority Tax Claims.**

        Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date, each Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Reorganized Debtors, (a) on the Initial Distribution Date, Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (b) deferred Cash payments over time pursuant to section 1129(a)(9)(C) of the Bankruptcy Code in an aggregate principal amount equal to the face amount of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the rate of interest determined under applicable non-bankruptcy law as of the calendar month in which the Plan is confirmed, or (c) such other less favorable treatment as to which the Reorganized Debtors and such Holder shall have agreed upon in writing.

**ARTICLE 3.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND**
**EQUITY INTERESTS**

**A.      Special Provision Governing Unimpaired Claims.**

        Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Reorganized Debtors in respect of any Claim classified in an Unimpaired Class, including, without limitation, all rights in respect of objections to such Claims and any legal and equitable defenses to or rights of setoff or recoupment against any such Claim.

**B.      Voting and Nonconsensual Confirmation.**

        **1.**      In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

14

2.      The Debtors reserve the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject the Plan or is deemed to reject the Plan, the Debtors further reserve the right to modify the Plan in accordance with Article 10.C herein.

**C.      Summary of Classification and Treatment of Classified Claims and Equity Interests.**

The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Equity Interest or any portion thereof qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan Proponents have not classified Administrative Claims or Priority Tax Claims, as described in Article 2 of the Plan.

There are six (6) primary Classes, Classes 1-6, based on the type of Claim or Equity Interest. Each primary Class is further classified into separate sub-Classes based on the Debtor against which such Claim is Scheduled or Filed or Equity Interest held, as applicable. The sub-Classes for each primary Class of Claims and Equity Interests shall be as follows:

| Debtor | Applicable Classes of Claims |
|---|---|
| RREAF O&G Portfolio #2 LLC | 1A, 2A, 3A, 4A, 5A, and 6A. |
| RREAF O&G Portfolio #2 Manager LLC | 1B, 2B, 3B, 4B, 5B, and 6B. |
| RREAF O&G Portfolio #3 LLC | 1C, 2C, 3C, 4C, 5C, and 6C. |
| RREAF O&G Portfolio #3 Manager LLC | 1D, 2D, 3D, 4D, 5D, and 6D. |

A summary of the treatment for each primary Class[1] is set forth in the following table:[2]

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Governmental Unit Claims | Unimpaired | Not Entitled to Vote |
| 2 | Senior Lender Claims | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
| 4 | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired (and deemed to accept) if the | Not Entitled to Vote |

---

[1] Unless otherwise specified, all references to a primary Class shall be construed as a reference to and encompassing all sub-Classes within the primary Class. For example, any reference to "Class 1" shall be construed as a reference to Classes 1A, 1B, 1C, and 1D.

[2] The table is for informational purposes only and is qualified in its entirety by Article 3.D herein.

15

#37907714

| | | | |
|---|---|---|---|
| | | Refinancing Confirmation Option is implemented<br><br>Impaired (and deemed to reject) if the Conversion Confirmation Option is implemented | |
| 6A, 6C | Equity Interests:<br>RREAF O&G Portfolio #2 LLC<br>RREAF O&G Portfolio #3 LLC | Unimpaired | Not Entitled to Vote |
| 6B, 6D | Equity Interests:<br>RREAF O&G Portfolio #2 Manager LLC<br>RREAF O&G Portfolio #3 Manager LLC | Unimpaired (and deemed to accept) if the Refinancing Confirmation Option is implemented.<br><br>Impaired (and deemed to reject) if the Conversion Confirmation Option is implemented | Not Entitled to Vote |

## D.     Classification and Treatment.

### 1.     Secured Governmental Unit Claims (Class 1)

(i)     *Classification*: Class 1 consists of the Secured Governmental Unit Claims against each respective Debtor.

(ii)     *Treatment*: On the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Secured Governmental Unit Claim, the Holder of such Allowed Secured Governmental Unit Claim shall receive at the election of the Reorganized Debtors, in full satisfaction, settlement, release, and discharge of and in exchange for, such Allowed Secured Governmental Unit Claim, (a) Cash equal to the value of its Allowed Secured Governmental Unit Claim, (b) the return of the Holder's Collateral securing the Secured Governmental Unit Claim, (c) payment in full as provided under sections 1129(a)(9)(C) and (D) of the Bankruptcy Code on the schedule provided for payment of General Unsecured Claims, or (d) such other less favorable treatment to which the Reorganized Debtors and such Holder shall have agreed upon in writing. To the extent such payments are paid over time, such payments shall be calculated to result in payment in full of the Allowed Secured Governmental Unit Claim with all accrued interest.

(iii)     *Voting*: Class 1 is Unimpaired and, therefore, the Holders of Secured Governmental Claims are deemed to have accepted the Plan.

### 2.     Senior Lender Claims (Class 2)

16

**(i)** *Classification*: Class 2 consists of Senior Lender Claims.

**(ii)** *Treatment*: The Senior Lender will receive on the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Senior Lender Claim the following treatment:

(a) *If the Refinancing Confirmation Option is implemented*, then the Senior Lender will receive on the Effective Date the Refinancing Transactions Payoff Amount. If the Refinancing Confirmation Option is implemented, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

**or**

(b) *If the Conversion Confirmation Option is implemented*, then the Senior Lender shall receive on the Effective Date all of the New RREAF Manager LLC Interests. If the Conversion Confirmation Option is implemented, from and after the Effective Date: (1) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (2) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (3) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (4) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (5) all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect. The Prepetition Loan Documents shall be amended to provide: (i) for a maturity date of January 31, 2017; and (ii) to the extent that a monthly interest payment exceeds the Reorganized Debtors' excess cash flow, that portion of such monthly interest payment shall be paid in kind (all such paid in kind interest shall be added to the principal amount outstanding of the debt under the Prepetition Loan Agreements and shall accrue interest at the applicable rate set forth in the Prepetition Loan Agreements). At any time prior to the Effective Date, the Senior Lender shall have the option to elect to have a portion of the Senior Lender's claims converted, upon the Effective Date, to New RREAF Manager LLC Interests.

**(iii)** *Voting*: Class 2 is Impaired and, therefore, the Holders of the Senior Lender Claims are entitled to vote to accept or reject the Plan.

**3.** **Other Secured Claims (Class 3)**

**(i)** *Classification*: Class 3 consists of the Other Secured Claims.

**(ii)** *Treatment*: Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Other Secured Claim in Class 3 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Other Secured Claim, at the option of the Debtors or Reorganized Debtors:

17

(a) have its Allowed Class 3 Claim reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of such Allowed Class 3 Claim to demand or receive payment of such Allowed Class 3 Claim prior to the stated maturity of such Allowed Class 3 Claim from and after the occurrence of a default; or

(b) receive Cash in an amount equal to such Allowed Class 3 Claim, including any interest on such Allowed Class 3 Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 3 Claim.

(iii) *Voting*: Class 3 is Unimpaired and, therefore, Holders of Other Secured Claims are deemed to have accepted the Plan.

**4.** **Unsecured Priority Claims (Class 4)**

(i) *Classification*: Class 4 consists of all Unsecured Priority Claims.

(ii) *Treatment*: Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Unsecured Priority Claim in Class 4 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Unsecured Priority Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Unsecured Priority Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed Unsecured Priority Claim in Class 4 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

(iii) *Voting*: Class 4 is Unimpaired and, therefore, Holders of Unsecured Priority Claims are deemed to have accepted the Plan.

**5.** **General Unsecured Claims (Class 5)**

(i) *Classification*: Class 5 consists of all General Unsecured Claims.

(ii) *Treatment*:

(a) *If the Refinancing Confirmation Option is implemented*, then, except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed General Unsecured Claim in Class 5 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed General Unsecured Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 5 General Unsecured Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed General

18

Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

(b) *If the Conversion Confirmation Option is implemented*, then, on the Effective Date, all General Unsecured Claims will be discharged and eliminated, and the Holders of any General Unsecured Claims will not receive any distributions or property from the Estates under the Plan on account of such Claims.

**(iii)** *Voting*: If the Refinancing Confirmation Option is implemented, Class 5 is Unimpaired and, therefore, Holders of General Unsecured Claims are deemed to have accepted the Plan. If the Conversion Confirmation Option is implemented, Class 5 is Impaired and conclusively deemed to have rejected the Plan, and therefore, Holders of General Unsecured Claims will not be entitled to vote in respect of the Plan.

**6.** **Equity Interests (Class 6)**

**(i)** *Classification*:

(a) Class 6A consists of Equity Interests in RREAF2.

(b) Class 6B consists of Equity Interests in RREAF2 Manager.

(c) Class 6C consists of Equity Interests in RREAF3.

(d) Class 6D consists of Equity Interests in RREAF3 Manager.

**(ii)** *Treatment*:

(a) Classes 6B and 6D:

(1) *If the Refinancing Confirmation Option is implemented*, then Holders of Allowed Equity Interest in Classes 6B and 6D shall retain their Pro Rata Equity Interests in such Debtors.

**or**

(2) *If the Conversion Confirmation Option is implemented*, Holders of Allowed Equity Interests in Classes 6B and 6D shall have their Equity Interests cancelled and receive no Distribution from the Estates under the Plan.

(b) Classes 6A and 6C: Each Holder of Allowed Equity Interests in Classes 6A and 6C shall retain its equity interests in each respective subsidiary Debtor.

**(iii)** *Voting*:

(a) Classes 6B and 6D:

19

(1) *If the Refinancing Confirmation Option is implemented*, then Classes 6B and 6D are Unimpaired and, therefore, Holders of Equity Interests in Classes 6B and 6D are deemed to have accepted the Plan.

**or**

(2) *If the Conversion Confirmation Option is implemented*, then Classes 6B and 6D are Impaired by the Plan, and each Holder of Equity Interests in Classes 6B and 6D will be conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not be entitled to vote to accept or reject the Plan.

(b) Classes 6A and 6C: Classes 6A and 6C are Unimpaired and, therefore, Holders of Equity Interests in Classes 6A and 6C are deemed to have accepted the Plan.

## ARTICLE 4.
## IMPLEMENTATION OF THE PLAN

As discussed in detail in the Disclosure Statement and otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. Except as otherwise provided in the Plan, all Distributions made to holders of Allowed Claims or Equity Interests in any Class are intended to and shall be final.

**A. Nonconsensual Confirmation.**

The Debtors will seek to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class of Claims or Equity Interests that does not vote to accept the Plan or is otherwise deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**B. Alternate Confirmation Options.**

This Plan provides for two paths to consummate the Plan: (i) the Refinancing Confirmation Option; and (ii) the Conversion Confirmation Option.

**1. The Refinancing Confirmation Option**

If all Refinancing Confirmation Option conditions to the Effective Date set forth in Article 7.B.2 are satisfied or waived by Spectrum Origination in accordance with Article 7.C, the Refinancing Confirmation Option allows the Debtors to satisfy and discharge the Senior Lender Claims through the Refinancing Transactions. If the Debtors satisfy all requirements for the Refinancing Confirmation Option, then, inter alia, (i) the Senior Lender's Liens on the Properties and all other Senior Lender Collateral shall be released, (ii) the Senior Lender's Liens on any

#37907714

equity interests in PCBH LLC and Gallatin Land LLC shall be released, (iii) the Refinancing Transactions Payoff Amount will be distributed to Spectrum Origination, and (iv) any obligations under the Prepetition Guaranty Documents shall be deemed released by the Senior Lender and fully satisfied, all in full and final satisfaction, settlement, release and discharge of, and as payment in full of, the Senior Lender Claims.

### 2.     The Conversion Confirmation Option

If the Refinancing Confirmation Option Conditions to the Effective Date set forth in Article 7.B.2 are not satisfied or waived by Spectrum Origination in accordance with Article 7.C, but all other conditions to the Effective Date set forth in Articles 7.B.1 and 7.B.3 are satisfied or waived in accordance with Article 7.C, then the Plan will be implemented pursuant to the Conversion Confirmation Option. Under the Conversion Confirmation Option, the Senior Lender will receive on the Effective Date all of the New RREAF Manager LLC Interests. Furthermore, under the Conversion Confirmation Option, from and after the Effective Date: (1) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (2) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (3) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (4) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (5) all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

The Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors, and the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been cured and reinstated on the Effective Date; provided that, if the Conversion Confirmation Option is implemented, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

If the Conversion Confirmation Option is selected, all Equity Interests in Classes 6B and 6D will be canceled and the Holders of Equity Interests in Classes 6B and 6D will not receive or retain Cash or other property from the Estates on account of such Equity Interests.

### C.     Cooperation of the Debtors and Senior Lender.

Upon entry of the Confirmation Order, the Debtors and Senior Lender, and each of their Representatives shall reasonably cooperate to take all reasonable acts to implement the terms of the Plan.

Without limiting the foregoing, if the Refinancing Confirmation Option is implemented, the Senior Lender and its Representatives shall, at the sole expense of the Debtors and for so long as the Debtors are acting in good faith, reasonably cooperate with the Debtors and their Representatives to implement the Refinancing Confirmation Option, including, without limitation, taking such actions as are reasonably necessary and desirable to effectuate the release of the Senior Lender Liens and otherwise to consummate the Refinancing Transactions.

