**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § | **CASE NO. 15-70095-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 LLC;** | § | **CASE NO. 15-70096-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § | **CASE NO. 15-70097-rbk** |
| | § | |
| **Jointly Administered Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 15-70094-rbk)** |
| | § | |

**DEBTORS' MEMORANDUM OF LAW: (I)  IN SUPPORT OF**
**THE SECOND AMENDED PLAN OF REORGANIZATION OF RREAF O&G**
**PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G**
**PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC**
**PROPOSED BY THE DEBTORS AND SPECTRUM ORIGINATION LLC, AS**
**MODIFIED; AND (II) IN REPLY TO OBJECTIONS TO PLAN CONFIRMATION**

Robert W. Jones
Brent R. McIlwain
Brian Smith
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX  75201
Telephone:      (214) 964-9500
Facsimile:      (214) 964-9501
Email:          robert.jones@hklaw.com
                brent.mcilwain@hklaw.com
                brian.smith@hklaw.com

*Counsel for the Debtors and*
*Debtors-in-Possession*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

PLAN SOLICITATION, VOTING AND  ADDITIONAL CONFIRMATION NOTICE
BACKGROUND ....................................................................................................................2

PLAN CONFIRMATION OBJECTIONS RECEIVED....................................................................4

ARGUMENT ..........................................................................................................................4

    A.    THE PLAN COMPLIES WITH THE APPLICABLE PROVISIONS OF  THE BANKRUPTCY
CODE (§ 1129(A)(1)) ....................................................................................5

    B.    THE DEBTORS COMPLIED WITH THE APPLICABLE PROVISIONS OF THE  BANKRUPTCY
CODE (§ 1129(A)(2)) ..................................................................................10

    C.    THE PLAN WAS PROPOSED IN GOOD FAITH (§ 1129(A)(3)) ............................11

    D.    PAYMENTS MADE BY THE DEBTORS FOR PROFESSIONAL FEES AND  EXPENSES ARE
SUBJECT TO COURT APPROVAL (§ 1129(A)(4)).............................................11

    E.    THE DEBTORS HAVE DISCLOSED ALL NECESSARY INFORMATION REGARDING
DIRECTORS, OFFICERS, AND INSIDERS (§ 1129(A)(5)) ...................................12

    F.    SECTIONS 1129(A)(6) AND (14)-(16) DO NOT APPLY .................................13

    G.    THE PLAN SATISFIES THE BEST INTERESTS TEST WITH RESPECT TO  IMPAIRED
CLAIMS AND EQUITY INTERESTS (§ 1129(A)(7)).........................................13

    H.    SECTION 1129(A)(8) IS NOT AN IMPEDIMENT TO CONFIRMATION ................14

    I.    THE PLAN PROVIDES FOR PAYMENT IN FULL OF ALL ALLOWED  PRIORITY CLAIMS
AND STATUTORY FEES (§ 1129(A)(9) AND (12)) ..........................................15

    J.    THE PLAN WAS ACCEPTED BY AN IMPAIRED CLASS OF CLAIMS,  NOT COUNTING
VOTES OF INSIDERS (§ 1129(A)(10)).........................................................16

    K.    THE PLAN IS FEASIBLE (§ 1129(A)(11)).....................................................16

    L.    THE DEBTORS ARE NOT OBLIGATED TO PAY RETIREE BENEFITS (§ 1129(A)(13))........18

    M.    THE PLAN SATISFIES THE CRAM-DOWN REQUIREMENTS OF SECTION 1129(B) ..............18

    N.    THE PLAN COMPLIES WITH SECTION 1129(D) OF THE BANKRUPTCY CODE ..................20

    O.    RESPONSE TO PLAN CONFIRMATION OBJECTIONS .........................................20

    H.    INJUNCTIONS.............................................................................................26

THE CONFIRMATION ORDER SHOULD BE EFFECTIVE IMMEDIATELY ......................30

CONCLUSION....................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acorn Hotels, LLC*,
   251 B.R. 696 (Bankr. W.D. Tex. 2000) ..................................................................23

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
   526 U.S. 434 (1999) ................................................................................................18

*In re Berhnard Steiner Pianos USA, Inc.*,
   292 B.R. 109 (Bankr. N.D. Tex. 2002) ....................................................................5

*In re Briscoe Enterprises, Ltd.*,
   994 F.2d 1160 (5th Cir. 1993) ................................................................................17

*In re DBSD North America, Inc.*,
   419 B.R. 179 (Bankr. D. Del. 2009) .......................................................................22

*In re Greate Bay Hotel & Casino, Inc.*,
   251 B.R. 213 (Bankr. D.N.J. 2000) ........................................................................17

*In re Heritage Organization, L.L.C.*,
   375 B.R. 230 (Bankr. N.D. Tex. 2007) ...................................................................22

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) .......................................................................23

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986) ......................................................................19

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988) ...................................................................................17

*In re Lernout & Hauspie Speech Prods., N.V.*,
   301 B.R. 651 (Bankr. D. Del. 2003) .......................................................................19

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*,
   329 B.R. 491 (D.N.J. 2005) ....................................................................................12

*In re Maralak, Ltd.*,
   104 B.R. 446 (Bankr. M.D. Fla. 1989) ...................................................................28

*In re Mirant Corp.*,
   348 B.R. 725 (Bankr. N.D. Tex. 2006) ...................................................................22

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)............................................................................................11

*In re NNN 3500 Maple 26 LLC*,
    2014 WL 6665991 (Bankr. N.D. Tex. 2014)......................................................25

*In re Ondova Limited Company*,
    2012 WL 5879147 (Bankr. N.D. Tex. 2012)......................................................23

*In re Pacific Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) .............................................................21, 22, 24, 25

*In re Premier Int'l Holdings Inc.*,
    2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ............................................26

*In re Smyth*,
    207 F.3d 758 (5th Cir. 2000) ..............................................................................24

*In re Sun Country Dev., Inc.*,
    764 F.2d 406 (5th Cir. 1985) ..............................................................................11

*In re TXCO Resources Inc.*,
    Case No. 09-51807 (Bankr. W.D. Tex. Jan. 27, 2010).......................................25

*In re U.S. Truck Co., Inc.*,
    800 F.2d 581 (6th Cir. 1986) ..............................................................................17

**Statutes**

11 U.S.C. § 105(a) .....................................................................................................26

11 U.S.C. § 1122(a) .....................................................................................................5

11 U.S.C. § 1123(a)(1)..................................................................................................5

11 U.S.C. § 1123(b)(1)-(6) ...........................................................................................9

11 U.S.C. § 1123(b)(3)(A)......................................................................................22, 23

11 U.S.C. § 1129(a)(7)(A)...........................................................................................14

11 U.S.C. § 1129(a)(14)...............................................................................................13

11 U.S.C. § 1129(a)(15)...............................................................................................13

11 U.S.C. § 1129(a)(16)...............................................................................................13

11 U.S.C. § 1129(b)(1) .............................................................................15, 18, 19, 20

#39051141

11 U.S.C. § 1129(b)(2)(B)(ii), (b)(2)(C)(ii)....................................................................................19