#37907714

Without limiting the foregoing, if the Conversion Confirmation Option is implemented, the Debtors and their Representatives shall, for so long as the Senior Lender is acting in good faith, reasonably and promptly cooperate with the Senior Lender and its Representatives to implement the Conversion Confirmation Option, including, without limitation, taking such actions as are reasonably necessary and desirable to (a) manage the Debtors and their assets in the ordinary course of business so as to preserve the value of the Debtors and their assets until the Effective Date and (b) accomplish the orderly transition of the management, books and records, and the Debtors' other assets to the managers and officers of the Reorganized Debtors.

For the avoidance of doubt, no Entity's duty to cooperate pursuant to this Article 4.C shall be construed to require such Entity to incur material expense or to provide goods, materials, labor or services without reasonable compensation.

**D.      Distributions in Satisfaction.**

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan (including, without limitation, if the Conversion Confirmation Option is implemented, the Liens granted pursuant to the Prepetition Loan Documents as modified by the Plan), the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of, and Equity Interests in the Debtors, whether known or unknown, that arose or existed prior to the Effective Date.  Notwithstanding the foregoing or anything herein to the contrary, if the Senior Lender does not receive the Refinancing Transactions Payoff Amount on or prior to the RCO Deadline: (a) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (b) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (c) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; and (d) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option).

**E.      Implementation of Reorganization.**

**1.      Implementation of Reorganization Generally**

The following steps shall be taken, whether the Plan is implemented pursuant to the Refinancing Confirmation Option or the Conversion Confirmation Option:

**(i)      *Continuation of Subsidiary Equity Interests.***

On the Effective Date, existing Equity Interests in each of RREAF2 and RREAF3 shall continue in full force and effect.

**(ii)      *Amended and Restated Charter Documents.***

On the Effective Date, or as soon thereafter as is practicable, the existing certificates of formation and other formation documents, as applicable, of each of the Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, including to prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of

22

nonvoting equity securities is prohibited by the Bankruptcy Code. The form of amended formation documents, as applicable, shall be included in the Plan Supplement.

(iii)     *Powers of Officers*.

The senior executive officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

(iv)     *Corporate Action*.

Except as set forth herein, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of formation and limited liability company agreements, the issuance of securities and instruments or the selection of senior executive officers, managers, or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or members.

The Debtors or the Reorganized Debtors shall be authorized to execute, deliver, file, and record such documents (including those contained in the Plan Supplement), contracts, instruments, releases, and other agreements, and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court, corporate, board, or member approval or action.

(v)     *Continued Corporate Existence*.

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a limited liability company under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law (including, without limitation, the right to change the state in which each Reorganized Debtor is formed), except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or by the Bankruptcy Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

**2.     Additional Implementation Steps Under Refinancing Confirmation Option**.

#37907714

The following additional steps shall be taken if the Plan is being implemented pursuant to the Refinancing Confirmation Option (but not if the Plan is being implemented pursuant to the Conversion Confirmation Option):

(i) *Consummation of Refinancing Transactions.*

The Refinancing Transaction shall close prior to, or substantially contemporaneous with, the RCO Deadline; provided that, notwithstanding any other provision of this Plan, the Plan shall not be implemented pursuant to the Refinancing Confirmation Option if the Refinancing Transactions have not closed on or before the RCO Deadline. Upon closing of the Refinancing Transactions, the Refinancing Transactions Payoff Amount shall be promptly remitted to Spectrum Origination.

(ii) *Continuation of RREAF2 Manager and RREAF3 Manager Equity Interests.*

On the Effective Date, existing Equity Interests in RREAF2 Manager and RREAF3 Manager shall continue in full force and effect.

(iii) *Continuation of Senior Executive Officers, Managers, and Directors.*

On the Effective Date, the terms of the current managing members, and/or managers of the board of managers (or similar governing bodies) of the Debtors, as the case may be, shall be unaffected and such managing members and managers shall be deemed to continue in such roles (without the need for any further action on the part of, or notice to, any Entity).

(iv) *Release of Senior Lender's Liens.*

On the Effective Date and subject to the payment to the Senior Lender of the Refinancing Transactions Payoff Amount: (a) the Senior Lender's Liens on the Properties and all other assets and Collateral securing the Debtors' obligations to the Senior Lender shall automatically be released, without any further action by the Debtors or Senior Lender; and (b) the Senior Lender's Liens on any equity interests in PCBH LLC and Gallatin Land LLC shall automatically be released, without any further action by the Debtors or Senior Lender.

(v) *Indemnification of Managers, Directors, Officers, and Employees.*

On the Effective Date, as provided for in the existing certificate of formation, limited liability company agreement, and/or other organizational documents of each of the Debtors (a) the personal liability of the Reorganized Debtors' then-present and future directors, managers, and officers for post-Effective Date monetary damages resulting from breaches of their fiduciary duties shall be eliminated to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (b) each Reorganized Debtor, subject to appropriate procedures, shall continue to indemnify the Reorganized Debtor's directors, managers, officers, and other employees serving on or after the Effective Date for all pre-Effective Date and post-Effective Date claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; provided, however, the limitations and indemnifications set forth in this Article 4.E.2(v) shall not be applicable to any acts of the

#37907714

Reorganized Debtors' directors, officers, and other employees that constitute gross negligence or willful misconduct.

### 3.  Additional Implementation Steps Under Conversion Confirmation Option.

The following additional steps shall be taken if the Plan is being implemented pursuant to the Conversion Confirmation Option (but not if the Plan is being implemented pursuant to the Refinancing Confirmation Option):

(i)  *Issuance of New RREAF Manager LLC Interests; Cancellation of Equity Interests in RREAF2 Manager and RREAF3 Manager.*

On the Effective Date, Reorganized RREAF2 Manager and RREAF2 Manager shall issue the New RREAF Manager LLC Interests to Spectrum Origination pursuant to the terms of the Plan and the Plan Supplement Documents. Also on the Effective Date, existing Equity Interests in RREAF2 Manager and RREAF3 Manager shall be deemed canceled and extinguished and shall be of no further force and effect. The Reorganized Debtors are authorized to issue or cause to be issued the New RREAF Manager LLC Interests for Distribution in accordance with the terms of the Plan, amended certificates of formation, and New RREAF Manager LLC Agreements without the need for any further corporate or member action. The New RREAF Manager LLC Agreements shall provide RREAF Holdings (which shall hold such rights for the benefit of holders of prepetition RREAF2 Investors equity interests ~~or~~and RREAF 3 Holdings equity interests) with the right to receive net proceeds following the sale of any Property or Properties in accordance with the following net proceeds sale waterfall:  (1) first proceeds from the sale of such Property or Properties will be distributed to Spectrum Origination until such time as Spectrum Origination has received the greater of (a) a 15% XIRR (as used in Microsoft Excel and beginning on 1/1/2016) on a deemed capital account equal to $58,681,556 less the Sweep Payments, plus the Spectrum Legal Fees or (b) a multiple of 1.15 of such amount: then (2) second, any remaining proceeds will be apportioned 85% to Spectrum Origination and 15% to RREAF Holdings (which shall hold and receive such amounts for the benefit of the applicable prepetition holders of RREAF2 Investors equity interests (other than Spectrum Origination or any Affiliates of Spectrum Origination) and RREAF3 Holdings equity interests) until such time as such holders of RREAF2 Investors and RREAF3 Holdings equity interests recoup an amount equal to their initial common equity investments in such entities, then (3) third, all remaining proceeds will be distributed to Spectrum Origination.

(ii)  *Distribution of Pledged Equity Option to RREAF Holdings*

On the Effective Date, Spectrum Origination (and its assignees of Senior Lender Claims) shall distribute the Pledged Equity Option to the Pledgors.

(iii)  *Appointment of Senior Executive Officers, Managers, and Directors.*

On the Effective Date, the terms of the current managing members and/or managers of the board of managers of the Debtors, as the case may be, shall expire and such members and managers shall be deemed removed (without the need for any further action on the part of, or notice to, any Entity). The initial managing members and/or boards of managers of Reorganized RREAF2 Manager and Reorganized RREAF3 Manager shall be comprised of such members

chosen by the Senior Lender. On the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the Amended and Restated Charter Documents and other constituent documents of each Reorganized Debtor. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent known, the identities and affiliations of the initial managers, board members, and senior executive officers of each Reorganized Debtor as of the Effective Date will be disclosed in the Plan Supplement. Any successors to the Reorganized Debtors' initial boards will be appointed in compliance with the applicable Reorganized Debtor's Amended and Restated Charter Documents, and each such manager and officer shall serve from and after the Effective Date pursuant to the terms of the Amended and Restated Charter Documents and other constituent documents of the Reorganized Debtors. In addition, the selection of the Entities who will serve as the initial directors, senior executive officers, members and/or managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or members of the applicable Reorganized Debtor.

    **(iv)**    *[Reserved]*.

    **(v)**    *New RREAF Manager LLC Agreements*.

On the Effective Date all of the holders of New RREAF Manager LLC Interests (including any options, warrants, or securities convertible into, or exercisable or exchangeable for, New RREAF Manager LLC Interests) then outstanding shall be deemed to be parties to the New RREAF Manager LLC Agreements, without the need for execution by any such holder other than Reorganized RREAF2 and/or Reorganized RREAF3 (as applicable). The New RREAF Manager LLC Agreements shall be binding on all parties receiving, and all holders of, New RREAF Manager LLC Interests (including any options, warrants, or securities convertible into, or exercisable or exchangeable for, New RREAF Manager LLC Interests) regardless of whether such parties execute the New RREAF Manager LLC Agreements.

## ARTICLE 5.
## VOTING AND DISTRIBUTIONS

**A.**    **Voting of Claims.**

Each holder of an Allowed Claim or Equity Interest in an Impaired Class entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**B.**    **Designation of Party to Make Distributions.**

The Reorganized Debtors or a disbursing agent acting on their behalf shall make all Distributions provided for in the Plan. The Reorganized Debtors shall be empowered to take all necessary actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan.

#37907714

C.    **Distributions on Allowed Claims.**

1.    **Delivery of Distributions**.

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made by the Reorganized Debtors or any disbursing agent acting on their behalf (a) at the addresses set forth on any Proof of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors or the Reorganized Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes filed with the Bankruptcy Court and served on the Reorganized Debtors by such Holder after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and no written notice of address change has been filed by such Holder with the Bankruptcy Court and served on the Reorganized Debtors.

2.    **Distribution of Cash**.

Any payment of Cash by the Reorganized Debtors or any disbursing agent acting on their behalf pursuant to the Plan shall be made, at the option and sole discretion of the Reorganized Debtors, by (a) Cash, (b) check drawn on a domestic bank, (c) wire transfer, or (d) ACH. Any Cash Distributions or payments will be issued to Holders in whole cents (rounded to the nearest whole cent when and as necessary).

3.    **Fractional Interests and De Minimis Distributions**.

No fractional New RREAF Manager LLC Interests shall be issued or distributed pursuant to the Plan. If any fraction of a New RREAF Manager LLC Interest would otherwise be required to be distributed, the actual Distribution shall reflect a rounding to the nearest whole interest (up or down), with fractions less than half being rounded down and fractions equal to half interests or more being rounded up.

The Reorganized Debtors shall not be required to, but may in their sole and absolute discretion, make Cash Distributions of less than $50. Any Claims affected by this Article 5.C.3 shall be discharged and forever barred from assertion against the Debtors, the Reorganized Debtors, and their respective Properties or Estates.

4.    **Undeliverable Distributions**.

If any Distribution or other payment to the Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, no Distribution shall be made unless and until the Reorganized Debtors have determined the then-current address of such Holder, at which time such Distribution shall be made without interest. Such returned Distributions shall be deemed unclaimed property one year after the Effective Date.

After such date, all unclaimed Distributions of Cash shall become the property of the Reorganized Debtors, in each case without the need for a further order of the Bankruptcy Court.

#37907714

The Allowed Claim on account of which a Distribution could not be made in accordance with this Article 5.C.4 shall be deemed satisfied and released, with no recourse to the Reorganized Debtors, to the same extent as if the Distribution or payment had been made to the Holder of the Allowed Claim.

**5.     Time Bar for Checks**.

Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article 5.C.5 shall be made directly to the Reorganized Debtors by the Holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

**D.     Interest on Claims.**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no Claims shall be entitled to receive interest accruing on or after the Petition Date on any Claim.