11 U.S.C. § 1129(b)(2)(B)(ii) & (C)(ii)...........................................................................................18

28 U.S.C. § 1930.........................................................................................................................15, 16

**Other Authorities**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977) ..................................................................5

H.R. Rep. No. 95-595, at 412 (1977)..............................................................................................10

S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978) .....................................................................5

S. Rep. No. 95-989, at 26 (1978) ....................................................................................................10

#39051141

## PRELIMINARY STATEMENT

1.      The debtors and debtors in possession (the "Debtors") in the above-captioned cases
(the "Chapter 11 Cases") submit this memorandum of law in support of confirmation of the *Second
Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2
Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC
Proposed by the Debtors and Spectrum Origination LLC, as Modified* [Docket No. 211], dated
February 8, 2016 (as modified, amended, or supplemented from time to time, the "Plan").[1] In
further support of confirmation of the Plan, the Debtors rely on the *Declaration of Brent R.
McIlwain of Holland & Knight LLP Regarding the Tabulation of Ballots Cast on the Second
Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2
Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC
Proposed by the Debtors and Spectrum Origination LLC, as Modified* (the "Voting Declaration").

2.      On July 8, 2015 (the "Petition Date"), the Debtors commenced the Chapter 11
Cases.  The Chapter 11 Cases were initially commenced in order to stay the prepetition exercise
of remedies by the Debtors' principal lender, Spectrum Origination, and provide the Debtors with
a "breathing spell" with  during which the Debtors could complete a beneficial sale or refinancing
of their hotel properties.  Indeed, during the months following the Petition Date, the Debtors have
explored numerous options for a potential sale or refinancing of their properties, most recently
through discussions with a party that may refinance the properties as part of a real estate investment
trust (REIT) transaction.

3.      Following months of negotiation, the Debtors have agreed, with Spectrum
Origination, on the terms of a proposed plan of reorganization (the Plan) that will both (i) provide

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan. Prior
version of the Plan were filed on December 10, 2015 [Docket No. 147], and January 5, 2016 [Docket No. 157].

#39051141

a clear and expeditious timeline for resolving the Debtors' bankruptcy cases and (ii) preserve the Debtors ability to complete a beneficial sale or refinancing of their hotel properties that will satisfy creditor claims and preserve equity for the benefit of the Debtors' remaining stakeholders.  The Plan accomplishes these dual goals by providing for an immediate transfer of ownership in the Debtors to Spectrum Origination on the Effective Date, subject to the right of an affiliate of the Debtors to redeem such properties (and satisfy all creditor claims) if their refinancing efforts succeed on or before the May 31, 2016 deadline to exercise that redemption option.

4.       The Debtors believe the Plan satisfies the requirements for confirmation pursuant to section 1129 of the Bankruptcy Code, the Plan maximizes value for creditors, and the Plan is in the best interests of the Debtors' estates.  Accordingly, the Debtors respectfully submit that the Plan should be confirmed for the reasons set forth below.

### PLAN SOLICITATION, VOTING AND
### ADDITIONAL CONFIRMATION NOTICE BACKGROUND

5.       On January 6, 2016, the Court entered an order [Docket No. 163] (the "Solicitation Procedures Order") that, among other things: (a) approved the Disclosure Statement; (b) established deadlines and related procedures for submitting objections to confirmation of the Plan; (c) approved other procedures associated with soliciting acceptances of the Plan and obtaining confirmation of the Plan; (d) approved the form of certain notices of the Confirmation Hearing, and (e) approved procedures for the assumption and/or assignment of executory contracts and unexpired leases under the Plan.

6.       On January 8, 2015, consistent with the Solicitation Procedures Order, counsel for the Debtors distributed solicitation packages (the "Solicitation Packages") consisting of the Disclosure Statement, the Plan, and Plan ballot to the Holder of Claims in Class 2 -- the only Class of Claims or Equity Interests entitled to vote in respect of the Plan.  The Solicitation Packages

2

were distributed via electronic mail. Each such Holder receiving a Solicitation Package was instructed to follow the instructions contained in the Plan ballots (and described in the Disclosure Statement) and to return their respective ballots regarding the Plan no later than January 25, 2016 (the "Voting Deadline").

7.     As set forth in the Voting Declaration, all Holders of Class 2 Claims voted to accept the Plan. Indeed, the only Holder of Class 2 Claims, Spectrum Origination, is a co-proponent of the Plan.

8.     In addition to transmitting the Solicitation Packages to Spectrum, the Debtors adhered to the procedures set forth below to provide notice of the Plan, Confirmation Hearing, and related deadlines associated with Plan Confirmation:

a.     First Confirmation Hearing Notice: on January 8, 2016, the Debtors served a copy of the Debtors' first amended chapter 11 plan [Docket No. 157], Disclosure Statement, and a notice of the Debtors' chapter 11 plan and a proposed hearing to confirm that plan [Docket No. 164] (collectively, the "First Confirmation Hearing Package" to all interested parties in the Debtors' bankruptcy cases. The service of such notice was confirmed by the *Certificate of Service of Confirmation Hearing Notices* [Docket No. 217] (the "Confirmation Hearing Affidavit") which identifies the interested parties served with the First Confirmation Hearing Package;

b.     Publication Notice: on January 12, 2016 the Debtors caused notice of proposed confirmation of a plan of reorganization to concerning the Debtors to be published in the Midland Reporter-Telegram. Publication of such notice was confirmed by the *Affidavit of Publication* [Docket No. 219] (the "Publication Affidavit");

c.     Executory Contract Notice: on or before January 8, 2015, the Debtors served notice of the potential assumption of executory contracts and unexpired leases, along with the proposed cure payment associated with such assumption, to each counterparty listed on the Contract List. Service of such notices is confirmed by the *Certificate of Service of Cure Notices* [Docket No. 218] (the "Cure Affidavit", and collectively, with the Publication Affidavit and Confirmation Affidavit, the "Affidavits"), which

#39051141

identifies the interested parties served with such notices regarding the Debtors' executory contracts and unexpired leases;

d. <u>Second Confirmation Hearing Notice</u>:  on February 9, 2016, the Debtors served the a notice of readjourned hearing to consider confirmation of the Plan [Docket No. 213] (the "<u>Second Confirmation Hearing Notice</u>") to all interested parties in the Debtors' bankruptcy cases. The service of such notice was confirmed by the Confirmation Hearing Affidavit, which identifies the interested parties served with the Second Confirmation Hearing Notice.

9.       The Plan Supplement was filed prior to the Confirmation Hearing.  Consistent with this timeline.   Further, the Debtors filed (or will file) a proposed Confirmation Order (the "<u>Proposed Confirmation Order</u>") prior to the Confirmation Hearing.