**E.     Payment of Specified General Unsecured Claims.**

If the Plan is implemented pursuant to the Conversion Confirmation Option:

**1.     RREAF2 Specified General Unsecured Claims.**  Within five (5) Business Days after the Effective Date, the Reorganized Debtors shall establish the RREAF2 Specified General Unsecured Account and contribute [          ]the amount set forth in the Plan Supplement into such account.  Each Holder of a RREAF2 Specified General Unsecured Claim that (a) does not object to the confirmation of the Plan and (b) on or prior to the thirtieth (30th) Business Day following the Effective Date, executes a Trade Unsecured Claim Release (an "Eligible RREAF2 Trade Holder") shall, unless otherwise agreed in writing between Reorganized RREAF2 and such Holder, receive a Cash payment from the RREAF2 Specified General Unsecured Account equal to the amount of its Class 5A General Unsecured Claim (any of the foregoing, a "Specified RREAF2 Trade Payment").  After all Specified RREAF2 Trade Payments have been distributed to Eligible RREAF2 Trade Holders, the undistributed amount remaining in the RREAF2 Specified General Unsecured Account shall become the sole and exclusive property of the Reorganized Debtors.

**2.     RREAF3 Specified General Unsecured Claims.**  Within five (5) Business Days after the Effective Date, the Reorganized Debtors shall establish the RREAF3 Specified General Unsecured Account and contribute [          ]the amount set forth in the Plan Supplement into such account.  Each Holder of a RREAF3 Specified General Unsecured Claim that (a) does not object to the confirmation of the Plan and (b) on or prior to the thirtieth (30th) Business Day following the Effective Date, executes a Trade Unsecured Claim Release (an "Eligible RREAF3 Trade Holder") shall, unless otherwise agreed in writing between Reorganized RREAF3 and such Holder, receive a Cash payment from the RREAF3 Specified General Unsecured Account equal to the amount of its Class 5C General Unsecured Claim (any of the foregoing, a "Specified RREAF3

Trade Payment"). After all Specified RREAF3 Trade Payments have been distributed to Eligible RREAF3 Trade Holders, the undistributed amount remaining in the RREAF3 Specified General Unsecured Account shall become the sole and exclusive property of the Reorganized Debtors.

**F.    Disputed Claims.**

**1.    No Distribution Pending Allowance**.

Notwithstanding any other provision of the Plan, no Distributions shall be made on account of any Claim that is Disputed unless and until such Claim, or a portion thereof, becomes Allowed.

**2.    Objection and Resolution; Objection Deadline**.

After the Effective Date, the Reorganized Debtors shall have the right to make and to file objections to, or otherwise contest the allowance of, Claims (other than Professional Fee Claims) subsequent to the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court, objections to, or other proceedings concerning the allowance of, Claims (other than Professional Fee Claims) shall be filed and served upon the holders of the Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Professional Fee Claims shall be filed and served on or before the deadline set forth in the motion requesting allowance or payment of such Professional Fee Claims.

Objections to, or other proceedings contesting the allowance of, Claims (other than Professional Fee Claims) may be litigated to judgment, settled, or withdrawn by the Reorganized Debtors. In consideration for the treatment afforded under the Plan, neither the Reorganized Debtors, nor the Senior Lender, shall be entitled to raise objections to any Professional Fee Claims requesting final allowance of compensation totaling, in the aggregate of the Debtors' Fee Cap or less and, upon the Effective Date, shall be deemed to have waived their right to challenge the allowance of any such Professional Fee Claims.

The Reorganized Debtors may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Entity, except as set forth herein. From and after the Effective Date, the Reorganized Debtors shall have the sole authority to administer and adjust the claims register to reflect such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

In the event any Proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended one or more times by the Bankruptcy Court on motion of the Reorganized Debtors without a hearing or notice to creditors.

**G.    Estimation of Claims.**

The Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time, including during the pendency of proceedings concerning such Claim and any appeal

#37907714

thereof. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount may constitute either (a) the Allowed amount of such Claim or (b) a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Reorganized Debtors may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objections, estimations, and resolution procedures are cumulative and not exclusive of one another.

**ARTICLE 6.**
**TREATMENT OF EXECUTORY CONTRACTS,**
**UNEXPIRED LEASES, AND INSURANCE POLICIES**

**A.      Assumption and Rejection of Executory Contracts.**

On the Effective Date, except as otherwise provided herein (including, specifically, in Article 6.F below), all Executory Contracts of the Debtors will be automatically assumed by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts that:

> **(i)**      have been previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court;

> **(ii)**      are subject to a separate motion to assume, assume and assign, assign or reject under section 365 of the Bankruptcy Code that is pending on the Effective Date; or

> **(iii)**      are rejected pursuant to the terms of the Plan and identified on the Contracts Schedule as such.

Except as otherwise provided herein or agreed to by the Reorganized Debtors with the applicable counterparty in writing, each assumed, assumed and assigned, or assigned Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent any provision in any Executory Contract assumed, assumed and assigned, or assigned pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by the assumption, assumption and assignment, or assignment of such Executory Contract, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed, assumed and assigned, or assigned pursuant to this Article 6 shall vest in and be fully enforceable by the Reorganized Debtors or assignee, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the

Bankruptcy Court authorizing and providing for its assumption, assumption and assignment or assignment, or applicable law. Without amending or altering any prior order of the Bankruptcy Court approving the assumption, assumption and assignment, or rejection of any Executory Contract, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.     Limited Extension of Time to Assume or Reject.**

In the event the Reorganized Debtors become aware after the Effective Date of the existence of an Executory Contract that was not included in the Schedules or Contracts Schedule, the right of the Reorganized Debtors to move to assume, assume and assign, or assign such Executory Contract shall be extended until the date that is thirty (30) days after the date on which the Reorganized Debtors become aware of the omission of such Executory Contract. The deemed assumptions provided for in this Article 6 shall not apply to any such Executory Contract.

The Plan Proponents reserve the right to amend the Contracts Schedule and list of Executory Contracts to be rejected, assumed, or assigned to a transferee other than a Reorganized Debtor at any time prior to the Confirmation Hearing.

**C.     Cure Amounts.**

The applicable Reorganized Debtor or assignee, as applicable, will cure any and all undisputed defaults under any Executory Contract that is assumed or assumed and assigned by such Reorganized Debtor under the Plan. ~~At least twenty (20) days prior to the Confirmation Hearing, the Plan Proponents~~ On or before the deadline set forth in the Solicitation Procedures Order, the Debtors shall file and serve upon counterparties to such Executory Contracts, an Assumption Notice that: (a) lists the applicable Cure Claim amount, if any; (b) lists the proposed assignee of the Executory Contract if an Entity other than the Reorganized Debtor; and (c) describes the procedures for filing objections to the proposed assumption, assumption and assignment, or assignment of the Executory Contract. Any objection by a counterparty to an Executory Contract to a proposed assumption, assumption and assignment, assignment or related Cure Claim amount must be filed, served and actually received by the Plan Proponents ~~at least seven (7) days prior to the Confirmation Hearing~~on or before the deadline set forth in the Solicitation Procedures Order. Any counterparty to an Executory Contract that fails to object timely to the proposed assumption, assumption and assignment, assignment or Cure Claim amount related thereto will be deemed to have assented to such matters and will be deemed to have forever released and waived any objection to the proposed assumption (or assumption and assignment or assignment, as applicable) and Cure Claim amount. All such Cure Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 8 hereof. In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to assumption, such claim shall be deemed a Disputed Claim until the entry of a Final Order or orders resolving the dispute and approving the assumption. All Allowed Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made within 30 days following the entry of a Final Order or orders resolving the dispute and approving the assumption (which Final Order may be the Confirmation Order). If an objection to the proposed Cure Claim or

31

any other term of the proposed assumption, assumption and assignment, or assignment of an Executory Contract is sustained by the Bankruptcy Court, the Plan Proponents or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract in lieu of assuming it.

### D.    Rejection Damage Claims.

All Claims for damages arising from the rejection of Executory Contracts pursuant to the Plan or the Confirmation Order must be filed with the Bankruptcy Court in accordance with the terms of the order authorizing such rejection, but in any event no later than 30 days after service of the Effective Date Notice. All Allowed Claims arising from the rejection of Executory Contracts shall be classified as General Unsecured Claims (unless the Bankruptcy Court determines or the Holder of such Claim agrees that such Claims should be subordinated to a priority lower than a General Unsecured Claim pursuant to section 510 of the Bankruptcy Code).

Any counterparty with a Claim arising from the rejection of an Executory Contract that fails to timely file such Claim shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Debtors, the Reorganized Debtors, or their respective Properties and Estates. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 8 hereof.

### E.    Previously Assumed Executory Contracts.

Notwithstanding anything to the contrary in an Executory Contract that was assumed by a Debtor by Order of the Bankruptcy Court entered prior to the Confirmation Date (a "Previously Assumed Contract"), upon the occurrence of the Effective Date, the applicable Reorganized Debtor may assign such Previously Assumed Contract to an assignee identified in the Contracts Schedule in accordance with section 365(f) of the Bankruptcy Code.

### F.    Insurance Policies.

With respect to insurance policies, each such insurance policy whether or not identified as assumed on the Contracts Schedule shall be assumed as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy (a) previously was rejected by the Debtors pursuant to a Bankruptcy Court order, (b) is identified as rejected on the Contracts Schedule, or (c) is the subject of a motion to reject pending on the Effective Date.

The discharge, injunction and release provisions set forth in Article 8 of the Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors, or any other Entity.

### G.    Post-Petition Date Contracts and Leases.

The Debtors shall not be required to assume or reject any contract or lease entered into by the Debtors after the Petition Date. Such contracts and leases will continue in effect after the Effective Date and will be performed by the Reorganized Debtors or assignee thereof in the ordinary course of business in accordance with their terms.

#37907714

**H.      Reservation of Rights.**

Neither the exclusion nor inclusion of any contract or lease on the Contracts Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors, the Senior Lender or the Reorganized Debtors that any such contract or lease is in fact an Executory Contract or that any Debtor or Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE 7.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE**
**EFFECTIVE DATE**

**A.      Conditions to Confirmation.**

Confirmation of the Plan by the Bankruptcy Court is subject to the following conditions precedent:

**1.**      The Disclosure Statement shall have been approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, and notice having been given to all relevant parties in accordance with applicable Bankruptcy Rules; and

**2.**      The Plan and Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, have been filed in substantially final form satisfactory to the Senior Lender in its sole discretion.

**B.      Conditions to the Effective Date.**

**1.**      *General Effective Date Conditions*. Whether the Refinancing Confirmation Option or the Conversion Confirmation Option is implemented, the Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived pursuant to Article 7.C of the Plan:

**(i)**      The Confirmation Order, in form and substance reasonably satisfactory to Spectrum Origination and the Debtors, shall have become a Final Order;

**(ii)**      All material authorizations, consents, and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained; and

**(iii)**      All material actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

**2.**      *Refinancing Confirmation Option Effective Date Conditions*. For the Plan to be implemented pursuant to the Refinancing Confirmation Option, the Plan shall not become effective unless and until it has been confirmed and the following conditions, in addition to those in Article 7.B.1, have been satisfied in full or waived pursuant to Article 7.C of the Plan:

#37907714

(i)      The Debtors shall have paid the Refinancing Transactions Payoff Amount to Spectrum Origination;

(ii)      Each of Spectrum Origination, the Guarantors and the Pledgors shall have executed an agreement effecting mutual releases of claims by and among such parties, in form and substance reasonably satisfactory to Spectrum Origination, the Guarantors, and the Pledgors; and

(iii)      Each of the Plan Supplement Documents that relates to the Refinancing Confirmation Option shall be in form and substance satisfactory to the Debtors and the Senior Lender.

**3.**      *Conversion Confirmation Option Effective Date Conditions*. For the Plan to be implemented pursuant to the Conversion Confirmation Option, the Plan shall not become effective unless and until it has been confirmed and the following conditions, in addition to those in Article 7.B.1, have been satisfied in full or waived pursuant to Article 7.C of the Plan:

(i)      The RCO Deadline (as extended, if applicable) shall have expired;

(ii)      One or more of the Refinancing Confirmation Option Effective Date conditions in Article 7.B.2 have not been satisfied or waived pursuant to Article 7.C of the Plan;

(iii)      The Amended and Restated Charter Documents and the New RREAF Manager LLC Agreements shall have been amended or entered into as provided in Article 4.E.3 of the Plan, each in form and substance satisfactory to Spectrum Origination;

(iv)      The New RREAF Manager LLC Interests to be issued pursuant to Article 4.E.3 of the Plan shall be consistent with the Plan;

(v)      Each of Spectrum Origination, the Guarantors and the Pledgors shall have executed an agreement effecting mutual releases of claims by and among such parties, in form and substance reasonably satisfactory to Spectrum Origination, the Guarantors, and the Pledgors; provided, however, that such agreement shall not release the Pledgors from their obligations under the Pledge Agreements and shall not release the Senior Lender's interest in the Pledged Equity; and

(vi)      Each of the Plan Supplement Documents that relates to the Conversion Confirmation Option shall be in form and substance satisfactory to Spectrum Origination; and

(vii)      The Pledged Equity Option shall have been executed and distributed in accordance with the Plan.