## **PLAN CONFIRMATION OBJECTIONS RECEIVED**

10.      The Solicitation Procedures Order established February 16, 2016 as the deadline to submit objections to confirmation of the Plan.  Though the Debtors did receive objections to Plan confirmation, the Debtors believe that, for the reasons set forth below, such objections lack merit and do not provide any basis for denying Plan confirmation.

## **ARGUMENT**

### **The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code**

11.      Section 1129(a) of the Bankruptcy Code contains 16 conjunctive requirements for confirmation of a chapter 11 plan, which, with the exception of the requirement of unanimous acceptance by impaired classes, are either satisfied or inapplicable for the reasons set forth below. The requirement of unanimous acceptance by impaired classes cannot be satisfied due to the deemed rejection of the Plan by Class 5 (General Unsecured Claims), Class 6B (RREAF 2 Manager Equity Interests), and Class 6D (RREAF 3 Manager Equity Interests), each of which is deemed to reject the Plan (all of such classes deemed to reject to the Plan, collectively, the "<u>Deemed Rejecting Classes</u>"). However, as discussed below, the Plan satisfies the cram-down

4

requirements under section 1129(b) with respect to these Classes. Accordingly, the Plan should be confirmed notwithstanding its deemed rejection by the Deemed Rejecting Classes.

### A. The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1))

12.     Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." The legislative history of section 1129(a)(1) explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan of reorganization, respectively. S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977). As explained below, the Plan complies with the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code, as well as other applicable provisions.

#### 1. *The Plan's Classification Scheme is Proper*

13.     Section 1123 of the Bankruptcy Code requires a plan to designate classes of claims and interests, subject to section 1122. 11 U.S.C. § 1123(a)(1). Section 1122 provides, in pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). This is not to say that all substantially similar claims or interests must be grouped in the same class, but rather, that all claims or interests designated to a particular class be substantially similar to each other. *See In re Berhnard Steiner Pianos USA, Inc.*, 292 B.R. 109, 113-14 (Bankr. N.D. Tex. 2002). Plan proponents have flexibility in placing similar claims into different classes, provided there is a rational basis to do so. *See id.*

14.     The Plan classifies claims and interests into nine (9) Classes, namely: Class 1 (Secured Governmental Unit Claims); Class 2 (Senior Lender Claims), Class 3 (Other Secured

5

Claims); Class 4 (Unsecured Priority Claims); Class 5 (General Unsecured Claims); Class 6A (RREAF2 Equity Interests), Class 6B (RREAF2 Manager Equity Interests), Class 6C (RREAF3 Equity Interests), and Class 6D (RREAF3 Manager Equity Interests). *See* Plan, Article 3. Each Class comprises only claims or interests that are substantially similar to one another, and the Classes themselves are all based on valid business, factual, or legal considerations. In essence, the Plan's classification scheme follows the Debtors' capital structure. Secured Claims are classified separately from unsecured Claims, and Equity Interests are classified separately from Claims. Similarly, the Plan classifies unsecured Claims, in part, according to their relative priority, so that Claims afforded priority under section 507 (Class 4) are classified separately from General Unsecured Claims (Class 5). Accordingly, the Plan satisfies sections 1123(a)(1) and 1122(a) of the Bankruptcy Code.

> **2.** *The Plan Satisfies the Other Mandatory Requirements of Section 1123(a) of the Bankruptcy Code*

15.     In addition to the classification of claims and interests, there are six requirements that every chapter 11 plan must satisfy under section 1123(a) of the Bankruptcy Code. As discussed below, all of these requirements are satisfied by the Plan.

> **a.**     *Specification of Unimpaired Classes (§ 1123(a)(2))*

16.     Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan." The Plan meets this requirement by identifying Classes 1, 3, 4, 6A, and 6C as unimpaired. *See* Plan, Article 3.

> **b.**     *Treatment of Impaired Classes (§ 1123(a)(3))*

17.     Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." The Plan meets this

#39051141

requirement by setting forth the treatment of Classes 5, 6B, and 6D -- i.e. the Deemed Rejecting Classes. *See* Plan, Article 3.

### c. *Equal Treatment Within Classes (§ 1123(a)(4))*

18.     Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan meets this requirement because holders of Allowed Claims or Equity Interests within each Class will receive the same rights and treatment on account of their Claims or interests as other holders of Allowed Claims or Equity Interests in the same Class.

### d. *Means for Implementation (§ 1123(a)(5))*

19.     Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation. Article 4 of the Plan, as well as other provisions thereof, provide for the means by which the Plan will be implemented. Among other things, the Plan, and the exhibits, attachments, and supplements to the Plan, and the Disclosure Statement: (i) provide for the transfer of control and ownership of the Reorganized Debtors to Spectrum Origination through cancellation of the RREAF2 Manager Equity Interests and RREAF3 Manager Equity Interests and reissuance of such Equity Interests to Spectrum Origination, subject to the Redemption Option; (ii) provide for the cancellation of all obligations under the Prepetition Guaranty Agreements and the issuance of the Pledged Equity Option; (iii) authorize the Reorganized Debtors to take such other actions as are required to implement the transactions contemplated in the Plan; (iv) provide for the revesting of assets in the applicable Reorganized Debtor; and (v) provide for the preservation and vesting of certain Causes of Action in the Reorganized Debtors. *See* Plan, Article 4.

20.     The transactions contemplated by the Plan are designed to maximize the value of the Debtors' business and assets. Accordingly, the Plan, together with the documents and agreements contemplated by the Plan and the Plan Supplement, provide the means for implementation of the Plan as required by and in satisfaction of section 1123(a)(5) of the Bankruptcy Code.

### e.     *Charter Provision Prohibiting Issuance of Non-Voting Securities (§ 1123(a)(6))*

21.     Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities. Article 4.E of the Plan provides that the Reorganized Debtors' corporate documents (and analagous documents) will include such provisions, and the Debtors and/or Plan Proponents intend to include such provisions in their applicable governance documents. As such, the Debtors have satisfied section 1123(a)(6) of the Bankruptcy Code.

### f.     *Selection of Directors and Officers (§ 1123(a)(7))*

22.     Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any director, officer or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." Article 4.E.3 of the Plan outlines the manner of selecting the officers, managers, and other applicable governance parties, which terms comply with relevant Delaware state law, the Bankruptcy Code, the interests of creditors and equity security holders, and public policy. As such, the Debtors have satisfied section 1123(a)(7) of the Bankruptcy Code.

### 3.     *The Plan's Discretionary Provisions Are Proper under Section 1123(b) of the Bankruptcy Code*

23.     Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan. Among other things, section 1123(b) provides that

8

a plan may: (i) impair or leave unimpaired any class of claims or interests; (ii) provide for the assumption or rejection of executory contracts and unexpired leases; (iii) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; (iv) provide for the sale of all or substantially all of the property of the estate; (v) modify the rights of secured claims (other than a claim secured only by a security interest in a debtor's principal residence) and unsecured claims and (vi) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1123(b)(1)-(6).