## C.      Waiver of Conditions.

**1.**      Notwithstanding the foregoing, the Debtors and Spectrum Origination (as applicable) reserve the right to waive the occurrence of one or more conditions precedent to

34

Confirmation or the Effective Date or to modify the foregoing conditions precedent in accordance with and as provided in this Article 7.C. Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice (except that given to the Debtors or Spectrum Origination, as applicable), without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.

> **2.** Notwithstanding the satisfaction or waiver of each condition precedent to the Effective Date, the Effective Date shall not occur until the Debtors (for the Refinancing Confirmation Option) or Spectrum Origination (for the Conversion Confirmation Option) file with the Bankruptcy Court a notice stating that the Effective Date has occurred. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

> **3.** The General Conditions to the Effective Date of the Plan set forth in Articles 7.B.1(ii) and (iii) above are waivable by agreement of the Debtors and Spectrum Origination.

> **4.** The Refinancing Confirmation Option Conditions to the Effective Date set forth in Article 7.B.2 above are waivable only by agreement of the Debtors and Spectrum Origination.

> **5.** The Conversion Confirmation Option Conditions to the Effective Date set forth in Article 7.B.3 above are waivable as follows: (A) Articles 7.B.3(i), 7.B.3(ii) and 7.B.3(vii) are each waivable only by agreement of the Debtors and Spectrum Origination; and (B) Articles 7.B.3(iii) through (vi) are each waivable only by Spectrum Origination.

> **6.** Except as expressly stated in this Article 7.C no other conditions to the confirmation of the Plan or the Effective Date may be waived.

**D.    Failure of Conditions.**

If the Refinancing Confirmation Option Conditions to the Effective Date set forth in Article 7.B.2 are not satisfied or waived pursuant to Article 7.C.4 above on or before the RCO Deadline, then: (i) the Plan may no longer be implemented pursuant to the Refinancing Confirmation Option; and (ii) subject to the satisfaction or waiver, as applicable, of the conditions to the Effective Date set forth in Articles 7.B.1 and 7.B.3 of the Plan, the Plan shall, upon the filing by the Senior Lender of a notice stating that the Effective Date has occurred, automatically be implemented pursuant to the Conversion Confirmation Option. If the Effective Date shall not have occurred on or prior to March 31, 2016, this Plan may no longer be implemented and shall be null and void.

**E.    Substantial Consummation.**

"Substantial Consummation" of the Plan, as defined in section 1102(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

#37907714

## ARTICLE 8.
## DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.  Term of Injunctions or Stays.**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**B.  Vesting of Property.**

Except as otherwise provided herein, on the Effective Date, the property of the Debtors' Estates shall automatically vest or revest in the Reorganized Debtors free and clear of all liens, Claims, charges, or other encumbrances. Except as specifically provided in the Plan or the Confirmation Order, the Reorganized Debtors and their property shall receive the benefit of any and all discharges under the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate the Debtors' business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**C.  Cancellation of Notes and Equity Interests.**

As of the Effective Date, except as set forth herein, all notes and securities evidencing Claims or Equity Interests and the rights thereunder of the Holders thereof shall be deemed canceled, null and void, and of no further force and effect, and the Holders thereof shall have no rights against the Debtors, the Reorganized Debtors, or the Estates except the right to receive the Distributions provided for in the Plan; provided, however, that (1) if the Plan is implemented pursuant to the Refinancing Confirmation Option, then the securities evidencing Equity Interests and the rights thereunder of the Holders thereof shall remain intact and shall be unaffected by the confirmation of the Plan; and (2) if the Plan is implemented pursuant to the Conversion Confirmation Option, then the notes and other documents underlying the Senior Lender Claims, other than those notes and Senior Lender Claims converted into the New RREAF Manager LLC Interests, shall remain in effect as set forth in Articles 3.D.2 and 4.B.2. of this Plan.

**D.  Discharge.**

**1.**  The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims, Equity Interests, and causes of action of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors-in-Possession, or any of their respective assets or Properties, arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims or Equity Interest against, and Liens on the Debtors, their respective assets and Properties, arising at any time before the Effective Date, regardless of whether a Proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder. Except as otherwise expressly specified in the Plan, after the Effective Date, any Holder of such

#37907714

discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or Properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.

       **2.**      Notwithstanding anything to the contrary in this Article 8.D (1) if the Plan is implemented pursuant to the Refinancing Confirmation Option, then the securities evidencing Equity Interests and the rights thereunder of the Holders thereof shall remain intact and shall be unaffected by the confirmation of the Plan; and (2) if the Plan is implemented pursuant to the Conversion Confirmation Option, then the notes and other documents underlying the Senior Lender Claims, other than those notes and Senior Lender Claims converted into the New RREAF Manager LLC Interests, shall remain in effect as set forth in Articles 3.D.2 and 4.B.2. of this Plan.

**E.**     **Releases.**

       **1.**      <u>**Releases by the Debtors**</u>.

       NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE EFFECTIVE DATE, THE DEBTORS, ON BEHALF OF THEMSELVES AND THEIR ESTATES, SHALL BE DEEMED TO RELEASE UNCONDITIONALLY, THE RELEASED SENIOR LENDER PARTIES AND THE RELEASED DEBTOR PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, CAUSES OF ACTION, DEBTS, OBLIGATIONS, RIGHTS, SUITS, JUDGMENTS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW OR AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE OR CIRCUMSTANCES, INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY THE DEBTORS, EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF ANY OF THE DEBTORS OR ESTATES AND FURTHER INCLUDING THOSE IN ANY WAY RELATED TO THE ESTATES, THE CHAPTER 11 CASES, OR THE PLAN, EXCEPT THAT (I) THE REORGANIZED DEBTORS SHALL NOT RELINQUISH OR WAIVE THE RIGHT TO ASSERT ANY OF THE FOREGOING AS A LEGAL OR EQUITABLE DEFENSE OR RIGHT OF SET OFF OR RECOUPMENT AGAINST ANY CLAIMS OF ANY SUCH ENTITIES ASSERTED AGAINST THE DEBTORS, (II) THE FOREGOING RELEASE SHALL NOT APPLY TO ANY OBLIGATIONS THAT REMAIN OUTSTANDING IN RESPECT OF LOANS OR ADVANCES MADE TO OTHER PERSONS OR ENTITIES BY THE DEBTORS, AND (III) THE FOREGOING RELEASE APPLIES TO THE RELEASED PARTIES SOLELY IN THEIR RESPECTIVE CAPACITIES DESCRIBED ABOVE.

#37907714

2. **Mutual Releases Among and By Debtors and Senior Lender**

EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, THE DEBTORS AND THE SENIOR LENDER SHALL BE DEEMED TO RELEASE ONE ANOTHER AND THEIR RESPECTIVE REPRESENTATIVES, AFFILIATES AND SUBSIDIARIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, CAUSES OF ACTION, DEBTS, OBLIGATIONS, RIGHTS, SUITS, JUDGMENTS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW OR AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE OR CIRCUMSTANCES (INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY THE DEBTORS) EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THEIR PROPERTY, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF ANY OF THE DEBTORS OR ESTATES AND FURTHER INCLUDING THOSE IN ANY WAY RELATED TO THE ESTATES, THE CHAPTER 11 CASES, OR THE PLAN, EXCEPT THAT (I) THE FOREGOING RELEASE SHALL NOT APPLY TO THEIR RESPECTIVE OBLIGATIONS ARISING UNDER THE PLAN, (II) NEITHER THE REORGANIZED DEBTORS NOR THE SENIOR LENDER SHALL RELINQUISH OR WAIVE THE RIGHT TO ASSERT ANY OF THE FOREGOING AS A LEGAL OR EQUITABLE DEFENSE OR RIGHT OF SET OFF OR RECOUPMENT AGAINST ANY CLAIMS OF ANY SUCH ENTITIES ASSERTED AGAINST THE DEBTORS OR THE SENIOR LENDER, ~~AND (III~~(III) THE FOREGOING RELEASE SHALL NOT APPLY TO THE PLEDGED EQUITY OR OBLIGATIONS ARISING UNDER THE PLEDGE AGREEMENTS, AND (IV) THE FOREGOING RELEASE APPLIES TO THE RELEASED PARTIES SOLELY IN THEIR RESPECTIVE CAPACITIES DESCRIBED ABOVE.

F.    **Exculpation.**

Notwithstanding anything contained in the Plan to the contrary, the Released Parties shall neither have nor incur any liability to any direct or indirect Holder of a Claim or Interest, or a governmental entity on behalf of a Holder of a Claim or Equity Interest, for any postpetition act taken or omitted to be taken in connection with, or related to, the Chapter 11 Cases, including but not limited to the formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; **provided**, **however**, that the foregoing provisions of this Article 8.F shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful

38

misconduct; **_provided_**, **_further_**, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties.

**G.      Preservation of Causes of Action.**

The Reorganized Debtors shall retain all Retained Causes of Action, other than as expressly provided in this Article 8 of the Plan (including the release and exculpation provisions of this Plan) or in a Final Order of the Bankruptcy Court. Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Retained Causes of Action. Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, Retained Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived or relinquished by the Plan. Retained Causes of Action may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Except as expressly provided in the Plan or the Confirmation Order, the Reorganized Debtors may settle any such Retained Causes of Action without Bankruptcy Court approval.

**H.      Injunctions.**

**1.**      Except as otherwise expressly provided for in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Parties and Entities who have held, hold, or may hold Claims or Equity Interests against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from:

**(i)**      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor or Reorganized Debtor, the Released Parties, or their respective successors and assigns and their respective assets and properties, with respect to any such Claim or Equity Interest;

**(ii)**      enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, Reorganized Debtor, or Released Party, or their respective successors and assigns and their respective assets and properties, on account of any such Claim or Equity Interest;

**(iii)**      creating, perfecting or enforcing any encumbrance of any kind against any Debtor, Reorganized Debtor, or the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest;

**(iv)**      asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor or Reorganized Debtor, or against the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim and adjudicated to be valid and enforceable by a Final Order of the Bankruptcy Court; or

#37907714

**(v)** commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or cause of action released or settled hereunder.

## I. Binding Effect of the Plan.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against or Equity Interest in the Debtors, the Estates, and their respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not the Holder has Filed a Claim. The rights, benefits, and obligations of any Entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such Entity (including, without limitation, any trustee appointed for the Debtors under Chapter 7 or 11 of the Bankruptcy Code).

## ARTICLE 9.
## RETENTION OF JURISDICTION

## A. Retention of Jurisdiction.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Estates, all property of the Estates, and the Plan as is legally permissible, including, without limitation, jurisdiction to: (1) allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests; (2) grant, deny, or otherwise resolve any and all applications of Professionals or Entities retained in the Chapter 11 Cases for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date; (3) resolve any matters related to the assumption, assignment, or rejection of any Executory Contract to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom; (4) ensure that Distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan; (5) decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, provided, however, the right of the Reorganized Debtors to commence actions in all appropriate jurisdictions shall be fully reserved; (6) enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement; (7) resolve any cases, controversies, suits, or disputes that may arise in connection with the Effective Date, interpretation, or enforcement of the Plan, including any documents or agreements contained in the Plan Supplement, or any Entity's obligations incurred in connection with the Plan; (8) issue

injunctions, enforce them, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan; (9) enforce Article 8.D, Article 8.E, Article 8.F, and Article 8.I hereof; (10) enforce the Injunctions set forth in Article 8.H hereof; (11) resolve any cases, controversies, suits, or disputes with respect to the releases, injunction, and other provisions contained in Article 8 hereof, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions; (12) enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated; (13) resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and (14) enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE 10.
## MISCELLANEOUS PROVISIONS

### A.    Final Fee Applications.

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of accrued Professional compensation shall be the Professional Fee Claim Bar Date.

### B.    Payment of Statutory Fees.

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Reorganized Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each and every one of the Reorganized Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Reorganized Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

### C.    Modification of the Plan.

Subject to the limitations contained in the Plan: (a) prior to the entry of the Confirmation Order, the Debtors expressly reserve the right to amend the terms of the Plan, subject to compliance with section 1127 of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Reorganized Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, provided, however, that after the entry of the Confirmation Order, the Debtors or Reorganized Debtors shall not request or propose any modification of the Plan without the written consent of the Senior Lender.

#37907714

D.     **Revocation or Deferral of the Plan.**

      **1.**      The Debtors shall have the right to revoke or withdraw the Plan prior to entry of the Confirmation Order.

      **2.**      If the Debtors revoke or withdraw the Plan as permitted by Article 10.D.1 hereof, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

E.     **Successors and Assigns.**

      The rights, benefits, and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

F.     **Governing Law and Construction.**

      Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof. Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the Confirmation Order. All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

G.     **Reservation of Rights.**

      Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) the Debtors or the Senior Lender with respect to the Debtors, Holders of Claims, Equity Interests, or other parties-in-interest; or (b) any Holder of a Claim or other party-in-interest prior to the Effective Date.