24.     Consistent with section 1123(b) of the Bankruptcy Code: (i) the Plan impairs certain Claims and Equity Interests (specifically, those in Class 2 and the Deemed Rejecting Classes); (ii) the Plan leaves unimpaired other Claims (specifically, those in Classes 1, 3, 4, 6A, and 6C); (iii) Article 6 of the Plan provides for the assumption or rejection of executory contracts and unexpired leases under section 365 of the Bankruptcy Code; and (iv) provides for the issuance, effectiveness, and/or implementation of the Redemption Option and Pledged Equity Option.

25.     Also consistent with section 1123(b), the Plan includes (i) the release by the Debtors of certain parties in interest; (ii) a mutual release of claims between the Released Debtor Parties and Released Senior Lender Parties; (iii) an exculpation provision in favor of estate professionals and plan proponents; and (iv) an injunction provision prohibiting parties from pursuing Claims or Equity Interests discharged or otherwise released under the Plan. Though the US Trustee has filed an objection claiming that certain of these provisions are impermissible, as set forth in greater detail below, that objection lacks merit.  These provisions are proper because, among other things, they are the product of extensive good-faith and arm's-length negotiations, and are supported by the Debtors and Spectrum Origination -- a co-Plan proponent and the only

#39051141

entity entitled to vote in respect of the Plan. Further, the Plan's releases are in exchange for appropriate consideration.

### 4.     *The Plan Complies with Section 1123(d) of the Bankruptcy Code*

26.     Section 1123(d) of the Bankruptcy Code states that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and non-bankruptcy law." Article 6 of the Plan provides for the satisfaction of the cure costs, if any, associated with each executory contract and unexpired lease to be assumed and assigned pursuant to the Plan, by payment of such cure costs within thirty (30) days after the Effective Date. All cure costs will be determined in accordance with the underlying agreements and applicable law. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

### B.     The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2))

27.     The Debtors satisfy section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. The legislative history to section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code. H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 26 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."). As discussed above, the Debtors have solicited acceptances and rejections of the Plan in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order, and the Debtors believe they have satisfied the requirements of section 1129(a)(2).

#39051141

C.     **The Plan Was Proposed in Good Faith (§ 1129(a)(3))**

28.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." Good-faith requires that the plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985)("Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied.").

29.     A fundamental purpose of chapter 11 is to enable financially distressed businesses to reorganize their affairs and thereby prevent the job losses and adverse economic effects associated with disposing of assets at liquidation value. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Here, the Debtors have proposed the Plan in good faith, with the goal of emerging from chapter 11 with a more sustainable capital structure. The Plan is the product of months of arm's-length negotiations, and the Debtors have worked tirelessly to finalize a workable plan for emerging from Chapter 11.  Accordingly, for the reasons set forth herein, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

D.     **Payments Made by the Debtors for Professional Fees and Expenses are Subject to Court Approval (§ 1129(a)(4))**

30.     Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. Pursuant to this Court's orders authorizing the Debtors to retain and employ certain professionals during the pendency of the Chapter 11 Cases [Docket No. 113] (the "Retention Order"), all retained professionals' fees and expenses were approved as reasonable under section 328 of the Bankruptcy Code or are subject

11

to final review for reasonableness by the Court under section 330 of the Bankruptcy Code. The Plan provides that Professionals shall file all final requests for payments of compensation no later than 60 days after the Effective Date.  Such review of the compensation of these Professionals satisfies section 1129(a)(4). *See Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 503 (D.N.J. 2005).  Based upon the foregoing, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### E.   The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5))

31.   Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors. The Bankruptcy Code further provides that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the identity of an "insider" (as defined by section 101(31) of the Bankruptcy Code) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.

32.   At or prior to the Confirmation Hearing, the Plan Proponents will identify the persons proposed to serve as managers and officers of the applicable Reorganized Debtors. Thus, the Plan satisfies section 1129(a)(5)(A)(i) of the Bankruptcy Code.

33.   Appointment of the proposed managers and officers of the Reorganized Debtors will comply with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, which requires that the court find the appointment or continuance of such officers and directors to "be consistent with the interests of creditors and equity security holders and with public policy." The proposed managers and directors of the Reorganized Debtors will be appointed by Spectrum Origination, the entity

12

that will emerge with control of the Reorganized Debtors after confirmation, and will have the requisite experience necessary to serve in such positions. Therefore, the requirements under section 1129(a)(5)(A)(ii) of the Bankruptcy Code are satisfied.

34.     Finally, the Debtors will publicly disclose at or prior to the Confirmation Hearing the identity of the insiders that the Reorganized Debtors will employ or retain and the nature of any compensation for such insiders in compliance with section 1129(a)(5)(B) of the Bankruptcy Code (if any). Based upon the foregoing, the Debtors satisfy the requirements of section 1129(a)(5) of the Bankruptcy Code.

      **F.**     **Sections 1129(a)(6) and (14)-(16) Do Not Apply**

35.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. The Plan does not provide for rate changes by the Debtors subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Section 1129(a)(14) and (15) of the Bankruptcy Code apply only to individual debtors. 11 U.S.C. § 1129(a)(15); *see* 11 U.S.C. § 1129(a)(14) (relating to payment of domestic support obligations). Finally, each of the Debtors is a "moneyed, business, or commercial corporation," and therefore, section 1129(a)(16) does not apply. *See* 11 U.S.C. § 1129(a)(16) (relating to transfers of property by non-profit debtors).

      **G.**     **The Plan Satisfies the Best Interests Test With Respect to Impaired Claims and Equity Interests (§ 1129(a)(7))**

36.     Section 1129(a)(7) of the Bankruptcy Code, requires that

    [w]ith respect to each impaired class of claims or interests—

      A.     each holder of a claim or interest of such class—

         (i)     has accepted the plan; or

> (ii)     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date . . . .

11 U.S.C. § 1129(a)(7)(A).

37.     This so-called "best interests" test applies to individual holders of Claims or Equity Interests in impaired Classes that have not voted to accept the Plan.  As set forth above, there is one impaired class of Claims entitled to vote in respect of the Plan -- Class 2 (Senior Lender Claims).  Because all Holders of Class 2 Senior Lender Claims voted to accept the Plan, the "best interest of creditors" test set forth in section 1129(a)(7)(A) of the Bankruptcy Code does not apply to this Class of Claims.