H.     **Setoffs and Recoupment.**

      The Reorganized Debtors, as applicable, may, to the extent permitted by sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim or Interest on which payments or distributions are to be made pursuant to the Plan, any Causes of Action or Retained Causes of Action of any nature whatsoever that the Debtors, the Reorganized Debtors, or the Estates may have against the Holder of such Claim or Interest; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of

any Claim or Interest shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Estates of any right of setoff or recoupment that the Debtors, the Reorganized Debtors, or their respective Properties or Estates may have against the Holder of such Claim or Interest, nor of any other Cause of Action or Retained Cause of Action.

**I.    Section 1145 Exemption.**

Pursuant to, in accordance with, and solely to the extent provided under section 1145 of the Bankruptcy Code, if the Conversion Confirmation Option is implemented, the issuance of the New RREAF Manager LLC Interests and distribution thereof under the Plan will be exempt from registration under applicable securities laws (including without limitation, Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, and to the extent such issuance is deemed to be a public offering, the New RREAF Manager LLC Interests may be sold without registration in accordance with section 1145 of the Bankruptcy Code.

**J.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.**

**1.**    The Reorganized Debtors, the Senior Lender, and their respective designees, as applicable, shall be authorized to: (i) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (ii) certify or attest to any of the foregoing actions.

**2.**    Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, sales and use tax or similar tax: (a) any transaction undertaken to implement the terms of this Plan; (b) the transfer to the Reorganized Debtors of any Reorganized Debtors' assets at any time; (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements or agreements of consolidation, disposition, liquidation or dissolution executed in connection with any transaction pursuant to the Plan (including, if the Refinancing Confirmation Option is implemented, the Refinancing Transactions); (d) if the Conversion Confirmation Option is implemented, the issuance, transfer or exchange under the Plan of New RREAF Manager LLC Interests; and (e) the making or assignment of any lease or sublease.

**K.    Section 1125(e) Good Faith Compliance.**

The Debtors and their respective Representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**L.    Further Assurances.**

The Debtors, the Senior Lender, the Reorganized Debtors, all Holders of Claims and Equity Interests receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as

#37907714

may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**M.    Service of Documents.**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Plan Proponent, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

   To the Debtors:

     c/o RREAF Holdings LLC
     4245 N. Central Expressway, Ste 420
     Dallas, TX 75205
     Attn: Kip Sowden, Chief Executive Officer

   *with a copy to*:

     Holland & Knight LLP
     200 Crescent Court, Ste 1600
     Dallas, TX 75201
     Attn: Brent R. McIlwain

   To the Senior Lender:

     c/o Spectrum Group Management
     1253 Springfield Ave, Ste 201
     New Providence, NJ 07974
     |Attn: Jeffrey Schaffer

   *with a copy to*:

     c/o Spectrum Group Management
     1250 Broadway, 19th Floor
     New York, NY 10001
     Attn: Peter Locke

   *with a copy to*:

     King & Spalding LLP
     1180 Peachtree Street NE
     Atlanta, GA 30309
     Attn: Sarah Borders

#37907714

**N.**     **Filing of Additional Documents.**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**O.**     **No Stay of Confirmation Order.**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

*[signature on following page]*

#37907714

Dated: ~~December 10, 2015~~ January 5, 2016

RREAF O&G PORTFOLIO # 2 LLC


By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer


RREAF O&G PORTFOLIO # 2 MANAGER LLC


By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer


RREAF O&G PORTFOLIO # 3 LLC


By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer


RREAF O&G PORTFOLIO # 3 MANAGER LLC


By:     /s/ Webb M. ("Kip") Sowden III
        Webb M. ("Kip") Sowden
        Chief Executive Officer

#37907714

Document comparison by Workshare Compare on Tuesday, January 05, 2016 6:07:04 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://HKDMS/Active/37907714/8 |
| Description | #37907714v8<Active> - RREAF - Chapter 11 Plan |
| Document 2 ID | interwovenSite://HKDMS/Active/37907714/11 |
| Description | #37907714v11<Active> - RREAF - Chapter 11 Plan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 26 |
| Deletions | 60 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 86 |

## **Exhibit B**

**Blackline Comparing the December 10 Disclosure Statement and the Disclosure Statement**

(See Attached)

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § | **CASE NO. 15-70095-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 LLC;** | § | **CASE NO. 15-70096-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § | **CASE NO. 15-70097-rbk** |
| | § | |
| **Jointly Administered Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 15-70094-rbk)** |
| | § | |

**FIRST AMENDED DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC**

HOLLAND & KNIGHT LLP

Robert W. Jones

Brent R. McIlwain

Brian Smith

200 Crescent Court, Suite 1600

Dallas, TX  75201

Telephone:     (214) 964-9500

Facsimile:     (214) 964-9501

*Counsel for the*
*Debtors and Debtors in Possession*

Dated: ~~December 10, 2015~~January 5, 2016

### **TABLE OF CONTENTS**

ARTICLE 1.  INTRODUCTION AND BACKGROUND.................................................6

    A.    SUMMARY .............................................................................6

    B.    THE CHAPTER 11 CASES ........................................................8

    C.    THE DISCLOSURE STATEMENT ................................................8

    D.    BANKRUPTCY COURT APPROVAL OF THIS DISCLOSURE STATEMENT.......................8

    E.    HOLDERS OF CLAIMS ENTITLED TO VOTE .................................8

ARTICLE 2. THE PLAN PROPONENTS RECOMMEND THAT HOLDERS OF CLAIMS IN CLASS 2 VOTE TO ACCEPT THE PLAN. ..................................................10

    A.    OVERVIEW OF PLAN TREATMENT ..........................................10

ARTICLE 3. THE DEBTORS AND THESE CHAPTER 11 CASES.......................................15

    A.    CORPORATE STRUCTURE AND OWNERSHIP ...............................15

    B.    OVERVIEW OF ASSETS AND LIABILITIES ..................................15

    C.    EMPLOYEES ..........................................................................16

    D.    EVENTS LEADING TO THE FILING OF THE CHAPTER 11 CASES ..............................16

    E.    THE DEBTORS' CHAPTER 11 CASES .......................................17

ARTICLE 4. THE PLAN .............................................................................................18

ARTICLE 5. CONFIRMATION PROCEDURES; CONFIRMATION HEARING ..................18

    A.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN............................19

    B.    BEST INTERESTS OF CREDITORS TEST/LIQUIDATION ANALYSIS ...........................20

    C.    PROJECTIONS/FEASIBILITY.....................................................21

    D.    ACCEPTANCE BY IMPAIRED CLASSES......................................22

    E.    CONTACT FOR MORE INFORMATION .......................................22

ARTICLE 6. PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN..........................23

2

A. PARTIES-IN-INTEREST MAY OBJECT TO THE CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...................................................................................23

B. FAILURE TO SATISFY VOTE REQUIREMENT ............................................................23

C. THE DEBTORS MAY NOT BE ABLE TO SECURE CONFIRMATION OF THE PLAN ........23

D. NONCONSENSUAL CONFIRMATION................................................................24

E. THE REORGANIZED DEBTORS MAY OBJECT TO THE AMOUNT OR CLASSIFICATION OF A CLAIM ....................................................................24

F. RISK OF NON-OCCURRENCE OF THE EFFECTIVE DATE ...........................................24

G. CONTINGENCIES NOT TO AFFECT VOTES OF IMPAIRED CLASSES TO ACCEPT OR REJECT THE PLAN ....................................................................24

H. RISK FACTORS THAT MAY AFFECT DISTRIBUTIONS UNDER THE PLAN ..................25

I. RISK FACTORS RELATING TO SECURITIES LAWS .................................................25

J. DISCLOSURE STATEMENT DISCLAIMER...................................................................25

K. LIQUIDATION UNDER CHAPTER 7 ...........................................................................25

L. ALTERNATIVE PLAN OF REORGANIZATION ...........................................................26

M. INHERENT UNCERTAINTY OF PROJECTED DISTRIBUTION ANALYSIS .......................26

ARTICLE 7. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES...........................26

ARTICLE 8.  DEFINED TERMS ................................................................................27

ARTICLE 9. CONCLUSION AND RECOMMENDATION.......................................................27

#37935173

## NOTICE

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC FILED BY THE DEBTORS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN. YOU SHOULD NOT RELY UPON OR USE THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS

DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTORS' POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. RATHER, HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE REORGANIZED DEBTORS MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS. THE PLAN RESERVES FOR THE REORGANIZED DEBTORS THE RIGHT TO BRING CAUSES OF ACTION AND RETAINED CAUSES OF ACTION (DEFINED IN THE PLAN) AGAINST ANY ENTITY OR PARTY IN INTEREST EXCEPT THOSE SPECIFICALLY RELEASED.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED THEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS FROM INFORMATION PROVIDED BY THE DEBTORS AND THE DEBTORS' PRIOR STATEMENTS AND PLEADINGS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.

NO ENTITY HAS AUDITED THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT, WHICH IS BASED, IN PART, UPON INFORMATION PREPARED BY PARTIES OTHER THAN THE DEBTORS. ALTHOUGH THE DEBTORS HAVE MADE EVERY REASONABLE EFFORT TO BE ACCURATE IN ALL MATERIAL MATTERS, THE DEBTORS ARE UNABLE AND DO NOT WARRANT OR REPRESENT THAT ALL THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE.

#37935173

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT, THEY HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND EQUITY INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE FILING OF THIS DISCLOSURE STATEMENT. HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

**ARTICLE 1.[1]**
**INTRODUCTION AND BACKGROUND**

**A.     Summary**

Pursuant to section 1125 of the Bankruptcy Code, the Debtors submit this Disclosure Statement to Holders of Claims and Equity Interests in connection with (a) the solicitation of votes to accept or reject the Plan dated as of December 10, 2015, a copy of which is annexed hereto as **Exhibit A** (and incorporated herein for all purposes), and (b) the Confirmation Hearing, which the Debtors intend to request that the Bankruptcy Court schedule on or before January 29, 2016.

The Debtors filed the Plan concurrently with this Disclosure Statement. As described in Article 4.E.2 of the Plan, the Plan provides for two alternative paths to consummate the Plan: (i) the Refinancing Confirmation Option and; (ii) the Conversion Confirmation Option. The Refinancing Confirmation Option allows the Debtors to satisfy and discharge the Senior Lender Claims through the Refinancing Transactions. If the Debtors satisfy all requirements for the Refinancing Confirmation Option by the RCO Deadline, then the Refinancing Confirmation Option shall be implemented. If the Debtors do not satisfy all requirements for the Refinancing Confirmation Option, then the Conversion Confirmation Option shall be implemented.

If the Refinancing Confirmation Option is implemented, then the Senior Lender will receive, on the Effective Date, the Refinancing Transactions Payoff Amount.  For the avoidance of Doubt, if the Refinancing Confirmation Option is selected, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

#37935173

If the Conversion Confirmation Option is implemented, on the Effective Date:

1. The Senior Lender will receive on the Effective Date all of the New RREAF Manager LLC Interests; and

2. The Senior Lender shall retain its claims against the Debtors and Reorganized Debtors, the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and Reorganized Debtors, and the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors, the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and

3. The Prepetition Loan Documents shall be amended to provide (i) for a maturity date of January 31, 2017, and (ii) to the extent that a monthly interest payment exceeds the Reorganized Debtors' excess cash flow, that portion of such monthly interest payment shall be paid in kind (all such paid in kind interest shall be added to the principal amount outstanding of the debt under the Prepetition Loan Agreements and shall accrue interest at the applicable rate set forth in the Prepetition Loan Agreements). At any time prior to the Effective Date, the Senior Lender shall have the option to elect to have a portion of the Senior Lender's claims converted, upon the Effective Date, to New RREAF Manager LLC Interests.

If the Conversion Confirmation Option is selected, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.

All Holders of Allowed Secured Governmental Unit Claims, Other Secured Claims, and Unsecured Priority Claims will be paid in full or otherwise rendered Unimpaired on the Effective Date; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed Unsecured Priority Claim in Class 4 or Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

If the Refinancing Confirmation Option is implemented, then all Holders of General Unsecured Claims shall be paid in respect of such Claim the full amount thereof in Cash on the later of the on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claims become Allowed, provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

However, if the Conversion Confirmation Option is implemented, then Holders of General Unsecured Claims will be discharged and eliminated, without payment or receipt of any

7

distributions of property from the Estates under the Plan on account of such Claims (provided, however, that Holders of RREAF2 Specified General Unsecured Claims and RREAF3 Specified General Unsecured Claims will retain the right to receive distributions from the RREAF2 Specified General Unsecured Account or RREAF3 Specified General Unsecured Account, as applicable, which accounts are not property of the Estates).

If the Refinancing Confirmation Option is implemented, then all Holders of Allowed Equity Interests in RREAF2 Manager and RREAF3 Manager shall retain their Pro Rata Equity Interests in such Debtors.  If the Conversion Confirmation Option is implemented, all Equity Interests in RREAF2 Manager and RREAF3 Manager will be cancelled on the Effective Date and receive no Distribution from the Estates under the Plan. The equity structure of RREAF2 and RREAF3 will remain the same under either confirmation option.