38.     The remaining classes of impaired Claims and Equity Interests are not entitled to vote in respect of the Plan, and are thus conclusively deemed to reject the Plan.  The "best interests of creditors" test applies to each of these remaining Deemed Rejecting Classes and is satisfied here because Holders of Claims and Equity Interests in such remaining Classes would not receive any property or distribution from the Estates if they were liquidated in a chapter 7 proceeding.  As set forth in the liquidation analysis included as Exhibit B to the Disclosure Statement, a hypothetical chapter 7 liquidation under the Conversion Confirmation Option (the means by which the Plan will be implemented) would result in no creditor receiving more in the liquidation than it would under the Plan. *See* Disclosure Statement, Exhibit B. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### H.     Section 1129(a)(8) Is Not an Impediment to Confirmation

39.     Section 1129(a)(8) requires acceptance by each class of claim or interests that is impaired by the Plan. This requirement is not satisfied because one or more Classes of Claims and Equity Interests are deemed to reject the Plan. However, as discussed below, these classes may be

14

crammed down under section 1129(b), so the Debtors' inability to satisfy section 1129(a)(8) is not an impediment to confirmation.  11 U.S.C. § 1129(b)(1)("… if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court … shall confirm the plan notwithstanding the requirements of such paragraph … .").

> **I.     The  Plan  Provides  for  Payment  in  Full  of  All  Allowed Priority Claims and Statutory Fees (§ 1129(a)(9) and (12))**

40.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, section 1129(a)(9)(A) requires holders of claims of a kind specified in section 507(a)(2) (i.e., administrative claims allowed under section 503(b)) to receive on the effective date cash equal to the allowed amount of such claims. Section 1129(a)(9)(B) requires that each holder of a claim of a kind specified in sections 507(a)(1), or (4) through (7) (generally wage, employee benefit, and consumer deposit claims entitled to priority) receive (i) deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or (ii) cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan). Finally, section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in section 507(a)(8) (i.e., priority tax claims) must receive deferred cash payments over a period not to exceed five years, the present value of which equals the allowed amount of the claim.

41.     Section 1129(a)(12) of the Bankruptcy Code requires a chapter 11 plan to provide for the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."

42.     The Plan satisfies all of these requirements.  The Plan provides that holders of Allowed Administrative Claims will receive Cash equal to the amount of their Claims on the Initial

Distribution Date or as soon as reasonably practicable thereafter (or, if not then due and payable, when such Allowed Administrative Claim is due and payable or as soon as reasonably practicable thereafter), or at such time and upon such terms as may be agreed upon by such Holder and the applicable Reorganized Debtor. Similarly, the Plan provides that Holders of Allowed Other Priority Claims shall receive payment in full of such claims on the later of the Effective Date or the date on which such Claims become Allowed.

43.     The Plan provides that Holders of Allowed Priority Tax Claims shall receive either (a) payment in cash of such Claim on the later of the Initial Distribution Date Date or when such priority tax claim becomes due, or (b) deferred Cash payments required pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

44.     Article 10.B of the Plan provides that all statutory fees under 28 U.S.C. § 1930, to the extent not previously paid, will be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

45.     For the above reasons, sections 1129(a)(9) and (12) of the Bankruptcy Code are satisfied.

**J.      The Plan Was Accepted by an Impaired Class of Claims, Not Counting Votes of Insiders (§ 1129(a)(10))**

46.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims under a plan, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider." The Plan was accepted by Class 2 (Senior Lender Claims), which is impaired under the Plan and does not include any insider Claims. The Plan meets the requirements of section 1129(a)(10) of the Bankruptcy Code.

**K.      The Plan is Feasible (§ 1129(a)(11))**

47.     Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that

16

> confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). This finding, regarding the "feasibility" of the chapter 11 plan, does not require a guarantee of success by the debtor. *See In re Briscoe Enterprises, Ltd.,* 994 F.2d 1160, 1165-66 (5th Cir. 1993)("the court need not require a guarantee of success … ."). Rather, a debtor must demonstrate only a reasonable assurance of success. *See id.*; *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).

48.     Courts have identified the following factors as probative of a chapter 11 plan's feasibility: (i) the adequacy of the capital structure; (ii) the earning power of the business; (iii) economic conditions; (iv) the ability of management; (v) the probability of the continuation of the same management; and (vi) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *See, e.g., In re U.S. Truck Co., Inc.,* 800 F.2d 581, 589 (6th Cir. 1986); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 226-27 (Bankr. D.N.J. 2000).

49.     For purposes of determining whether the Plan satisfies the feasibility requirement, as will be established at the confirmation hearing, the Debtors thoroughly analyzed the Reorganized Debtor's ability post-confirmation to meet their obligations under the Plan and to continue as going concerns without the need for further financial restructuring. As a result of this analysis, and in light of the scope of the Reorganized Debtor's post-Effective Date operations, the Debtors concluded that they would be able to make all payments required by the Plan and that confirmation of the Plan—which eliminates a material portion of the Debtors' secured debts — would not likely be followed by liquidation or further financial restructuring. Accordingly, for the reasons set forth herein, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

### L.     The Debtors Are Not Obligated to Pay Retiree Benefits (§ 1129(a)(13))

50.     Section 1129(a)(13) requires that all retiree benefits, as defined in section 1114(a) of the Bankruptcy Code, be continued after the effective date of a plan "for the duration of the period the debtor has obligated itself to provide such benefits." This section does not apply. The Debtors are not obligated to provide retiree benefits within the meaning of section 1114(a).

### M.     The Plan Satisfies the Cram-down Requirements of Section 1129(b)

51.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) (requiring acceptance by all impaired classes of claims and interests), a plan shall be confirmed on request of a plan proponent so long as "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

52.     As noted above, one impaired Class of Claims has voted to accept the Plan (Class 2). The remaining impaired Classes consist of the Deemed Rejecting Classes, which are deemed to reject the Plan. For the following reasons, the Debtors meet the requirements of section 1129(b) of the Bankruptcy Code to "cram down" the rejecting classes.

#### 1.     *The Plan is Fair and Equitable (§ 1129(b)(2)(B)(ii))*

53.     A plan is "fair and equitable" with respect to an impaired class of unsecured claims or interests that **rejects** a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule. *See* 11 U.S.C. § 1129(b)(2)(B)(ii) & (C)(ii); *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999). With respect to a class of unsecured claims or equity interests that is not being paid in full under a chapter 11 plan, the absolute priority rule is satisfied so long as the holder of any claim or interest that is junior to the claims or interests (as applicable) of such class will not receive or retain under the plan on account of such junior claim

18

or interest any property. 11 U.S.C. § 1129(b)(2)(B)(ii), (b)(2)(C)(ii). With respect to the Deemed Rejecting Classes, there is no junior class of Claims or Equity Interests that will receive any distribution under the Plan. Furthermore, as shown by the Debtors' liquidation analysis attached as <u>Exhibit B</u> to the Disclosure Statement, no Holders of Claims in the only classes to receive any distribution under the Plan (Class 2) will receive more than full value on account of such Claim. Thus, the absolute priority rule is satisfied with respect to the Deemed Rejecting Classes. Because the Plan satisfies the absolute priority rule with respect to both impaired, non-accepting classes of claims or interests, the Plan is "fair and equitable" under section 1129(b)(1).