As set forth in the Plan, under both the Refinancing Confirmation Option and the Conversion Confirmation Option, the Debtors intend to assume, on the Effective Date, all of their Executory Contracts, other than (i) Executory Contracts that have previously been assumed or rejected, (ii) Executory Contracts that are subject to a separate motion, pending on the Effective Date, to assume or reject such Executory Contract, and (iii) Executory Contracts that are identified on the Contracts Schedule as rejected agreements.  The Debtors believe that they will have ample liquidity under either the Refinancing Confirmation Option or Conversion Confirmation Option to satisfy all anticipated cure claims associated with the assumption of such Executory Contracts.

**The Debtors believe that the Plan provides the best recoveries possible for Holders of Allowed Claims and strongly recommends that, if such Holders are entitled to vote, they vote to accept the Plan.**

## B.    The Chapter 11 Cases

On July 8, 2015, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and in connection with the solicitation of acceptances of the Plan.

## C.    The Disclosure Statement

The purpose of this Disclosure Statement is to set forth information that (a) outlines the history of the Debtors and their business and (b) summarizes the Plan. No solicitation for votes on the Plan may be made except pursuant to this Disclosure Statement.

## D.    Bankruptcy Court Approval of this Disclosure Statement

The Debtors intend to request that the Bankruptcy Court hold a hearing to consider and approve this Disclosure Statement on or before January 10, 2016, finding that it contains adequate information of a kind and in sufficient detail to enable each Creditor of the Debtors to make an informed judgment as to whether to vote to accept or reject the Plan.

#37935173

### E.    Holders of Claims Entitled to Vote

Pursuant to the provisions of the Bankruptcy Code, only Holders of allowed Claims or Equity Interests in Classes of Claims or Equity Interests that are Impaired and that are not deemed to have rejected the Plan are entitled to vote to accept or reject the Plan. Classes of Claims or Equity Interests that are Impaired but will not receive or retain any property under the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Classes of Claims or Equity Interests in which the Holders of Claims or Equity Interests are Unimpaired under the Plan are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. For a detailed description of the treatment of Claims and Equity Interests under the Plan, see Article 3.D of this Disclosure Statement.

Claims in Class 2[2] (Senior Lender Claims) of the Plan are Impaired, and to the extent Claims in Class 2 are Allowed, the Holders of such Claims will receive distributions under the Plan. As a result, Holders of Claims in that Class are entitled to vote to accept or reject the Plan. Under the Plan, the only Impaired Class that will be entitled to vote in respect of the Plan will be Class 2 (Senior Lender Claims).  In the event that Class 2 does not vote in favor of the Plan, the Debtors' ability to confirm the Plan may be impeded, and in such instance, the Debtors may need to modify or withdraw the Plan.

If, and to the extent any other Class identified as being Unimpaired is Impaired (whether as a result of the terms of the Plan or any modification or amendment thereto), upon such determination, such Class shall be entitled to vote to accept or reject the Plan.

Claims in Class 1 (Secured Governmental Unit Claims), Class 3 (Other Secured Claims), Class 4 (Unsecured Priority Claims), and Classes 6A and 6C (Equity Interests in the subsidiaries) are Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims and Equity Interests in those Classes are therefore conclusively presumed to have accepted the Plan, and the votes of Holders of such Claims and Interests will therefore not be solicited.

Claims in Class 5 (General Unsecured Claims) and Classes 6B and 6D (RREAF2 Manager and RREAF3 Manager Equity Interests) will be rendered Unimpaired if the Refinancing Confirmation Option is implemented.  If the Refinancing Confirmation Option is Implemented, pursuant to Section 1126(f) of the Bankruptcy Code, Holders of Claims and Interests in Such Classes will be conclusively presumed to have accepted the Plan.  However, if the Conversion Confirmation Option is implemented, Holders of Claims and Interests in Class 5 (General Unsecured Claims), and Classes 6B and 6D (RREAF2 and RREAF3 Manager Equity Interests) will receive no Distribution from the Estates under the Plan.  If the Conversion Confirmation Option is implemented, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in those Classes are therefore conclusively presumed to have rejected the Plan.  Consequently, the votes of Holders of such Claims and Equity Interests will not be solicited.

---

[2]    As set forth below, the Plan provides for six primary Classes 1 through 6, which are each further divided into sub-classes A through D. Unless otherwise specified, any reference to a primary Class shall include and be a reference to all sub-classes within such primary Class. For example, a reference to Class 2 shall be considered a reference to Classes 2A, 2B, 2C, and 2D.

#37935173

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the Plan.

If a Class of Claims rejects the Plan, the Debtors may request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code permits the confirmation of a plan of reorganization notwithstanding the rejection of a plan by one or more impaired classes of claims or equity interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting class.

**ARTICLE 2.**
**THE PLAN PROPONENTS RECOMMEND THAT HOLDERS OF CLAIMS IN CLASS 2 VOTE TO ACCEPT THE PLAN.**

**A.     Overview of Plan Treatment**

The following table summarizes the classification and treatment of Allowed Administrative Claims, Claims, and Equity Interests under the Plan:

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| -- | Administrative Claims: Non-Professional Fee Claims | Paid in full, in Cash without interest, on the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Administrative Claim; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating to such Ordinary Course Administrative Claims. | 100% |
| -- | Professional Fee Claims | Paid in full, in Cash, without interest in accordance with the Interim Compensation Order and/or any order of the Bankruptcy Court entered with respect to final fee applications filed by any Professional. Notwithstanding anything herein or in the Plan to the contrary: (i) the aggregate amount of Professional Fee Claims payable by the Debtors and/or the Reorganized Debtors (including all amounts paid by the Debtors after the Petition Date and prior to the Effective Date) shall not exceed the Debtors' Fee Cap; and (ii) any Professional Fee Claims by persons other than the Debtors' counsel associated with the marketing and/or refinancing of | 100% |

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | the Properties shall not be Allowed. | |
| -- | Priority Tax Claims | Unimpaired.<br><br>As shall have been determined by the Reorganized Debtors, each Holder shall be entitled to receive (a) on the Initial Distribution Date, Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (b) deferred Cash payments over time pursuant to section 1129(a)(9)(C) of the Bankruptcy Code in an aggregate principal amount equal to the face amount of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Plan is confirmed, or (c) such other less favorable treatment as to which the Reorganized Debtors and such Holder shall have agreed upon in writing | 100% |
| 1 | Secured Governmental Unit Claims | Unimpaired.<br><br>On the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Secured Governmental Unit Claim, the Holder of such Allowed Secured Governmental Unit Claim shall receive at the election of the Reorganized Debtors, in full satisfaction, settlement, release, and discharge of and in exchange for, such Allowed Secured Governmental Unit Claim, (a) Cash equal to the value of its Allowed Secured Governmental Unit Claim, (b) the return of the Holder's Collateral securing the Secured Governmental Unit Claim, (c) payment in full as provided under sections 1129(a)(9)(C) and (D) of the Bankruptcy Code on the schedule provided for payment of General Unsecured Claims, or (d) such other less favorable treatment to which the Reorganized Debtors and such Holder shall have agreed upon in writing. To the extent such payments are paid over time, such payments shall be calculated to result in payment in full of the Allowed Secured Governmental Unit Claim with | 100% |

11

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|-------|----------------------------------|-----------|---------------------------------|
|       |                                  | all accrued interest. |                     |
| 2 | Senior Lender Claims | Impaired.<br><br>The Senior Lender will receive on the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Senior Lender Claim the following treatment:<br><br>(a)    If the Refinancing Confirmation Option is implemented, then the Senior Lender will receive on the Effective Date: the Refinancing Transactions Payoff Amount.  If the Refinancing Confirmation Option is implemented, from and after the Effective Date, all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.<br><br>or<br><br>(b)    If the Conversion Confirmation Option is implemented, then the Senior Lender will receive on the Effective Date all of the New RREAF Manager LLC Interests.  Further, if the Conversion Confirmation Option is implemented, from and after the Effective Date: (i) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (ii) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (iii) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (iv) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (v) all obligation sunder the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect.  The Prepetition Loan Documents shall be amended to provide (a) for a maturity date of January 31, 2017; (b) to the extent that a monthly interest payment exceeds the | Unliquidated |

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | Reorganized Debtors' excess cash flow, that portion of such monthly interest payment shall be paid in kind (all such paid in kind interest shall be added to the principal amount outstanding of the debt under the Prepetition Loan Agreements and shall accrue interest at the applicable rate set forth in the Prepetition Loan Agreements).  At any time prior to the Effective Date, the Senior Lender shall have the option to elect to have a portion of the Senior Lender's claims converted, upon the Effective Date, to New RREAF Manager LLC Interests. | |
| 3 | Other Secured Claims | Unimpaired.<br><br>Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Other Secured Claim in Class 3 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Other Secured Claim, at the option of the Debtors or Reorganized Debtors:<br><br>(a)      have its Allowed Class 3 Claim reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of such Allowed Class 3 Claim to demand or receive payment of such Allowed Class 3 Claim prior to the stated maturity of such Allowed Class 3 Claim from and after the occurrence of a default; or<br><br>(b)      receive Cash in an amount equal to such Allowed Class 3 Claim, including any interest on such Allowed Class 3 Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 3 Claim. | 100% |
| 4 | Unsecured Priority Claims | Unimpaired.<br><br>Except to the extent a Holder agrees to other, less | 100% |

13

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | favorable treatment, each Holder of an Allowed Unsecured Priority Claim in Class 4 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Unsecured Priority Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Unsecured Priority Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed Unsecured Priority Claim in Class 4 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount. | |
| 5 | General Unsecured Claims | Unimpaired if the Refinancing Confirmation Option is implemented, Impaired if the Conversion Confirmation Option is implemented<br><br>(a)     If the Refinancing Confirmation Option is implemented, then, except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed General Unsecured Claim in Class 5 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed General Unsecured Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 5 General Unsecured Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.<br><br>(b)     If the Conversion Confirmation Option is implemented, then, on the Effective Date, all General Unsecured Claims will be discharged and eliminated, and the Holders of any General Unsecured Claims will not receive any distributions | 100% if the Refinancing Confirmation Option is implemented<br><br>0% if the Conversion Confirmation Option is implemented |

14

#37935173

| Class | Type of Claim or Equity Interest | Treatment | Approximate Percentage Recovery |
|---|---|---|---|
| | | or property from the Estates under the Plan on account of such Claims. | |
| 6A, 6C | Equity Interests (RREAF2 and RREAF3) | Unimpaired.<br><br>Holders of Allowed Equity Interests in Class 6A and Class 6C shall retain their equity interests in such entities. | N/A |
| 6B, 6D | Equity Interests (RREAF2 Manager and RREAF3 Manager) | Unimpaired if the Refinancing Confirmation Option is implemented, Impaired if the Conversion Confirmation Option is implemented<br><br>(a)      If the Refinancing Confirmation Option is implemented, then Holders of Allowed Equity Interest in Classes 7B and 7D shall retain their Pro Rata Equity Interests in such Debtors.<br><br>(b)      If the Conversion Confirmation Option is implemented, Holders of Allowed Equity Interests in Classes 7B and 7D shall have their Equity Interests cancelled and receive no Distribution from the Estates under the Plan. | Unliquidated |

## ARTICLE 3.
## THE DEBTORS AND THESE CHAPTER 11 CASES

**A.      Corporate Structure and Ownership**

The Debtors, for purposes of this Disclosure Statement and the Plan, include the following entities:

- RREAF O&G Portfolio #2 LLC;

- RREAF O&G Portfolio #2 Manager LLC;

- RREAF O&G Portfolio #3 LLC; and

- RREAF O&G Portfolio #3 Manager LLC.

Each of the Debtors are Delaware limited liability companies.  RREAF O&G Portfolio #2 LLC is a wholly-owned subsidiary of RREAF O&G Portfolio #2 Manager LLC.  RREAF O&G Portfolio #3 is a wholly-owned subsidiary of RREAF O&G Portfolio #3 Manager LLC.

15

Non-debtor RREAF O&G Portfolio #2 Investors LLC owns 100% of RREAF O&G Portfolio #2 Manager LLC.  Non-debtor RREAF Holdings (O&G Hospitality Portfolio Number 3) owns 100% of RREAF O&G Portfolio #3 Manager LLC.

## B.     Overview of Assets and Liabilities

### 1.     The Debtors' Assets

The Debtors, which are headquartered in Dallas, Texas, are owners and eight commercial real estate hotel Properties.  These Properties are located in areas with high concentrations of oil and gas activity, including Midland, Texas.  Accordingly, the Debtors' business is closely tied to the oil and gas labor market, as many of the workers in those areas do not live in the area and therefore, require hotel accommodations.  Substantially all of the Properties are branded with well-known hotel franchises or "flags."