### 2. *The Plan Does Not Unfairly Discriminate with Respect to the Impaired, Non-Accepting Classes (§ 1129(b)(1))*

54. In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so. *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination). A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment. *See In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (finding no unfair discrimination where interests of objecting class were not similar or comparable to those of any other class).

55. In this case, the Plan's treatment of the non-accepting impaired Classes of Claims (i.e. the Deemed Rejecting Classes) is proper because all similarly situated Holders of Claims and Equity Interests will receive substantially similar treatment and the Plan's classification scheme

19

rests on a legally acceptable rationale.   The only Classes of Claims receiving any distributions of cash or property under the Plan are secured claims (Classes 1, 2) and administrative claims or other claims afforded priority under the Bankruptcy Code (Class 4).  It would not be proper to classify the Deemed Rejecting Classes (all of which consist of unsecured Claims and Equity Interests) with secured creditors in Classes 1 and 2 or administrative or priority claimants in Class 4.  No Class similar that is any to the Deemed Rejecting Classes will receive any different or more favorable treatment than the Rejecting Classes.   Thus, the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code, and the Plan may be confirmed notwithstanding the deemed rejection by the Deemed Rejecting Classes.

  **N.**  **The Plan Complies with Section 1129(d) of the Bankruptcy Code**

  56.  The purpose of the Plan is not to avoid taxes or application of section 5 of the Securities Act of 1933.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.   Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

  **O.**  **Response to Plan Confirmation Objections**

  57.  The Debtors have received the following objections to confirmation of the Plan:

- The *Limited Objection of the United States Trustee to the Debtors' First Amended Plan of Reorganization* (the "UST Objection") [Docket No. 172], filed by the Office of the United States Trustee (the "UST");

- The *Objection of Holiday Hospitality Franchising, LLC to Proposed Assumption of Executory Agreements and Limited Objection to Debtors' First Amended Plan of Reorganization* [Docket No. 178] and *Objection of Holiday Hospitality Franchising, LLC to Second Amended Plan of Reorganization* [Docket No. 216] (collectively the "Holiday Inn Objection") filed by Holiday Hospitality Franchising, LLC ("HHF");

- *La Quinta Franchising LLC's Objection to Plan Confirmation* (the "La Quinta Objection") [Docket No. 181] filed by La Quinta Franchising LLC ("La Quinta");

#39051141

- The *Objection of Country Inns & Suites by Carlson, Inc. to Proposed Cure Amount* (the "Country Inn Objection") [Docket No. 209] filed by Country Inns & Suites by Carlson, Inc. ("Country Inn");

- The *Ad Valorem Tax Authorities' Objection to the Debtors' Second Amended Plan of Reorganization* (the "Tax Authority Objection") [Docket No. 214] filed by one of more of the Debtors' ad valorem tax authorities (such authorities identified in the Tax Authority Objection, the "Tax Authorities"); and

- The *Limited Objection of Best Western International, Inc., to Second Amended Plan of Reorganization* (the "Best Western Objection") [Docket No. 215] filed by Best Western International, Inc. ("Best Western").

58.     As set forth below, each of these objections lacks merit and does not constitute a basis for denying confirmation of the Plan.

### 1.     *The UST Objection Should be Overruled*

59.     The UST Objection alleges that the Plan improperly includes non-consensual third party releases, in contravention of the Fifth Circuit's holding in *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009).  Specifically, the UST Objection alleges that: (a) the definition of "Released Parties" (which incorporates the Released Debtor Parties and Released Senior Lender Parties) is too broad; (b) the scope of the Plan's exculpation provision set forth in Article 8.F is too broad; and (c) the scope of the Plan's injunction set forth in Article 8.H is too broad.  Each of these objections should be overruled.

### a.     *The "Released Parties" definition is appropriate*

60.     The UST Objection correctly asserts that the Plan's definitions of "Released Parties," "Released Debtor Parties," and "Released Senior Lender Parties" include non-debtor parties.  The non-debtors included in those definitions principally consist of the officers, directors, employees, attorneys, advisors, and other representatives of the Debtors and Spectrum Origination.

61.     However, the scope of these definitions does not present a barrier to plan confirmation because the Plan does not contain a non-consensual release of claims against any

21

such non-debtor Released Parties.  Indeed, the only affirmative releases of claims against such Released Parties appears in Article 8.E of the Plan, which provides for: (i) releases of claims *by the Debtors*; and (ii) mutual, consensual releases of claims between the Released Debtor Parties and Released Senior Lender Parties.  Neither of such releases is prohibited by *Pacific Lumber*.

62.     First, the releases by the Debtors in Article 8.E.1 of the Plan (the "<u>Debtor Releases</u>") constitute a permissible settlement of estate causes of action.  A chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). The standard for approval of plan settlements is generally the same as the general standard for approval of settlements under Bankruptcy Rule 9019.  *See In re Heritage Organization, L.L.C.*, 375 B.R. 230, 308 (Bankr. N.D. Tex. 2007) ("… a settlement that satisfies the standards for approval [under rule 9019] … may therefore be included in a plan under § 1123(b)(6)). Under Rule 9019, a settlement of a cause of action should generally be approved if it exceeds the lowest point in the range of reasonable litigation outcomes. *See In re Mirant Corp.,* 348 B.R. 725, 741, n.36 (Bankr. N.D. Tex. 2006).  The release of an estate cause of action in the context of a chapter 11 plan will generally be approved "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *See In re DBSD North America, Inc.*, 419 B.R. 179, 217 (Bankr. D. Del. 2009).

63.     The Debtor Releases are based on the Debtors' business judgment and meet the applicable legal standard because they are fair, reasonable, necessary and integral elements of the Plan, which was negotiated in good faith and at arm's-length among the Debtors and their various stakeholders, and in the best interests of the Debtors.  Furthermore, the Debtor Releases are in exchange for good and valuable consideration provided by the Released Parties, including, without limitation: (i) the consent by Spectrum Origination to the Debtors' continued use of cash collateral

in order to complete the Plan process; (ii) the mutual releases provided by the Releasing Parties (which includes substantially all of the Released Parties); and (iii) the efforts of the majority of the Released Parties, including the directors, officers and various professionals of the Debtors and Spectrum Origination in negotiating and effectuating the Plan. For these reasons, the Debtor Releases are justified, are in the best interests of creditors, are an integral part of the Plan, and satisfy the factors considered by courts in determining whether a debtor release is proper.