### 2.     The Debtors' Liabilities

(i)     *Senior Lender Claim*s

RREAF2 and RREAF2 Manager are parties to a Loan Agreement dated as of April 30, 2014 (as amended from time to time, the "RREAF 2 Loan Agreement"), with Spectrum Origination as lender.  The original term of the loan evidenced by the RREAF2 Loan Agreement was one year, but the term was extended pursuant to a forbearance agreement to May 20, 2015.  As of the Petition Date, the aggregate principal amount outstanding under the RREAF2 Loan Agreement is approximately $39,118,351.

RREAF3 and RREAF3 Manager are parties to a Loan Agreement dated as of November 21, 2014 (as amended from time to time, the "RREAF3 Loan Agreement", and collectively, with the RREAF2 Loan Agreement, the "Prepetition Loan Agreements"), with Spectrum Origination as lender.  The original term of the loan evidenced by the RREAF3 Loan Agreement was also extended to May 20, 2015 pursuant to a forbearance agreement.  As of the Petition Date, the aggregate principal amount outstanding under the RREAF3 Loan Agreement is approximately $5,128,000.  Collectively, the RREAF2 Loan Agreement and RREAF3 Loan Agreement are referred to herein and in the Plan as the "Loan Agreements."  The Debtors' obligations to Spectrum Origination under the Prepetition Loan Agreements are secured by liens on substantially all of the Debtors' assets, including their hotel Properties.

## C.     Employees

None of the Debtors has any employees. Operations at the Properties are managed by a third-party management service provider, Channel Point Hospitality LLC ("Channel Point"). Channel Point provides, among other things, all employees necessary for the operation of the Properties.

## D.     Events Leading to the Filing of the Chapter 11 Cases

The financing obtained under the Prepetition Loan Agreements was intended to be a bridge facility to assist the Debtors in acquiring their Properties.  Prior to the Petition Date, the Debtors

#37935173

were actively pursuing a refinancing of their obligations to Spectrum Origination and the Senior Lender.  Though the Debtors attempted to negotiate an additional forbearance with Spectrum Origination in order to allow them to complete a refinancing of such obligations, the Debtors and Spectrum Origination were not able to reach final agreement regarding the terms of such a forbearance.

On July 6, 2015, Spectrum Origination began to exercise remedies against the Debtors, which would have impeded their ability to operate on an ongoing basis.  Consequently, the Debtors filed these cases on the Petition Date (July 8, 2015) in order to provide them with a breathing spell needed to complete their potential refinancing efforts.  The Plan preserves the Debtors' ability to complete such a refinancing, through the Refinancing Confirmation Option, so long as such refinancing is completed by the RCO Deadline.

**E.      The Debtors' Chapter 11 Cases**

The Debtors have continued to operate their business as Debtors and Debtors-in-Possession as authorized under sections 1107(a) and 1108 of the Bankruptcy Code. Certain milestone events during the Debtors' Chapter 11 Cases are described below.

**1.      Significant Events in the Debtors' Chapter 11 Cases**

*(i)      Cash Collateral*

On the Petition Date, the Debtors filed a motion seeking the authority to use the Senior Lender's Cash Collateral.  The Bankruptcy Court entered an interim order authorizing cash collateral usage on July 13, 2015, and approved Cash Collateral usage on a final basis by order entered on October 7, 2015 (and subsequently corrected on October 20, 2015).  Pursuant to the final cash collateral order the Debtors are authorized to use Cash Collateral through December 31, 2015.  The Debtors anticipate that Spectrum Origination will extend the Debtors' ability to use Cash Collateral on the existing terms set forth in the final cash collateral order through the Plan's Effective Date.

*(ii)      Retention of Professionals*

The Bankruptcy Court entered an order authorizing the Debtors to retain Holland & Knight LLP, as their general bankruptcy counsel, on September 1, 2015. The Bankruptcy Court also entered an order on October 17, 2015, establishing compensation procedures for the Debtors' professionals whereby a percentage of fees and expenses of the Debtors' and other professionals may be paid on a monthly basis, subject to objection by certain parties and final approval by the Bankruptcy Court.

*(iii)      Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs; Intercompany Receivables*

The Debtors filed their Schedules and Statements of Financial Affairs on August 10, 2015. The Schedules are available for inspection online.

*(iv)    Extension of Plan Exclusivity Period*

The Debtor's exclusivity period to file a plan pursuant to section 1121(d) of the Bankruptcy Code was extended to December 10, 2015, without prejudice to the Debtors' ability to request subsequent extensions of their exclusive plan proposal periods.  The Debtors' exclusive right to solicit acceptances of the Plan has been extended to January 31, 2015, without prejudice to the Debtors' right to request subsequent extensions of such periods.

*(v)    The Debtors' Plan*

On December 10, 2015, the Debtors filed their Plan, which provides for the restructuring of the Senior Lender Claims and other Claims and Equity Interests through one of two options:  the Refinancing Confirmation Option or the Conversion Confirmation Option.

## ARTICLE 4.  THE PLAN

For purposes of this Disclosure Statement, the terms, conditions, and limitations set forth in the Plan, annexed hereto as <u>Exhibit A</u>, are incorporated by reference as if fully set forth herein.

## ARTICLE 5.
## CONFIRMATION PROCEDURES; CONFIRMATION HEARING

The Debtors intend to request that the Confirmation Hearing be held on or before January 29, 2016. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

All Plan objections must be filed with the Bankruptcy Court and served on counsel for the Plan Proponents and certain other parties, in accordance with the order of the Bankruptcy Court approving the Disclosure Statement, on or before the deadline set by the Bankruptcy Court.

Subject to the limitations contained in the Plan: (a) prior to the entry of the Confirmation Order, the Debtors expressly reserve the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code; if the Debtors make material changes in the terms of the Plan, the Debtors will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court); and (b) after the entry of the Confirmation Order, the Reorganized Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**<u>Plan objections must be served on all of the following parties:</u>**

**Counsel to the Debtors:**

HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600

Dallas, TX 752011
Attn: Brent R. McIlwain

**Counsel to Spectrum Origination:**

**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, GA 30309
Attn: Sarah Borders

**Clerk of the Bankruptcy Court:**

**CLERK OF THE BANKRUPTCY COURT**
U.S. Bankruptcy Court for the Western District of Texas
615 E. Houston Street, Room 597
San Antonio, TX 78205

**United States Trustee:**

OFFICE OF THE UNITED STATES TRUSTEE
615 E. Houston Street, Suite 533
San Antonio, TX 78205
Attn: James Rose

## A.      Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe:

1.      The Plan complies with the applicable provisions of the Bankruptcy Code.

2.      The Debtors have complied with the applicable provisions of the Bankruptcy Code.

3.      The Plan has been proposed in good faith and not by any means forbidden by law.

4.      Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (a) made before the Confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

5.      Each Holder of an Impaired Claim or Interest either has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

19

**6.** Each Class that is entitled to vote on the Plan will have accepted the Plan or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code.

**7.** Except to the extent the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Priority Tax Claims will be paid in full on the later of: (a) the Effective Date (or, if not then due, as soon as practicable after the date when such Allowed Administrative Claim or Priority Tax Claim is due); (b) if such Claim is Allowed after the Effective Date, as soon as practicable after the date such Claim is Allowed (or, if not then due, as soon as practicable after the date such Allowed Administrative Claim or Priority Tax Claim is due); (c) at such time and upon such terms as may be agreed upon by such Holder and the Reorganized Debtors; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**8.** The required filing fees have been or will be paid on the Effective Date pursuant to 28 U.S.C. §1930.

**9.** The Reorganized Debtors will pay quarterly fees to the Office of the U.S. Trustee, when due, until the case is closed, converted, or dismissed, whichever occurs first.

## B.    Best Interests of Creditors Test/Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property with a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the bankruptcy court must: (a) estimate the Cash liquidation proceeds that a chapter 7 trustee would generate if each Debtor's chapter 11 cases were converted to a chapter 7 case and the assets of such Debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation distribution to the Plan distribution that such holder would receive if the Plan were confirmed.

In chapter 7 cases, creditors and equity interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

The Debtors believe that the chapter 7 liquidation value available for satisfaction of Claims and Interests in the Debtors would be reduced by: (a) the costs, fees, and expenses of the liquidation under Chapter 7, which would include disposition expenses and the compensation of one or more trustees and their counsel and other retained professionals, (b) the fees of the Chapter 7 trustee(s) and (c) certain other costs arising from conversion of these Chapter 11 Cases to

#37935173

Chapter 7. Further, in a chapter 7 liquidation, Channel Point and the Debtors' Affiliates that currently provide management and strategic advice would be unlikely to continue providing such services that are essential to the operation of the Properties. It is a reasonable assumption that without the benefit of such services, the Debtors' financial performance would quickly deteriorate.

Attached to this Disclosure Statement as **Exhibit B** is an analysis of the estimated distributions under the Plan and a hypothetical chapter 7 liquidation analysis that has been prepared by the Debtors. Assumptions related to both are included with that analysis.

As is evident from the estimated distributions and liquidation analysis, the Debtors believe that Creditors will benefit from the Plan. If the Debtors' assets are liquidated by a Chapter 7 trustee, the maximum recovery will be less than under the Plan.

It is also anticipated that a Chapter 7 liquidation would result in a significant delay in payments being made to Creditors. Bankruptcy Rule 3002(c) provides that conversion of Chapter 11 cases to Chapter 7 will trigger a new bar date for filing claims against the Estates, and that the new bar date will be more than 90 days after these Chapter 11 Cases convert. Not only would a Chapter 7 liquidation delay distribution to Creditors, but it is possible that additional Claims that were not asserted in these Chapter 11 Cases, or were late-filed, could be filed against the Estates. Reopening the Bar Dates in connection with conversion to Chapter 7 would provide these and other claimants an additional opportunity to timely file Claims against the Estates.

For the reasons set forth above, the Debtors believe that the Plan provides a superior recovery for the Holders of Claims, and the Plan meets the requirements of the Bankruptcy Code's "best interests test."

## C.      Projections/Feasibility

Section 1129(a) (11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by the liquidation of the Debtors or the need for further financial reorganization, unless the Plan contemplates such liquidation.

Attached hereto as **Exhibit C** is an analysis of projected cash flows and expenses of the Reorganized Debtors under the Plan's Refinancing Confirmation Option (the "Projections"). These Projections show that if the Plan is confirmed pursuant to the Refinancing Confirmation Option, the Reorganized Debtors will generate enough cash flow to support their obligations and fund their operations.[3]  The Debtors believe that the Plan complies with the financial feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

The Projections are based on numerous assumptions, including confirmation and consummation of the Plan in accordance with its terms; industry performance; no material adverse changes in applicable legislation or regulations, or the administration thereof, or generally accepted accounting principles; no material adverse changes in general business and economic conditions; no material adverse changes in competition; the Reorganized Debtors' retention of key

---

[3] Because under the Conversion Confirmation Option, ownership of the Properties will be essentially returned to the only Impaired Class of Claims that is entitled to vote in respect of the Plan, no Projections for the Conversion Confirmation Option have been prepared.

#37935173

internal and external management and management service providers; the absence of material contingent or unliquidated litigation, indemnity, or other claims; and other matters, many of which will be beyond the control of the Reorganized Debtors and some or all of which may not materialize.

To the extent that the assumptions inherent in the Projections are based upon future business decisions and objectives, they are subject to change. In addition, although they are presented with numerical specificity and are based on assumptions considered reasonable by the Debtors, the assumptions and estimates underlying the Projections are subject to significant business, economic, and competitive uncertainties and contingencies, many of which will be beyond the control of the Reorganized Debtors. Accordingly, the Projections are only estimates and are necessarily speculative in nature. It can be expected that some or all of the assumptions in the Projections will not be realized and that actual results will vary from the Projections, which variations may be material and are likely to increase over time. In light of the foregoing, readers are cautioned not to place undue reliance on the Projections. The Projections were not prepared in accordance with standards for projections promulgated by the American Institute of Certified Public Accountants or with a view to compliance with published guidelines of the SEC regarding projections or forecasts. The Projections have not been audited, reviewed, or compiled by any independent public accountants. The projected financial information contained in this Disclosure Statement should not be regarded as a representation or warranty by the Agent, the Debtors, the Reorganized Debtors, the Senior Lender, their respective advisors, or any other Person that the Projections can or will be achieved.

The Projections should be read together with the information in Article 6 of this Disclosure Statement entitled "Plan-Related Risk Factors and Alternatives to Confirmation and Consummation of the Plan" which sets forth important factors that could cause actual results to differ from those in the Projections.

The Debtors do not intend to update or otherwise revise the Projections, including any revisions to reflect events or circumstances existing or arising after the date of this Disclosure Statement or to reflect the occurrence of unanticipated events, even if any or all of the underlying assumptions do not come to fruition. Furthermore, the Debtors do not intend to update or revise the Projections to reflect changes in general economic or industry conditions.

## D.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described below, each class of claims or equity interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable, and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such obligation; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled or any fixed price at which the debtor may redeem the security.