64. Thus, the releases of claims *by the Debtors* against the Released Parties set forth in Article 8.E.1 of the Plan is a permissible settlement and compromise of estate claims permitted pursuant to section 1123(b)(3)(A) of the Bankruptcy Code. *See, e.g. In re Ondova Limited Company*, 2012 WL 5879147, *13 (Bankr. N.D. Tex. 2012)(plan's releases were permissible compromises pursuant to section 1123(b)(3)(A)). Such a consensual compromise and resolution by the Debtors of their own claims and causes of action set forth in the Plan is an appropriate settlement of the Debtors' claims, and does not run afoul of *Pacific Lumber's* prohibition against non-consensual *releases* of claims by *non-debtors*.

65. Further, the mutual release of claims between the Released Debtor Parties and Released Senior Lender Parties set forth in Article 8.E.2 of the Plan (the "Mutual Release") is also appropriate here. A plan may provide for a release of third party claims against a non-debtor upon consent of the party affected. *See, e.g. In re Acorn Hotels, LLC*, 251 B.R. 696, 702 (Bankr. W.D. Tex. 2000); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013). Voting creditors are free, as a matter of contract law, to release their claims against non-debtor third parties in consideration of their treatment under the plan. *See id.*

66. The Released Debtor Parties and Released Senior Lender Parties are co-proponents of the Plan (or representatives of such co-proponents), have agreed to support the Plan, and, in the

23

case of Spectrum Origination, voted in favor of the Plan, including the Mutual Release.  Therefore, the Mutual Release is consensual with respect to these parties.

67.     Again, *Pacific Lumber* is only concerned with *non-consensual* releases of claims. It does not apply to, or prohibit, the consensual release of claims via a confirmed plan.   Because the Plan does not incorporate any nonconsensual releases of claims against the Releasing Parties, the expansive definitions of Releasing Parties set forth in the UST objection provide no basis for denying confirmation of the Plan.

### b.     The Plan's exculpation provision is appropriate

68.     Though the Plan does include an exculpation provision that governs certain postpetition actions undertaken by the Debtors, Spectrum Origination, and their respective representatives in connection with formulating or confirming the Plan, the exculpation provision is not the sort of affirmative non-debtor release prohibited by *Pacific Lumber*.

69.     The Plan's exculpation provisions do not formally release claims against the Released Parties.  Rather, the exculpation provision merely establishes and codifies the existing standard required to bring causes of action against estate fiduciaries that have been involved with prosecuting and confirming a plan.  *See In re Smyth*, 207 F.3d 758, 762 (5th Cir. 2000)(holding that gross negligence is the appropriate standard for commencing a cause of action against an estate trustee).

70.     The holding in *Pacific Lumber*, which is only concerned with nonconsensual *releases* of claims against non-debtors, does not require this Court to strike the Plan's exculpation provision, which does not affirmatively release claims and merely codifies the standard for commencement of an action against estate fiduciaires.  Indeed, even in the wake of *Pacific Lumber*, courts within the Fifth Circuit, including this Court, have consistently approved bankruptcy plans

24

containing exculpation provisions similar to those included here.  *See, e.g., In re TXCO Resources Inc.*, Case No. 09-51807 (Bankr. W.D. Tex. Jan. 27, 2010)(confirming plan containing exculpation provision limiting liability to the debtors, lenders, or their respective representatives to actions taken in connection with plan confirmation to matters constituting gross negligence or willful misconduct, overruling a *Pacific Lumber* objection lodged by the US Trustee); *In re NNN 3500 Maple 26 LLC*, 2014 WL 6665991 (Bankr. N.D. Tex. 2014)(approving exculpation of Debtors and their advisors for actions taken in connection with plan confirmation, other than actions constituting gross negligence or willful misconduct).  Consequently, the Plan's exculpation provision is consistent with applicable law and does not present a bar to confirmation of the Plan.

71.     The exculpation provision set forth in Article 8.F of the Plan is appropriate and vital under the circumstances of these chapter 11 cases.  The parties covered by that provision played a critical role in negotiating, formulating, and implementing the Plan, the Disclosure Statement, and other documents in furtherance of Plan confirmation.  Such negotiations were extensive and the resulting agreements were negotiated an implemented in good faith, resulting in a proposed Plan that is in the best interest of all creditors and stakeholders.

72.     The Plan's exculpation provision was important to the development of a feasible, confirmable Plan, and the Debtors' plan proponents relied upon the protections in connection with the extensive negotiations regarding the Plan.  The exculpation provision is necessary to protect these parties against collateral attacks relating to actions taken in good faith in connection with the Debtors' restructuring.  Accordingly, under the circumstances, it is appropriate for the Court to approve the exculpation provision.

#39051141

*c.      The Plan's injunction provision, as modified, is appropriate*

73.    The injunction provision set forth in Article 8.H of the Plan implements the Plan's release and exculpation provisions.  To the extent the Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the injunction provision is also appropriate. *See* 11 U.S.C. § 105(a) (authorizing the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code); *In re Premier Int'l Holdings Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *9 (Bankr. D. Del. Apr. 29, 2010) (approving injunctions along with release provisions).

74.    The UST Objection also alleges that the Plan's injunction provision set forth in Article 8.H impermissibly provides a non-consensual release of non-debtors.  Although the Debtors dispute such a characterization of Article 8.H, the Debtors, in the Confirmation Order, will propose the clarifications set forth below to the injunction language set forth in Article 8.H in order to confirm the intended scope and effect of the Plan's injunction provision.  The Debtors submit that such changes will moot any objection to the scope of such provision.

## H.    Injunctions.

**1.**    Except as otherwise expressly provided for in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Parties and Entities who have held, hold, or may hold Claims or Equity Interests against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from:

(i)      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, ~~or~~ Reorganized Debtor, ~~the Released Parties,~~ or their respective successors and assigns and their respective assets and properties, with respect to any such Claim or Equity Interest that arose before or was held as of the Effective Date;

(ii)      enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, Reorganized Debtor, ~~or Released Party,~~ or their respective successors and assigns and their respective assets and properties, on account of any such Claim or Equity Interest that arose before or was held as of the Effective Date;

26

(iii)    creating, perfecting or enforcing any encumbrance of any kind against any Debtor, Reorganized Debtor, or the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest that arose before or was held as of the Effective Date;

(iv)    asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor or Reorganized Debtor, or against the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest that arose before or was held as of the Effective Date, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim and adjudicated to be valid and enforceable by a Final Order of the Bankruptcy Court; or

(v)    commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest that arose before or was held as of the Effective Date or cause of action released or settled hereunder;. or

(vi)    commencing or continuing in any manner any action or other proceeding of any kind against any of the Released Parties in respect of any claims or causes of action released or settled hereunder.