22

Any "impaired" Classes of Claims or Equity Interests that will receive no distributions from the Estates in respect of such Claims or Equity Interests are deemed to have rejected the Plan, and therefore, solicitation of acceptances of such impaired Classes of Claims or Equity Interests receiving no property or distributions from the Estates pursuant to the Plan is not required.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired interests as acceptance by holders of at least two-thirds in amount and more than one-half in number of such interests.

The following Class of Claims is Impaired and entitled to vote in respect of the Plan:

- Class 2 – Senior Lender Claims.

**E.      Contact for More Information**

Any interested party desiring further information about the Plan may contact legal counsel to the Debtors by writing to Holland & Knight LLP, 200 Crescent Court, Suite 1600, Dallas, TX 75201, Attn: Brent R. McIlwain.

## ARTICLE 6.
## PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND/OR EQUITY INTERESTS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.

**A.      Parties-in-Interest May Object to the Classification of Claims and Equity Interests**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Plan creates six primary Classes, each with four sub-Classes, of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

**B.      Failure to Satisfy Vote Requirement**

If votes are received in an amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan.

#37935173

Because there is only one Impaired Class of Claims or Equity Interests that is entitled to vote in respect of the Plan (Class 2 Senior Lender Claims), any rejection of the Plan by the Holders of Class 2 Senior Lender Claims could impede the Debtors' ability to confirm the Plan.

In the event that sufficient votes to confirm the Plan are not received, the Debtors may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims and Equity Interests as those proposed in the Plan.

**C.      The Debtors May Not Be Able to Secure Confirmation of the Plan**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, including, among other requirements, a finding by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization; and (c) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim and/or Equity Interest might challenge whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in the Plan. If the Plan is not confirmed, it is unclear what Distributions, if any, Holders of Allowed Claims and Equity Interests would receive with respect to their Allowed Claims and/or Equity Interests.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for confirmation. The Debtors, in conjunction with their advisors, continue to evaluate any and all possibilities to ensure that the best recoveries for all constituencies are realized. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan.

**D.      Nonconsensual Confirmation**

24

In the event that any impaired class does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Plan Proponents reserve the right to request such nonconsensual Confirmation in accordance with section 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will approve non-consensual confirmation of the Plan.

**E.  The Reorganized Debtors May Object to the Amount or Classification of a Claim**

Except as otherwise provided in the Plan, the Debtors (or the Reorganized Debtors) reserve the right to object to the amount or classification of any Claim. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated Distributions described in this Disclosure Statement.

**F.  Risk of Non-Occurrence of the Effective Date**

Although the Debtors believe that the Effective Date will occur reasonably promptly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

**G.  Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan**

The Distributions available to Holders of Allowed Claims and Equity Interests under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies, which could affect Distributions available to Holders of Allowed Claims and Equity Interests under the Plan, will not affect the validity of the vote taken by the Impaired Class to accept or reject the Plan or require any sort of revote by the Impaired Class.

**H.  Risk Factors that May Affect Distributions Under the Plan**

The Claims estimates set forth herein are based on various assumptions. The actual amounts of Allowed Claims may differ significantly from those estimates should one or more underlying assumption prove to be incorrect. Additionally, the ~~Plan Proponents~~Debtors have made certain assumptions, as described herein, regarding liquidation under chapter 7 of the Bankruptcy Code, **which should be read carefully**.

**I.  Risk Factors Relating To Securities Laws**

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan from registration under the Securities Act and state securities laws if three principal requirements are satisfied: (a) the securities must be offered and sold under a plan and must be securities of the debtor, an affiliate participating in a joint plan with the debtor, or a successor to the debtor under the plan; (b) the recipients of the securities must hold a prepetition or administrative expense claim against the debtor or an interest in the debtor; and (c) the securities

must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property. To the extent that the New LLC Interests are deemed to constitute securities issued in accordance with the Plan, the Debtors believe that such interests satisfy the requirements of § 1145(a)(1) of the Bankruptcy Code and, therefore, such interests are exempt from registration under the Securities Act and applicable state securities laws.

**J.      Disclosure Statement Disclaimer**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Reorganized Debtors, the Agent, or other parties in interest, to object to that Holder's Allowed Claim, or the Reorganized Debtors to bring Causes of Action or Retained Causes of Action regardless of whether any Claims, Causes of Action, and/or Retained Causes of Action are specifically or generally identified herein or in the Plan.

**K.      Liquidation Under Chapter 7**

If the Plan is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Debtors for Distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that any such conversion would likely reduce any Distribution to Holders of Claims and Equity Interests based on, among other things, (a) the increased costs of a chapter 7 case arising from the fees payable to a chapter 7 trustee and professional advisors to such trustee; (b) substantial increases in claims which would be satisfied on a priority basis; and (c) the substantially longer period of time that would elapse until distributions could be made under chapter 7. The Debtors believe that, in the event of a liquidation pursuant to chapter 7 of the Bankruptcy Code, unsecured Creditors and Holders of Equity Interests will receive no recovery for their Claims and Equity Interests whatsoever.

**L.      Alternative Plan of Reorganization**

If the Plan is not confirmed, the Bankruptcy Court may confirm another plan that may be filed by the Debtors.

**M.      Inherent Uncertainty of Projected Distribution Analysis**

The Projections are based on numerous assumptions, including confirmation and consummation of the Plan in accordance with its terms; industry performance; no material adverse changes in applicable legislation or regulations, or the administration thereof, or generally accepted accounting principles; no material adverse changes in general business and economic conditions; no material adverse changes in competition; the absence of material contingent or unliquidated litigation, indemnity, or other claims; and other matters, many of which will be beyond the control of the Debtors and the Reorganized Debtors and some or all of which may not materialize.

To the extent that the assumptions inherent in the estimated distributions are based upon future business decisions and objectives, they are subject to change. In addition, although they are presented with numerical specificity and are based on assumptions considered reasonable by the

#37935173

Debtors, the assumptions and estimates underlying the estimated distributions are subject to significant business, economic, and competitive uncertainties and contingencies, many of which will be beyond the control of the Debtors. Accordingly, the Projections are only estimates and are necessarily speculative in nature. It can be expected that some or all of the assumptions in the estimated distributions will not be realized and that actual results will vary from the estimated distributions, which variations may be material and are likely to increase over time. In light of the foregoing, readers are cautioned not to place undue reliance on the estimated distributions. The estimated distributions were not prepared in accordance with standards for projections promulgated by the American Institute of Certified Public Accountants or with a view to compliance with published guidelines of the SEC regarding projections or forecasts. The estimated distributions have not been audited. The estimated distributions information contained in this Disclosure Statement should not be regarded as a representation or warranty by the Debtors, their advisors or Representatives, or any other Entity, that the estimated distributions can or will be achieved.

**N.      Risks Related To Assumption of Franchise Agreements**

As set forth above, substantially all of the Debtors' Properties are branded with well-known hotel franchises or "flags."  The Debtors' rights to use such hotel "flags" are governed by executory franchise agreements with various hotel franchisors.  Certain franchisors have indicated that they believe that implementing the Plan pursuant to the Conversion Confirmation Option may result in the termination of such franchise agreements, as such franchise agreements are not assignable as a matter of law unless the Senior Lender is able to apply for, and receive a new license from the applicable hotel franchisor(s) prior to the Effective Date.  Such franchisors also allege that execution of the New Management Agreement contemplated under the Conversion Confirmation Option would require prior approval by the franchisors, and that failure to obtain such approval could result in termination of one or more franchise agreements.  The franchisors also allege that if their franchise agreement is terminated upon implementation of the Conversion Confirmation Option, then the Debtors would need to immediately cease use of all marks and other rights set forth in the franchise agreement.  The Debtors dispute such allegations set forth by the franchisors.  However, in the event that the franchisors prevail in respect of such arguments, the Debtors' future operations under the Conversion Confirmation Option could be significantly impaired.

**O.      Risks Related to Plan Voting Classification**

One creditor has indicated that it believes that as a holder of a Class 5 general unsecured claim against the Debtors' estates, it should be entitled to vote in respect of the Plan because payment to Class 5 creditors under the Refinancing Confirmation Option is conditioned upon the Senior Lender first receiving payment of the Refinancing Transactions Payoff Amount.  The Debtors dispute such allegations and believe that the only creditor entitled to vote in respect of the Plan is the Senior Lender.

#37935173

## ARTICLE 7.
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

THE TAX CONSEQUENCES UNDER THE PLAN TO HOLDERS OF CLAIMS OR EQUITY INTERESTS MAY VARY BASED UPON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW AND THE TIME THAT MAY ELAPSE BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND FINAL DISTRIBUTIONS UNDER THE PLAN. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED WITH RESPECT THERETO.

THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THE DEBTORS AND THEIR ADVISORS AND REPRESENTATIVES CANNOT PROVIDE ANY SUCH ADVICE. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE UPHELD. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PLAN.

INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE U.S. INTERNAL REVENUE SERVICE, ANY STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) ARE NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE CODE. STATEMENTS REGARDING TAX IMPLICATIONS CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) ARE NOT WRITTEN TO SUPPORT THE MARKETING OR PROMOTION OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE

DISCLOSURE STATEMENT. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

TAX CONSEQUENCES MAY VARY BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER, OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

#37935173

## ARTICLE 8.
## DEFINED TERMS

As set forth in footnote 1 above, capitalized terms used, but not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

## ARTICLE 9.
## CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interests of all Holders of Claims and urge all Holders of Claims entitled to vote to accept the Plan.

Dated: ~~December 10, 2015~~January 5, 2016

Respectfully submitted,

HOLLAND & KNIGHT LLP

Robert W. Jones

Brent R. McIlwain

Brian Smith

200 Crescent Court, Suite 1600

Dallas, TX  75201

Telephone:     (214) 964-9500

Facsimile:     (214) 964-9501

*Counsel for the*
*Debtors and Debtors in Possession*

*[signature on following page]*

29

#37935173

Dated:  ~~December 10, 2015~~January 5, 2016

       RREAF O&G PORTFOLIO # 2 LLC


       By: /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

       RREAF O&G PORTFOLIO # 2 MANAGER LLC


       By: /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

       RREAF O&G PORTFOLIO # 3 LLC


       By: /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

       RREAF O&G PORTFOLIO # 3 MANAGER LLC


       By: /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

# EXHIBIT A

## <u>Plan</u>

(Filed concurrently with this Disclosure Statement)

**EXHIBIT B**

**Estimated Distributions/Liquidation Analysis**

(~~To be added via a supplement submitted prior to the hearing to approve this Disclosure Statement~~)See Attached)

# EXHIBIT C

## Refinancing Confirmation Option Projections

(~~To be added via a supplement submitted prior to the hearing toapprove this Disclosure Statement~~)See Attached)

## EXHIBIT D

## Retained Causes of Action

The attached lists and descriptions set forth the Retained Causes of Action to be retained by the Debtors pursuant to the Plan.  The Debtors reserve the right to amend this schedule to modify the description of, or add additional descriptions of, Causes of Action and/or Retained Causes of Action, at any time prior to the Plan's Effective Date.

The Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Causes of Action specifically listed herein, and the Reorganized Debtors' rights and ability to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No person or entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Reorganized Debtors will not pursue any and all available Causes of Action against any person or entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against a person or entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to some other Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.

All of the Causes of Action shall vest in the Reorganized Debtors, including, without limitation:

1. All Claims and Causes of Action identified in any of the Debtors' schedules of assets and liabilities or statements of financial affairs;

2. All Claims and Causes of Action relating to, or asserted in, the suit titled: RREAF O&G Portfolio #2 LLC v. A. Sangha Investments, Inc. and Amandeep Sangha, pending in District Court for Midland County;

3. All Claims and Causes of action against, or relating to, A. Sangha Investments, Inc., Amandeep Sangha, or any affiliates or representatives of the foregoing;

4. All Causes of Action arising under Chapter 5 of the Bankruptcy Code, including, without limitation, those Causes of Action that could have been brought by any of the Debtors under sections 544, 547, 548, 549, 550, 551, 552, and/or 553 against any person or entity (collectively, the "Bankruptcy Avoidance Actions");

5. All Causes of action arising under similar state or federal statutes or federal common law as the Bankruptcy Avoidance Actions, including, without limitation, Causes of Action under

laws, rules, or regulations based on the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act.

6. Any other Causes of Action matured or unmatured, known or unknown, then existing or thereafter arising, of any of the Debtors and/or the Estates that exist or may or could be pending on the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date;

The claims and Causes of Action described herein and retained pursuant to the Plan are additions and supplements to, and not replacements of, the claims and Causes of Action described elsewhere in the Plan, Disclosure Statement, and/or Plan Supplement.

2

Document comparison by Workshare Compare on Tuesday, January 05, 2016 6:04:03 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://HKDMS/Active/37935173/3 |
| Description | #37935173v3<Active> - RREAF - Disclosure Stmt for Chapter 11 Plan |
| Document 2 ID | interwovenSite://HKDMS/Active/37935173/4 |
| Description | #37935173v4<Active> - RREAF - Disclosure Stmt for Chapter 11 Plan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 14 |
| Deletions | 8 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 22 |