### 2.    *The Holiday Inn Objection Should be Overruled*

75.    Through the Holiday Inn Objection, HHF purports to raise numerous "objections" to the Plan.  However, it is difficult to ascertain exactly what HHF's objections to the current Plan are because (a) the Holiday Inn Objection incorporates by reference HHF's objection to the Debtors' prior, first amended plan of reorganization and is not tailored to the current Plan (which provides for unequivocal rejection of the Debtors' HHF franchise agreement); and (b) many of HHF's alleged "objections" appear to be nothing more than a request for certain drafting changes, without explaining how or why such changes are a prerequisite to any Bankruptcy Code confirmation requirement. Nevertheless, the Holiday Inn Objection appears to be comprised of four key elements:  (a) the Plan must confirm that the HHF franchise agreement will be rejected and cannot be assumed after rejection; (b) the Plan contains impermissible releases; (c) the Plan violates the absolute priority rule; and (d) the Debtors should make certain drafting changes requested by HHF.  Each of these objections lacks merit.

#39051141

### a. *The HHF agreement will be rejected and will not be assumed*

76.     Initially, the Holiday Inn Objection alleges that the Plan should be clarified to provide that the HHF franchise cannot be later assumed in the event that the Redemption Option is exercised. This allegation is puzzling because the Plan and Contract List already provide that the HHF franchise will be rejected pursuant to the Plan. Because the HHF franchise agreement will be rejected under the Plan, it logically (and as a matter of law) can no longer be assumed. *See In re Maralak, Ltd.*, 104 B.R. 446, 449 (Bankr. M.D. Fla. 1989)("A [lease] rejection during Chapter 11 proceedings … remains rejected and cannot be assumed … ."). Thus, there is no need to modify the Plan to clarify that the HHF franchise can no longer be assumed, as subsequent assumption of that agreement following rejection is already prohibited as a matter of law.

### b. *The Plan's release, injunction, and exculpation provisions are appropriate*

77.     The Holiday Inn Objection includes the same objections raised in the UST Objection to the scope of the release and injunction language incorporated into the Plan. However, for the same reasons set forth above, the Plan's release, exculpation, and injunction language is appropriate, and the Holiday Inn Objection should be overruled.

### c. *The Plan does not violate the absolute priority rule*

78.     The HHF objection alleges that the Plan violates the absolute priority rule. This allegation is based on a prior draft of the Plan, which provided certain residual payments, akin to an "earn-out" to the Debtors' prepetition equity holders. The current version of the Plan includes no such distributions to equity holders.

79.     Though the Plan does provide that, under certain circumstances, the equity in the Reorganized Debtors may be redeemed, through exercise of the Redemption Option, the Plan also provides that in the event that such option is exercised, the party exercising such option shall fully

28

satisfy all general unsecured creditor claims.  *See* Plan, Article 4.E.4 (following exercise of redemption option, RREAF Holdings shall make all payments on account of Class 5 General Unsecured Claims called for under the Refinancing Confirmation Option).  Because the exercise of the Redemption Option will necessarily render all creditor classes (other than Spectrum, who has voted in favor of the Plan) unimpaired, preventing any absolute priority rule violation as a result of the Plan's incorporation of the Redemption Option.

### d.      *HHF's drafting changes are unnecessary*

80.      Finally, the Holiday Inn Objection asserts a litany of other proposed drafting changes that it alleges must be made in order to confirm the Plan.  However, these remaining changes either (i) no longer are applicable to the current Plan, which unequivocally rejects the HHF Franchise agreement (e.g. request to tailor Plan language regarding executory contract assumption to ensure no ability to assume HHF franchise, concerns regarding potential management agreement conflicts if the HHF franchise were assumed) or (ii) constitute requests for changes not required for Plan confirmation (e.g. confirmation that postpetition franchise fees are "ordinary course" administrative claims that will not require formal allowance for payment, request that HHF be provided with additional, advanced notice of the Plan's Effective Date).  Thus, none of these remaining changes provides a basis for denying Plan confirmation.

### 3.      *The Tax Authority Objection Has Been Resolved*

81.      The Tax Authority Objection requests that the Debtors incorporate certain language within the Confirmation Order confirming that the Debtors shall remain liable for 2016 ad valorem real property taxes without the need for the various taxing authorities to file a request for allowance of an administrative claim for any "stub period" relating to such 2016 taxes.  The Debtors have incorporated the language set forth in the Tax Authority Objection into the Confirmation Order, thereby resolving the Tax Authority Objections.

4.     *The Remaining Franchisor Objections are Moot and Should be Overruled*

82.     The Debtors received several other objections to confirmation from other hotel franchisors -- the La Quinta Objection, the Country Inn Objection, and the Best Western Objection. Each of these remaining objections has either been consensually resolved, or is now moot in light of the rejection of the applicable hotel franchise agreement (or analogous hotel membership agreement) addressed in such objections.

83.     First, the La Quinta Objection has been consensually resolved.  Since transmission of the LaQuinta Objection, La Quinta and Spectrum Origination (who will emerge with ownership of the reorganized debtors) have reached agreement regarding the terms under which the Reorganized Debtors will successfully cure and assume the underlying La Quinta franchise agreements.  In light of this consensual, negotiated cure and assumption, the La Quinta Objection (which hinged on the amount of the cure payment to be made in connection with assumption and the ability to assure such payment) is now moot.

84.     The remaining Best Western Objection and Country Inn Objection object to confirmation of the Plan to the extent that (a) it implies that the Debtors will assume their prepetition agreements with Best Western or (b) the Plan incorporates an inaccurate cure amount for the assumption of the Country Inn agreement.  Both of these objections are now moot, as the Contracts Schedule confirms that the Debtors' executory agreements with Best Western and Country Inn will be rejected, making it unnecessary to protest the Debtors' proposed assumption of such agreements (or proposed cure associated with assumption).

## THE CONFIRMATION ORDER
## SHOULD BE EFFECTIVE IMMEDIATELY

85.     Bankruptcy Rule 3020(e) states that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."

Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon the Court's order.

86.     The Debtors submit that ample cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004 and 6006 such that the Confirmation Order will be effective immediately upon its entry. As noted above, the Chapter 11 Cases and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information. All holders of Claims entitled to vote on the Plan have unanimously accepted it. The longer the Debtors remain in bankruptcy, the greater the administrative and professional costs to the Debtors. Additionally, the terms of the Debtors' approved cash collateral stipulation requires the Effective Date to occur within five (5) business days after entry of the Confirmation Order. For these reasons, the Debtors and their agents and advisors are working to expedite the closing of the transactions contemplated by the Plan so that the Effective Date may occur as soon as practicable.

87.     Based on the foregoing, the Debtors submit that good cause exists for, and therefore request that the Court authorize, a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

## **CONCLUSION**

88.     For the reasons set forth above, and to be shown at the Confirmation Hearing, the Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Confirmation Order, (i) confirming the Plan, and (ii) granting the Debtors such other and further relief as is just and proper.

31

#39051141

Dated: February 17, 2016

Robert W. Jones
Brent R. McIlwain
Brian Smith
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Telephone:    (214) 964-9500
Facsimile:    (214) 964-9501
Email:    robert.jones@hklaw.com
    brent.mcilwain@hklaw.com
    brian.smith@hklaw.com

Counsel for the
Debtors and Debtors in Possession

#39051141