The relief described hereinbelow is SO ORDERED.

Signed February 22, 2016.

_____
Ronald B. King
Chief United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | |
|---|---|
| **In re:** § | |
| § | |
| § | |
| **RREAF O&G PORTFOLIO #2 LLC;** § | **LEAD CASE NO. 15-70094-rbk** |
| § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** § | **CASE NO. 15-70095-rbk** |
| § | |
| **RREAF O&G PORTFOLIO #3 LLC;** § | **CASE NO. 15-70096-rbk** |
| § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** § | **CASE NO. 15-70097-rbk** |
| § | |
| **Jointly Administered Debtors.** § | **Chapter 11** |
| § | |
| § | **(Jointly Administered Under** |
| § | **CASE NO. 15-70094-rbk)** |
| § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND AMENDED PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC PROPOSED BY THE DEBTORS AND SPECTRUM ORIGINATION LLC, AS MODIFIED**

#39036208

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[1] having:

a.  commenced, on July 8, 2015 (the "Petition Date"), these Chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases");

b.  operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed on or about December 10, 2015, the *Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC*, dated December 10, 2015 [Docket No. 147], which was subsequently modified by the *First Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* dated January 5, 2016 [Docket No. 157], and the *Second Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC Proposed by the Debtors and Spectrum Origination LLC, as Modified*, dated February 8, 2016 [Docket No. 211] (together with the Plan Supplement (as defined below), and in each case as subsequently modified, supplemented, and amended, the "Plan"),[2]

d.  filed, on the December 10, 2015, the *Disclosure Statement for Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* [Docket No. 148], which was subsequently amended on January 5, 2016 by the *First Amended Disclosure Statement for Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* [Docket No. 158], and on January 7, 2016 by the *Second Amended Disclosure Statement for Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* [Docket No. 162] (the "Disclosure Statement");

e.  filed, on February 17, 2016, the *Declaration of Brent R. McIlwain of Holland & Knight LLP Regarding the Tabulation of Ballots Cast on the Second Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC Proposed by the Debtors and Spectrum Origination*

---

[1]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code, as applicable.

[2]  A copy of the Plan, excluding the Plan Supplement, is attached hereto as Exhibit A.

#39036208

*LLC, as Modified* [Docket No. 220] (the "Voting Report"), which detailed the results of the Plan voting process;

f. filed and served, on January 8, 2016, the *Notice of (A) Hearing Regarding Confirmation of Chapter 11 Plan, and (B) Objection Deadlines Regarding Confirmation of Chapter 11* (the "First Confirmation Hearing Notice") [Docket No. 164], as evidenced by that *Certificate of Service of Confirmation Hearing Notices* [Docket No. 217] (the "Confirmation Service Affidavit");

g. filed and served, on February 9, 2016, the *Notice of (A) Reconvened Hearing Regarding Confirmation of Chapter 11 Plan, and Related Matters, and (B) Objection Deadlines Regarding Reconvened Hearing to Consider Confirmation of Second Amended Chapter 11 Plan* (the "Second Confirmation Hearing Notice", and collectively, with the First Confirmation Hearing Notice, the "Confirmation Hearing Notices") [Docket No. 213], as evidenced by the Confirmation Service Affidavit;

h. published, on January 12, 2016, in the *Midland Reporter-Telegram Today*, as evidenced by the *Affidavit of Publication* [Docket No. 219] (the "Publication Notice Affidavit"), a notice of a hearing to confirm a chapter 11 plan of reorganization concerning the Debtors;

i. served, on January 8, 2016, the *Notice of Proposed Assumption of Executory Agreements* (the "Cure Notice"), as evidenced by that *Certificate of Service of Cure Notices* [Docket No. 218] (the "Cure Notice Affidavit", and collectively with the Publication Notice Affidavit and the Confirmation Service Affidavit, the "Affidavits");

j. filed, on February 4, 2016, the Debtors' *Expedited Motion for Order Scheduling and Reconvening their Plan Confirmation Hearing on or Before February 16, 2016 and Granting Related Relief* [Docket No. 202] (the "Adjournment Motion");

k. filed, on or before February 18, 2016, one or more exhibits that collectively, constitute the Plan Supplement, (as modified, amended or supplemented from time to time, the "Plan Supplement"), which is included in the definition of the Plan; and

l. filed, on February 17, 2016, the *Debtors' Memorandum of Law (I) in Support of Plan Confirmation and (II) in Reply to the Objections Filed to Plan Confirmation* [Docket No. 221] (the "Confirmation Brief").

This Court having:

a. entered, on January 8, 2016, the *Order (A) Approving the Disclosure Statement, (B) Shortening the Notice Period for the Plan Confirmation Hearing, (C) Establishing a Plan Objection Deadline and Related Procedures, (D) Approving the Solicitation Procedures, (E) Approving the Confirmation Hearing Notice, and (F) Establishing Procedures for the Assumption of Executory Contracts and*

*Unexpired Leases Under the Plan* [Docket No. 162] (the "Scheduling Order"), which, among other things, approved the Disclosure Statement and found that it contained the requisite "adequate information" described in section 1125 of the Bankruptcy Code;

b.  granted, on February 8, 2016, the Adjournment Motion and set February 18, 2016 at 02:00 p.m., Central Time, as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

c.  reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Confirmation Declaration, the Voting Report, the Confirmation Hearing Notices, the Affidavits, the ballots, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

d.  held the Confirmation Hearing on February 18, 2016 at 02:00 p.m., prevailing Central Time;

e.  heard the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto;

f.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding Confirmation of the Plan and the objections thereto; and

g.  taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to this Court that the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Confirmation Hearing establishing just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, this Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.  Findings and Conclusions.**

1.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law under Rule

#39036208

52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  No statutory committees of unsecured creditors or equity security holders have been appointed in the Chapter 11 Cases.

#39036208

E. **Judicial Notice, Objections.**

5. This Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of the Chapter 11 Cases. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to Confirmation of the Plan, including, without limitation:  (i) the *Limited Objection of the United States Trustee to the Debtors' First Amended Plan of Reorganization* [Docket No. 172], filed by the office of the United States Trustee; (ii) the *Objection of Holiday Hospitality Franchising, LLC to Proposed Assumption of Executory Agreements and Limited Objection to Debtors' First Amended Plan of Reorganization* and *Objection of Holiday Hospitality Franchising, LLC to Second Amended Plan of Reorganization* [Docket No. 216] filed by Holiday Hospitality Franchising, LLC; (iii) *La Quinta Franchising LLC's Objection to Plan Confirmation* [Docket No. 181] filed by La Quinta Franchising LLC; (iv) The *Objection of Country Inns & Suites by Carlson, Inc. to Proposed Cure Amount* [Docket No. 209] filed by Country Inns & Suites by Carlson, Inc.; and (v) The *Limited Objection of Best Western International, Inc., to Second Amended Plan of Reorganization* [Docket No. 215] filed by Best Western International, Inc., are overruled on the merits.

F. **Burden of Proof-Confirmation of the Plan.**

6. The Debtors and Spectrum Origination, as co-proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

#39036208

### G. Notice; Joinder/Intervention.

7. As evidenced by the Affidavits, due, adequate, and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan, objecting to the assumption of executory contracts and unexpired leases, cure amounts proposed in connection therewith, and confirmation of the Plan, has been provided. Such notice was adequate, sufficient and appropriate pursuant to section 1128 of the Bankruptcy Code and in substantial compliance with the Scheduling Order, Bankruptcy Rules 2002, 3017 and 3020, and other applicable law and rules, and no other or further notice is or shall be required. In addition, notice of a hearing to confirm a plan of reorganization concerning the Debtors was published in the Midland Reporter-Telegram on January 12, 2016, in compliance with the Scheduling Order and Bankruptcy Rule 2002(l), was adequate, sufficient and appropriate notice to any other interested party, was reasonably calculated, under the circumstances to reach such parties, and no other or further notice is or shall be required.

### H. Voting Report.

8. Only Holders of Claims in Class 2 (the "Voting Class") were eligible to vote on the Plan. The ballots the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Class adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders in the Voting Class to vote to accept or reject the Plan. Holders of Claims in Classes 1, 3, 4, 6A, and 6C are Unimpaired under the Plan (collectively, the "Presumed Accepting Classes") and presumed to have accepted the Plan, and, therefore, were not entitled to vote to accept or reject the Plan. Holders of Claims or Equity Interests in Classes 5, 6B, and 6D (collectively, the "Deemed Rejecting Classes") are deemed to reject the Plan and, therefore, were not entitled to vote to accept or reject the Plan. As evidenced by the Voting Report, Class 2 voted to accept the Plan. Based on the foregoing, and as evidenced by the

Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtor) has voted to accept the Plan in accordance with the requirements of sections 1124, 1126, and 1129 of the Bankruptcy Code.

### I. Solicitation.

9.     The solicitation of votes on the Plan complied with the solicitation procedures approved in the Scheduling Order (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court (the "Local Rules"), and any other applicable rules, laws, and regulations.

10.     As described in the Voting Report, on January 8, 2016, the Plan, the Disclosure Statement, and a plan ballot (the "Solicitation Package"), was transmitted and served, including to all Holders in the Voting Class, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages Notice were timely, adequate, sufficient, and appropriate.

11.     As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Class that held a Senior Lender Claim as of January 6, 2016 (the date specified in such documents for the purpose of the solicitation) (the "Voting Record Date").  The establishment and notice of the Voting Record Date were reasonable and sufficient.

12.     The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders in the Voting Class to make an informed decision to accept or reject the Plan.

13.     Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the Holders of Claims or Equity Interests, as applicable, in the Presumed

#39036208

Accepting Classes, each of which is conclusively presumed to have accepted the Plan.  The Debtors were not required to solicit votes from the Holders in the Deemed Rejecting Classes, each of which is deemed to have rejected the Plan and is not entitled to receive or retain any property under the Plan on account of such Claims or Equity Interests.

### J.    Confirmation Hearing Notice.

14.    The service of the First Confirmation Hearing Notice and Second Confirmation Hearing Notice, in the manner described in the Confirmation Service Affidavit, together with the newspaper publication described in the Publication Notice, provided timely, adequate, and appropriate notice of the Confirmation Hearing and deadlines to submit any objections to the Plan.  No other or further notice of the Plan or Confirmation Hearing is required under the circumstances presented in these Chapter 11 Cases.

### K.    Plan Supplement.

15.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the ability of a Plan Proponent to amend, update, or modify the Plan Supplement as well as the documents set forth therein before the Effective Date is reserved.  All interested parties were provided adequate, sufficient and appropriate notice of the Plan Supplement.

### L.    Financial Analysis.

16.    The liquidation analysis and other financial analyses and projections contained in the Disclosure Statement (i) are reasonable, persuasive, credible, and accurate as of the date such

analysis or evidence was prepared, presented, or proffered, (ii) utilize reasonable and appropriate methodologies and assumptions, and (iii) have not been controverted by other evidence.

**M.     Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

17.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**(i)     Proper Classification—Sections 1122 and 1123.**

18.     The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article 3 of the Plan provides for the separate classification of Claims and Equity Interests into nine Classes, based on differences in the legal nature or priority of such Claims and Equity Interests (other than Administrative Claims, Priority Tax Claims, and Professional Fee claims, which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

**(ii)     Specified Unimpaired Classes—Section 1123(a)(2).**

19.    Articles 3.D.1, 3.D.3, 3.D.4, and 3.D.6(ii)(b), of the Plan specify that Claims in Classes 1, 3, 4, 6A, and 6C are Unimpaired under the Plan (the "Unimpaired Classes").  The Plan, therefore, satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3).

20.    Articles 3.D.2, 3.D.5(ii)(c), and 3.D.6(ii)(a)(2) of the Plan specify the treatment of each Impaired Class of Claims and Equity Interests under the Plan, including Classes 2, 5, 6B, and 6D.  The Plan, therefore, satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### (iv)    No Discrimination—Section 1123(a)(4).

21.    Article 3 of the Plan provides the same treatment for each Claim or Equity Interest within a particular class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5).

22.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate means for the Plan's implementation.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (vi)    Non-Voting Equity Securities—Section 1123(a)(6).

23.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code prohibiting the issuance of nonvoting equity securities.  Article 4.E.1 of the Plan provides that each of the Reorganized Debtors' certificates of incorporation, certificate of formations, or analogous corporate documents will include a provision prohibiting the issuance of nonvoting equity securities.

### (vii)    Directors and Officers—Section 1123(a)(7).

11

24.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The proposed member of the initial members and other officers and governance representatives and their affiliations were disclosed in a Plan Supplement exhibit.  The selection of the officers, directors, managers, and/or other governance representatives of each of the Reorganized Debtors is consistent with the interests of all Holders of Claims and Equity Interests, and public policy.

(viii)   **Claims and Executory Contracts—Section 1123(b)(1)–(2).**

25.     Article 3 of the Plan leaves Impaired or Unimpaired, as the case may be, each Class of Claims and Equity Interests. Article 6 of the Plan provides that all Executory Contracts shall be deemed assumed on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts that: (i) have been previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court; (ii) are subject to a separate motion to assume, assume and assign, assign or reject under section 365 of the Bankruptcy Code that is pending on the Effective Date; or (iii) are rejected pursuant to the terms of the Plan and/or indicated on the Contracts Schedule as so rejected. The Debtors have provided timely, adequate, sufficient and appropriate notice to any non-Debtor counterparty to an executory contract or unexpired lease assumed or rejected by the Debtors during the Chapter 11 Cases.  This Court finds that sufficient adequate assurance of future performance has been provided for each assumed executory contract or unexpired lease.

(ix)   **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

26.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all

12

Claims, Equity Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The compromise and settlement of such Claims and Equity Interests embodied in the Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

27. Article 8.E.1 of the Plan describes certain releases granted by the Debtors, the Reorganized Debtors, and the Estates (the "Debtor Releases"). The Debtors have satisfied the applicable standard of review with respect to the propriety of the Debtor Releases. Such releases are a necessary and integral element of the Plan, are the result of fair, arms-length negotiation, and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests. Also, the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by Article 8.E.1 of the Plan; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to any of the Debtors, the Reorganized Debtors and the Estates asserting any Claim or Cause of Action released by Article 8.E.1 of the Plan. Specifically, each of the Released Parties made a substantial contribution to the Debtors' reorganization, leading up to and including the commencement of the Chapter 11 Cases through the date hereof through, among other things, negotiating, formulating, and executing the Plan. Additionally, the Released Parties provided other important and substantial contributions to the Chapter 11 Cases and the Debtors' reorganization overall.

#39036208

28.     The releases granted by certain third parties set out in Article 8.E.2 of the Plan (the "Mutual Releases") provide finality for the Debtors, the Reorganized Debtors, and the other parties subject to the Mutual Releases regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Mutual Releases are consensual with respect to the Debtors, the Senior Lender, and the other parties subject to the Mutual Releases. Moreover, timely, sufficient, appropriate, and adequate notice of the Mutual Releases was provided to the persons affected thereby, and such notice was reasonably calculated under the circumstances to reach such parties. No other or further notice is or shall be required.

29.     Further, the Mutual Releases are (a) a necessary and integral element of the Plan; (b) in exchange for the good and valuable consideration provided by the parties subject thereto; (c) a good faith settlement and compromise of the claims released by the Mutual Releases; (d) in the best interests of the Debtors, their Estates, and all Holders of Claims and Equity Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the parties subject to the Mutual Releases asserting any claim or Cause of Action released pursuant to the Mutual Releases.

30.     The exculpation described in Article 8.F of the Plan (the "Exculpation") is appropriate under applicable law because it is fair, was proposed in good faith, was formulated following extensive good-faith, fair, arm's-length negotiations among key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each person or entity subject to the Exculpation has participated in the Chapter 11 Cases in good faith.

31.     The injunction provision set forth in Article 8.H of the Plan (the "Injunction") is fair and reasonable, necessary to implement, preserve, and enforce the Debtors' discharge, the

Debtor Releases, the Mutual Releases, and the Exculpation, and narrowly tailored to achieve this purpose.

32.     The provisions regarding the retention of certain Causes of Action in the Plan are appropriate, fair, equitable and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.

### (x)     Additional Plan Provisions—Section 1123(b)(6).

33.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### (xi)     Cure of Defaults—Section 1123(d).

34.     Article 6 of the Plan provides for the satisfaction of Cure amounts associated with each executory contract or unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(l) of the Bankruptcy Code.  The Debtors distributed notice of the proposed assumption of the executory contracts and unexpired leases to be assumed under the Plan (including the proposed cure associated therewith) (such notice, a "Cure Notice") to all applicable counterparties, which notices included procedures for objecting to and resolving proposed assumptions of executory contracts and unexpired leases and the cure amounts, if any, paid in connection therewith.  All cure amounts will be determined in accordance with the underlying agreements and applicable law, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### N.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).

35.     The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfy the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

#39036208

a.      is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

b.      has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court; and

c.      complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule, and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.      Plan Proposed in Good Faith—Section 1129(a)(3).**

36.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors and other Plan Proponents negotiated the terms of the Plan in good faith, and the Debtors and Plan Proponents proposed the Plan in good faith and not by any means forbidden by law.  In so determining, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the process leading to Confirmation of the Plan, and the transactions to be implemented pursuant thereto.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize, and emerge from bankruptcy with capital and organizational structures that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**P.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

37.      The procedures set forth in the Plan for this Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

#39036208

**Q.     Directors, Officers, and Insiders—Section 1129(a)(5).**

38.     The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.  The Plan, in conjunction with the exhibits to the Plan Supplement, discloses the identity and affiliations of the individuals proposed to serve as the initial directors and officers of the Reorganized Debtors, and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors.  The proposed directors, officers, and other corporate governance representatives for the Reorganized Debtors are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the Holders of Claims and Equity Interests and with public policy.

**R.     No Rate Changes—Section 1129(a)(6).**

39.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.     Best Interest of Creditors—Section 1129(a)(7).**

40.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement as **<u>Exhibit B</u>** and the other evidence related thereto in support of the Plan that was proffered or adduced in the Confirmation Declaration or at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on

#39036208

account of such Claim or Equity Interest, as of the Effective Date, as such Holder would receive under chapter 7 of the Bankruptcy Code if the Debtors were liquidated on the Effective Date.

**T.     Acceptance by Certain Classes—Section 1129(a)(8).**

41.     The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code.  Each of the Unimpaired Classes is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  The Voting Class, Class 2, has voted to accept the Plan. Holders of Claims or Equity Interests in the Deemed Rejecting Classes, if any, receive no recovery pursuant to the Plan and are deemed to have rejected the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**U.     Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

42.     The treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims under the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**V.     Acceptance By At Least One Impaired Class—Section 1129(a)(10).**

43.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, the Voting Class voted to accept the Plan by the requisite number and amount of Claims specified under the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, as that term is defined in section 101(31) of the Bankruptcy Code.

**W.     Feasibility—Section 1129(a)(11).**

44.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at,

18

or prior to, or in the Confirmation Declaration filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations.

### X.      Payment of Fees—Section 1129(a)(12).

45.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  The Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of title 28 of the United States Code.

### Y.      Continuation of Employee Benefits—Section 1129(a)(13).

46.     The Debtors are not obligated to provide any retiree benefits, as such term is defined in section 1114 of the Bankruptcy Code.  As a result, no such benefits are required to be continued under the Plan, and the Plan accordingly satisfies section 1129(a)(13) of the Bankruptcy Code.

### Z.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).

47.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

#39036208

**AA.**    **"Cram Down" Requirements—Section 1129(b).**

48.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes that have not accepted and are presumed to reject the Plan.  There is no Class of equal priority receiving more favorable treatment than the treatment provided to such Deemed Rejecting Classes and no Class that is junior to such Deemed Rejecting Classes that are receiving or retaining any property on account of their Claims or Equity Interests.  *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because such Classes are not receiving materially different treatment than Holders of Equity Interests with similar legal rights. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.**    **Only One Plan—Section 1129(c).**

49.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

**CC.**    **Principal Purpose of the Plan—Section 1129(d).**

50.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.**    **Good Faith Solicitation—Section 1125(e).**

51.    The Debtors, the Plan Proponents, the Released Parties, and the Exculpated Parties, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the

20

Plan and this Confirmation Order, including the solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**EE.    Satisfaction of Confirmation Requirements.**

52.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**FF.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

53.    Without limiting or modifying the rights of the Debtors or any other party under Article 7 of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article 7 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article 7 of the Plan.

**GG.    Implementation.**

54.    All documents necessary to implement the Plan and all other relevant and necessary documents (including, without limitation, the documents comprising the Plan Supplement) have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

55.    For the avoidance of doubt, funds contributed to the RREAF2 Specified General Unsecured Account and the RREAF3 Specified General Unsecured Account and distributed to Eligible RREAF2 Trade Holders and Eligible RREAF3 Trade Holders are not property of the Estate pursuant to section 541 of the Bankruptcy Code.

**HH.    Disclosure of Facts.**

56.    The Debtors and Plan Proponents have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

21

#39036208

## II.  Good Faith.

57.  The Debtors, the Plan Proponents, and the Released Parties have acted in good faith in negotiating and proposing the Plan.  The Plan will preserve the value of the Debtors' Estates, substantially reduce the Debtors' indebtedness, and afford the Debtors the appropriate capital structure to maintain viable businesses into the future.  Further, the Plan effectuates a value-maximizing transaction for the Estates that was agreed to only after significant efforts by the Debtors and Spectrum Origination. The Plan Proponents and the Released Parties will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

58.  **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

59.  **Confirmation of the Plan.**  The Plan, attached hereto as **Exhibit A**, the Plan Supplement, and each of the documents comprising the Plan Supplement, as modified, amended or supplemented from time to time in accordance with the Plan, (each of which are incorporated by reference into and are an integral part of this Confirmation Order) are hereby approved in their entirety and confirmed.

60.  **Ballots.**  The ballot for the Voting Class is approved in all respects.

#39036208

61.     **Solicitation.**  The solicitation of votes on the Plan complied with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, and any applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

62.     **Notice of the Confirmation Hearing**.  Notice of the Confirmation Hearing and the terms and provisions of the Plan and the Plan Supplement was timely, sufficient, appropriate and adequate, and is approved in all respects.  No other or further notice is or shall be required.

63.     **Objections.**  All objections and all reservations of rights pertaining to Confirmation of the Plan that have not been withdrawn, waived, or settled are overruled on the merits.

64.     **Omission of Reference to Particular Plan Provisions.**  The failure to specifically include or refer to any particular article, section, paragraph or provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, paragraph or provision, it being the intent of this Court that the Plan and any related documents be confirmed and approved in their entirety.

65.     **Plan Classifications Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.

66.     **No Action Required.**  Pursuant to section 1142(b) of the Bankruptcy Code, the appropriate provisions of the Texas Business Organizations Code, including sections 10.301 through 10.306 thereof, the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, the comparable provisions of the Delaware Limited Liability Company Act, any comparable provision of the business corporation laws of any other state,

#39036208

other applicable non-bankruptcy law, and otherwise, no action of the respective directors, equity holders, managers, or members of the Debtors or Reorganized Debtors, as applicable, is required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan or any contract, assignment, certificate, instrument, or other document to be executed, delivered, filed, adopted, amended, restated, consummated or effectuated, as the case may be, in connection with the implementation of the Plan.

67. **Means for Implementation of the Plan.** The provisions governing the means for implementation of the Plan set forth in Article 4 of the Plan, shall be, and hereby are, approved in their entirety.

68. **General Settlement of Claims and Interests.** Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, Bankruptcy Rule 9019, and this Confirmation Order, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan and/or this Confirmation Order, on the Effective Date, the provisions of the Plan and/or this Confirmation Order shall constitute a good-faith compromise and settlement of all Claims and Equity Interests. On the Effective Date, all settlements, compromises, releases (including the Debtor Releases and the Mutual Releases), waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all Persons. The Plan and this Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and/or this Confirmation Order, including the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan and/or this Confirmation Order.

#39036208

69.     **Continued Corporate Existence; New Corporate Documents.**   Except as otherwise provided in the Plan, each of the Reorganized Debtors shall continue to exist as a separate legal Entity after the Effective Date.   On the Effective Date, each of the Reorganized Debtors will duly file with the applicable Secretary of State an amended certificate of incorporation, certificate of formation, or analogous corporate document that will, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities.   To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).   After the Effective Date, the Reorganized Debtors may amend and restate their respective corporate documents as permitted by the laws of their respective states, provinces, or countries of incorporation and their respective corporate documents.

70.     **Vesting of Assets in the Reorganized Debtors.**   Except as expressly provided in the Plan or in this Confirmation Order with respect to the Claims and Liens of the Senior Lender, on the Effective Date, each Reorganized Debtor shall be vested with all of the property of its respective Estate, including without limitation all property of each Debtor or Reorganized Debtor held by any party, including without limitation any refunds including those under any insurance policy of the Debtor or Reorganized Debtor, all Causes of Action other than Causes of Action that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, in each case, free and clear of all Claims, Liens, encumbrances, charges and Equity Interests (but subject to the Redemption Option and Pledged Equity Option), and shall thereafter hold, dispose or otherwise deal with such property and operate its business free of any restrictions imposed by the Bankruptcy Code or by this Court. Pursuant to section 1142(b) of the

#39036208

Bankruptcy Code, this Court directs that any party holding any such property of the Estates execute, deliver, or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by this Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan. As to the Claims and Liens of the Senior Lender, on the Effective Date (1) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (2) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (3) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (4) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (5) all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect; provided, however, that the foregoing items (1)-(4) shall be subject in all respects to the Redemption Option. The foregoing item (5) shall continue to apply from and after the Effective Date, regardless of whether the Redemption Option occurs. Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, each Reorganized Debtor may operate its businesses and use, acquire, or dispose of property without supervision or approval of this Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

71. **Corporate Action.** Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of

#39036208

further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or prior to the Effective Date, as applicable, and except as otherwise provided in the Plan, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, are authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the applicable Reorganized Debtors.  The foregoing authorizations and approvals, and any others contemplated in the Plan, shall be effective notwithstanding any requirements under nonbankruptcy law.

72.  **Authorization to Consummate**.  The Debtors or the Reorganized Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver by the required parties of the conditions precedent to the Plan's Effective Date set forth in Article 7 of the Plan.

73.  **Redemption Option**.  The terms of Redemption Option as contained in the Plan are approved.  To the extent RREAF Holdings intends to exercise that option, it shall be entitled to do so, provided that such exercise is timely and in strict compliance with the Redemption Option Deadline, meaning that Spectrum Origination must receive indefeasible payment of the Redemption Option Payoff Amount, in full, in cash, on or before the Redemption Option Deadline, as those terms are defined in the Plan.

74.  **Treatment of Executory Contracts and Unexpired Leases**.  The provisions governing the treatment of executory contracts, unexpired leases, and other agreements set forth in Article 6 of the Plan shall be, and are hereby are, approved in their entirety.  All executory contracts and unexpired leases assumed or rejected pursuant to the Plan and this Confirmation

#39036208

Order, including, but not limited to those executory contracts and unexpired leases identified in the Contracts Schedule, shall be assumed or rejected as of and subject to the occurrence of the Effective Date. Entry of this Confirmation Order by this Court shall constitute approval of such rejection or assumption pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the assumption or rejection of an executory contract or unexpired lease under the Plan, if any, are overruled on their merits.

75.     In the event that the Effective Date does not occur, this Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

76.     **Distributions**. The procedures governing distributions contained in Article 5 of the Plan shall be, and hereby are, approved in their entirety. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

77.     **Section 1145 Exemption.** Pursuant to section 1145 of the Bankruptcy Code, except with respect to any Entity that is an underwriter as defined in section 1145(b) of the Bankruptcy Code with respect to the New RREAF Manager LLC Interests, the offer, issuance, sale or distribution of the New RREAF Manager LLC Interests to be issued pursuant to the Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.

78.     In addition, under section 1145 of the Bankruptcy Code, the New RREAF Manager LLC Interests will be freely tradable in the United States by the recipients thereof

#39036208

without regard to the registration requirements of Section 5 of the Securities Act and any other applicable federal, state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act and subject to any restrictions on transfer set forth in certificates representing such New RREAF Manager LLC Interests.

79.    **Section 1146 Exemption.**  Pursuant to section 1146(a) of the Bankruptcy Code, (a) any transfers or mortgages or the making or delivery of any deed or other instrument of transfer from or by the Debtors to the Reorganized Debtors or any other Entity pursuant to the Plan, (b) any issuance, transfer or exchange of notes, equity securities or other instruments, (c) the creation of any mortgage, deed of trust, Lien, pledge or other security interest or (d) the making or assignment of any lease or sublease, in each case, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and pursuant to this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  All sales, transfers and assignments of owned and leased property approved pursuant to this Confirmation Order are deemed to have been made pursuant to the Plan.

80.    **Procedures for Resolving Disputed Claims.**  The procedures for resolving Disputed Claims contained in the Plan shall be, and hereby are, approved in their entirety.

#39036208

81. **Release, Exculpation, Discharge, and Injunction Provisions.** The release, exculpation, discharge, injunction, and related provisions set forth in Article 8 of the Plan shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

a. **Debtor Release and Third-Party Releases.** The Debtor Release and Third-Party Releases set forth in Articles 8.E.1 and 8.E.2 of the Plan are hereby approved.

b. **Exculpation.** The Exculpation set forth in Article 8.F of the Plan is hereby approved.

c. **Injunction.** The Injunction provision set forth in Article 8.H of the Plan is hereby approved.

d. **Discharge of Debtors.** The Discharge provision set forth in Article 8.D of the Plan is hereby approved.

82. **Trade Unsecured Claim Payments.** The provisions governing Specified RREAF2 Trade Payments and Specified RREAF3 Trade Payments in the Plan shall be, and hereby are, approved in their entirety.

83. **Professional Fees.** Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Cases prior to the Confirmation Date shall file an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases on or before the Professional Fee Claim Bar Date. After notice provided in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by this Court.

#39036208

84.    **Return of Utilities Deposits.**    On the Effective Date, all deposits in any segregated account established to provide utilities with adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases shall be promptly released and returned to the Debtors.

85.    **Compliance with Tax Requirements.**    In connection with the Plan and all distributions thereunder, the Debtors and Reorganized Debtors shall comply with all applicable tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to those requirements.  The Debtors and Reorganized Debtors are authorized to take all actions necessary or appropriate to comply with those withholding and reporting requirements.

86.    **Conditions to Effective Date.**    The provisions governing the conditions precedent to the Effective Date set forth in Article 7 of the Plan shall be, and hereby are, approved in their entirety.

87.    **Modifications or Amendments.**    The provisions governing the modification, revocation, or withdrawal of the Plan set forth in Article 10 of the Plan shall be, and hereby are, approved in their entirety.

88.    **Retention of Jurisdiction.**    Until the Effective Date, this Court shall retain jurisdiction over the Debtors, their assets and operations.  The provisions governing the retention of jurisdiction set forth in Article 9 of the Plan shall be, and hereby are, approved in their entirety.  Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order, the occurrence of the Effective Date or anything to the contrary in the Plan, this Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent

permitted by law (including, section 1142(b) of the Bankruptcy Code), as set forth in Article 9 of the Plan.

89. **Immediate Binding Effect.** Subject to Article 7 of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law.

90. Notwithstanding anything to the contrary in the Plan, the Bankruptcy Rules, including Bankruptcy Rule 3020(e), or otherwise, this Confirmation Order shall become immediately effective and enforceable upon its entry.

91. **Payment of Statutory Fees.** All fees payable under section 1930 of title 28 of the United States Code shall be paid by the Debtors or Reorganized Debtors, as applicable, on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid from funds otherwise available for distribution pursuant to the Plan and this Confirmation Order. Each and every Debtor shall remain responsible for the payment of quarterly fees pursuant to 28 U.S.C. § 1930(f) to the Office of the United States Trustee until the earlier of such time that a particular Chapter 11 Case is (a) closed, (b) dismissed, or (c) converted to a case under Chapter 7 of the Bankruptcy Code.

92. **Effectiveness of All Actions.** Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to the Plan and this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, managers, members, or stockholders of each Debtor and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders. This Confirmation Order

shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan and the Plan Supplement, and any documents, instruments, securities, agreements, and any amendments or modifications thereto.

93.     **Effect of Conflict Between Plan and Confirmation Order.**  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, with respect to any conflict or inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern.  Furthermore, this Confirmation Order shall supersede any Court orders issued before the Confirmation Date that may be inconsistent with this Confirmation Order.

94.     **Nonseverability of Plan Provisions and Confirmation Order.**  Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Spectrum Origination and (c) nonseverable and mutually dependent.

95.     **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated in accordance with its terms under sections 1101 and 1127(b) of the Bankruptcy Code.

#39036208

96.     **Failure of Consummation.**  If the Effective Date does not occur or is not capable of occurring because a condition precedent to the Effective Date set forth in the Plan cannot be satisfied and any party who can waive such condition refuses to do so, then (a) the Plan and this Confirmation Order shall be null and void in all respects, (b) this Confirmation Order shall be vacated, (c) no distributions under the Plan or this Confirmation Order shall be made, (d) any settlement or compromise embodied in the Plan or this Confirmation Order, assumption or rejection of executory contracts or unexpired leases effected by the Plan or this Confirmation Order, and any document or agreement executed pursuant to the Plan or this Confirmation Order shall be null and void in all respects, and (e) all parties, including the Debtors and all Holders of Claims and Equity Interests, shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date.

97.     **Terms of Injunctions or Stays.**  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases either by virtue of sections 105 or 362 of the Bankruptcy Code or any order of this Court, shall remain in full force and effect until all distributions contemplated by the Plan and this Confirmation Order have been made and this Court has entered an order closing the Chapter 11 Cases.

98.     **Notice of Confirmation Order.**  In accordance with Bankruptcy Rules 2002 and 3020(c), within 28 days of the date of entry of this Confirmation Order, the Reorganized Debtors shall cause the notice of Confirmation (the "Confirmation Notice"), substantially in the form attached hereto as **Exhibit B**, to be served by United States mail, first class postage prepaid to all parties served with the Confirmation Hearing Notices; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as

#39036208

addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors or Reorganized Debtors have been informed in writing by such entity, or are otherwise aware, of that entity's new address. Mailing of the Confirmation Notice in the time and manner set forth in this paragraph shall be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c) and no further notice is necessary.

99.    The Confirmation Notice shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.  This Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

100.    **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

101.    **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with this Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

102.    **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of Texas shall govern the construction and implementation of the Plan, (b) the laws of the state of incorporation of the applicable Debtor shall govern corporate governance matters with respect to such Debtor, and (c) the laws of the state of incorporation or formation of the Reorganized Debtor shall

#39036208

govern corporate governance matters with respect to such Reorganized Debtor, in each case, without giving effect to the principles of conflicts of law thereof.

103.    **Ad Valorem Tax Matters**.  Notwithstanding anything to the contrary contained within the Plan (or any amendments thereto) or approved Disclosure Statement, the year 2016 ad valorem taxes owed to Jefferson County, Reeves County, DeWitt County, Frio Hospital District and Pearsall ISD (collectively, the "Ad Valorem Claimants") shall be paid in the ordinary course of business prior to delinquency and the Ad Valorem Claimants shall not be required to file an Administrative Expense claim or request payment of their claims. The Ad Valorem Claimants shall retain their statutory liens securing their post-petition tax debts until such time as the applicable tax debts are paid in full. In the event a Debtor sells, conveys or transfers any property which is the collateral for an Ad Valorem Claimant's claim and any post-confirmation tax debt, such Debtor shall remit such sales proceeds first to the applicable Ad Valorem Claimant to be applied to the ad valorem tax debt.  In the event the year 2016 taxes are not timely paid, the applicable Ad Valorem Claimants shall be free to proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code without further notice or court order.

104.    **Treatment of HHF License Agreement**.  RREAF2 operates a Holiday Inn Express® Hotel and Suites Hotel (the "Hotel") subject to that certain Holiday Inn Express® & Suites Change of Ownership License Agreement dated April 29, 2014 (as may have been amended, the "HHF License Agreement") between HHF, as licensor, and RREAF2, as licensee. Notwithstanding any other provision in the Disclosure Statement or Plan, the treatment of the HHF License Agreement, including but not limited to any Claim, obligation, right or remedy arising therefrom, shall be treated in accordance with and subject to this paragraph of this Order.

36

The HHF License Agreement shall be rejected as of the Effective Date.  In order to operate the Hotel on and after the Effective Date, Spectrum Origination is required to obtain a new license from HHF or its affiliates ("New License Agreement").  Spectrum Origination and HHF are in the process of finalizing a New License Agreement in accordance with and subject to HHF's requirements and procedures.  If a New License Agreement is not executed on or before 30 days after the Effective Date, or as otherwise agreed to by Spectrum Origination and HHF in writing, then, the HHF License Agreement shall be deemed terminated as of 12:01 a.m. on the first Business Day thereafter.  The terms of the repayment of all past-due pre-petition franchise fees under the HHF License Agreement and otherwise required for the New License Agreement shall be paid by the Reorganized Debtors in connection with the New License Agreement in the sum of $50,129.52.  On the Effective Date, the Reorganized Debtors shall pay to HHF $45,118.67 in past-due unpaid post-petition franchise fees through January 31, 2016 and an agreed upon sum certain of $40,000 in attorneys' fees.  Franchise fees that accrue on or after February 1, 2016 shall be paid in the ordinary course and HHF shall not be required to file an Administrative Claim.  The Debtors and Spectrum Origination shall jointly give reasonable written notice to HHF prior to the Effective Date as to the date certain for the Effective Date, and HHF may rely upon that notice for all purposes.  Spectrum Origination shall provide to HHF proof of insurance acceptable to HHF in accordance with HHF's requirements and procedures.  That certain Guarantee executed by RREAF Holdings LLC (the "Holdings Guarantee") to guarantee the payment and performance of each obligation required by the HHF License Agreement, is not and shall not be released as a result of the Plan; provided however, that all parties to the Holdings Guarantee reserve all rights, claims, and defenses relating to the Holdings Guarantee, the enforcement of the Holdings Guarantee, and/or any amounts payable in respect of the Holdings

#39036208

Guarantee, which rights, claims and defenses relating to the Holdings Guarantee are unaffected by the Plan or the Confirmation Order.

Notwithstanding anything to the contrary herein, if the Redemption Option is exercised, then any New License Agreement between Spectrum and HHF or its affiliates shall be terminated as of 12:01 a.m. on the date that Spectrum conveys the equity interests of the Reorganized Debtors to RREAF Holdings (or its assigns). In order to operate the Hotel if the Redemption Option is exercised, RREAF Holdings (or its assigns) shall be required to obtain a new license from HHF or its affiliates, which may or may not be approved in HHF's sole and absolute discretion.

HHF shall not be required to execute a Trade Unsecured Claim Release or any other release or document in order to receive a Distribution on any Allowed Claim. HHF shall be entitled to enforce any and all claims or rights under the federal Lanham Act, 15 U.S.C. § 1051 *et seq.* or other applicable federal or state law, before any District Court or state court of competent jurisdiction. Nothing in the Plan is intended to, nor shall it, entitle any party to infringe in any way upon HHF's marks, trade dress or other intellectual property, all of such rights being preserved for the sole benefit of HHF. The HHF License Agreement shall be governed by and construed under the laws of the State of Georgia in accordance with Paragraph 14.B of the HHF License Agreement.

105. **Treatment of La Quinta Franchising Agreements**. Subject to the payment of the La Quinta Cure Amount (as hereinafter defined) and the execution of an amendment to the Hobbs La Quinta Franchise Agreement (as hereinafter defined) and an amendment to the Port Arthur Franchise Agreement (as hereinafter defined), RREAF 2 is hereby authorized to (a) assume the franchise agreement dated April 30, 2014 with La Quinta Franchising, LLC ("La

#39036208

Quinta") relating to the La Quinta Inn & Suites located at 3312 North Lovington Highway, Hobbs, NM (the "Hobbs La Quinta Franchise Agreement); and (b) assume the franchise agreement dated April 30, 2014 with La Quinta relating to the La Quinta Inn & Suites located at 7540 Memorial Boulevard, Port Arthur, Texas (the "Port Arthur La Quinta Franchise Agreement"). RREAF 2 and La Quinta agree that any defaults under the Hobbs La Quinta Franchise Agreement and the Port Arthur La Quinta Franchise Agreement (collectively the "La Quinta Franchise Agreements") shall be deemed cured by the Reorganized Debtors payment to La Quinta, on or before the Effective Date, the sum of $209,185.95 (the "La Quinta Cure Amount").

Notwithstanding anything to the contrary in this Order, the Reorganized Debtors shall be responsible for payment in full of all accrued fees (other than attorneys' fees), charges, payments, expenses and the like arising under or pursuant to the La Quinta Franchise Agreements in the ordinary course as and when such fees, charges, payments, expenses and the like become due pursuant to the terms of the respective La Quinta Franchise Agreements, provided that such charges become due and payable on or after the date of the Cure Notice, regardless of whether such fees, charges, payments, expenses and the like relate to a period of time prior to the assumption of the La Quinta Franchise Agreements.

106.    **Treatment of Choice Franchise Agreements.**  The Debtors operate two hotels doing business as a Comfort Suites and Comfort Inn and located in Pecos Texas and Midland Texas, respectively (the "Choice Hotels").  The Choice Hotels are the subject of two Franchise Agreements (the "Franchise Agreements") dated 4/29/2014 and on or about 11/19/2014 between Choice Hotels International LLC ("Choice"), as franchisor, and certain of the Debtors, as franchisees. Notwithstanding any other provision in the Disclosure Statement or Plan, the

#39036208

Reorganized Debtors shall assume the Franchise Agreements by the agreement of the Choice as of 12:01 a.m. on the Effective Date and the Reorganized Debtors shall pay: (a) any post-petition amounts due under the Franchise Agreements (excluding attorneys' fees) in the ordinary course of business without the need of Choice to file an application for payment of an administrative claim; and (b) the Cure Claim of Choice, in the aggregate amount of $215,373.70 (consisting of pre-petition fees for the Pecos Choice Hotel in the amount of $136,673.74 and pre-petition fees for the Midland Choice Hotel in the amount of $78,699.96) on the following terms: payment of 15% on the last business day of each of the 2nd, 3rd and 4th fiscal quarters of 2016 and payment of the remaining 55% of the Choice cure amount on the last business day of the 1st quarter of 2017.  Choice's acceptance of the Cure Claim shall not be construed to be a waiver of any other rights of Choice under the Franchise Agreements.

107.    **Treatment of Channel Point Agreements**.

a.    <u>Rejection Damages</u>.  Notwithstanding anything to the contrary herein or in any document in the Plan and/or Plan Supplement (as amended and/or may be further amended), effective as of the Effective Date any and all contracts between the Debtors and Channel Point Hospitality LLC shall be deemed rejected.  All claims belonging to Channel Point Hospitality LLC arising from the rejection of any and all pre-petition contracts between the Debtors and Channel Point Hospitality LLC shall be subject to allowance as general unsecured claims and receive treatment as such general unsecured claims are scheduled herein and in the Plan.

b.    <u>Post-Confirmation Management Agreements</u>. Notwithstanding anything to the contrary herein or in any document in the Plan and/or Plan Supplement (as amended and/or may be further amended), effective as of the Effective Date the post-confirmation management contracts between the Debtors and Channel Point Hospitality LLC shall include the following

#39036208

language (which through this Order shall be deemed to be added to the forms of post-confirmation management agreements with Channel Point Hospitality LLC proposed in the Amended Plan Supplement):

> 26.20 **Release from Obligations of Previous Owner**. Except as otherwise provided in any confirmed Plan of Reorganization in the RREAF O&G bankruptcy proceeding, Owner shall not be responsible for nor have any obligation to pay to Manager (and Manager hereby specifically releases Owner from any claims relating to) any amounts owed or otherwise due or payable to the Manager under the Management Agreement dated as of April 30, 2014 between [RREAF O&G Portfolio #2 LLC] [RREAF O&G Portfolio #3 LLC] and Manager for the Hotel.

108. **Amendment and Restatement of Article 8.F of the Plan**.  Article 8.F of the Plan is hereby amended and restated in its entirety as follows:

> F. **Exculpation.**
>
> Notwithstanding anything contained in the Plan to the contrary, the Debtors, the Reorganized Debtors, the Estates, and their respective successors and assigns shall neither have nor incur any liability to any direct or indirect Holder of a Claim or Equity Interest, or a governmental entity on behalf of a Holder of a Claim or Equity Interest, for any postpetition act taken or omitted to be taken in connection with, or related to, the Chapter 11 Cases, including but not limited to the formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; **provided**, **however**, that the foregoing provisions of this Article 8.F shall have no effect on the liability of any such person or entity exculpated hereunder that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; **provided**, **further**, that each such person or entity exculpated hereunder shall be entitled to rely upon the advice of counsel concerning its duties.

109. **Amendment and Restatement of Article 8.H of the Plan**. Article 8.H of the Plan is hereby amended and restated in its entirety as follows:

#39036208

### H. Injunctions.

1.      Except as otherwise expressly provided for in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Parties and Entities who have held, hold, or may hold Claims or Equity Interests against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from:

(i)      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, Reorganized Debtor, or their respective successors and assigns and their respective assets and properties, with respect to any such Claim or Equity Interest that arose before or was held as of the Effective Date;

(ii)      enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, Reorganized Debtor, or their respective successors and assigns and their respective assets and properties, on account of any such Claim or Equity Interest that arose before or was held as of the Effective Date;

(iii)      creating, perfecting or enforcing any encumbrance of any kind against any Debtor, Reorganized Debtor, or the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest that arose before or was held as of the Effective Date;

(iv)      asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor or Reorganized Debtor, or against the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest that arose before or was held as of the Effective Date, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim and adjudicated to be valid and enforceable by a Final Order of the Bankruptcy Court;

(v)      commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest that arose before or was held as of the Effective Date or cause of action released or settled hereunder; or

(vi)      commencing or continuing in any manner any action or other proceeding of any kind against any of the Released Parties in respect of any claims or causes of action released or

#39036208

settled pursuant to Articles 8.E.1 or 8.E.2 of the Plan; provided, however, that this provision is not intended to act as a non-consensual release of non-debtor parties.

110.    **No Stay.**    Pursuant to Article 10(O) of the Plan, the stay imposed under Bankruptcy Rule 3020(e) is hereby waived and the parties may act to implement the terms of the Plan and consummate the Plan immediately upon the entry of this Order on the docket of this Court.

###

#39036208

## Exhibit A

**Plan**

(see attached)

#39036208

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### MIDLAND DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| | § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § | **CASE NO. 15-70095-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 LLC;** | § | **CASE NO. 15-70096-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § | **CASE NO. 15-70097-rbk** |
| | § | |
| **Jointly Administered Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 15-70094-rbk)** |
| | § | |

**SECOND AMENDED PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC PROPOSED BY THE <u>DEBTORS AND SPECTRUM ORIGINATION LLC, AS MODIFIED</u>**

HOLLAND & KNIGHT LLP
Robert W. Jones
Brent R. McIlwain
Brian Smith
200 Crescent Court, Suite 1600
Dallas, TX 75201
Telephone:     (214) 964-9500
Facsimile:     (214) 964-9501

*Counsel for the*
*Debtors and Debtors in Possession*

HAYNES AND BOONE, LLP
Lenard M. Parkins
Karl Burrer
David Staab
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone:     (713) 547-2231
Facsimile:     (713) 236-5402

*Counsel for Spectrum Origination LLC*

Dated: February 8, 2016

# TABLE OF CONTENTS

ARTICLE 1. DEFINITIONS AND RULES OF INTERPRETATION ........................................2

    A.    Definitions. ......................................................................................................2

    B.    Interpretation, Application of Definitions, and Rules of Construction. .................16

    C.    Controlling Document. ...................................................................................16

ARTICLE 2. ADMINISTRATIVE AND PRIORITY CLAIMS ...................................................16

    A.    Administrative Claims. ...................................................................................16

    B.    Professional Fee Claims. .................................................................................17

    C.    Priority Tax Claims. .......................................................................................18

ARTICLE 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .......................................................................................................18

    A.    Special Provision Governing Unimpaired Claims. .................................................18

    B.    Voting and Nonconsensual Confirmation. .........................................................18

    C.    Summary of Classification and Treatment of Classified Claims and Equity Interests. ......................................................................................................18

    D.    Classification and Treatment. ..........................................................................20

ARTICLE 4. IMPLEMENTATION OF THE PLAN ...............................................................24

    A.    Nonconsensual Confirmation. .........................................................................24

    B.    Alternate Confirmation Options. ......................................................................25

    C.    Cooperation of the Debtors and Senior Lender. ..................................................26

    D.    Distributions in Satisfaction. ...........................................................................27

    E.    Implementation of Reorganization. ..................................................................27

    F.    Plan Prosecution and Implementation by Spectrum ………………………….....31

ARTICLE 5. VOTING AND DISTRIBUTIONS ...................................................................31

    A.    Voting of Claims. ..........................................................................................31

    B.    Designation of Party to Make Distributions. .......................................................31

    C.    Distributions on Allowed Claims. .....................................................................32

    D.    Interest on Claims. ........................................................................................33

    E.    Payment of Specified General Unsecured Claims. ...............................................33

    F.    Disputed Claims. ..........................................................................................34

    G.    Estimation of Claims. ....................................................................................35

#38870913

ARTICLE 6. TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND INSURANCE POLICIES ...................................................................35

    A.    Assumption and Rejection of Executory Contracts. .............................................35

    B.    Limited Extension of Time to Assume or Reject. ...................................................36

    C.    Cure Amounts.........................................................................................................36

    D.    Rejection Damage Claims. .....................................................................................37

    E.    Previously Assumed Executory Contracts. ............................................................38

    F.    Insurance Policies...................................................................................................38

    G.    Post-Petition Date Contracts and Leases................................................................38

    H.    Reservation of Rights. ............................................................................................38

ARTICLE 7. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE.............................................................................................39

    A.    Conditions to Confirmation....................................................................................39

    B.    Conditions to the Effective Date. ...........................................................................39

    C.    Waiver of Conditions. ............................................................................................40

    D.    Failure of Conditions. ............................................................................................41

    E.    Substantial Consummation. ....................................................................................41

ARTICLE 8. DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS .......41

    A.    Term of Injunctions or Stays. .................................................................................41

    B.    Vesting of Property. ...............................................................................................41

    C.    Cancellation of Notes and Equity Interests. ...........................................................42

    D.    Discharge................................................................................................................42

    E.    Releases. .................................................................................................................43

    F.    Exculpation.............................................................................................................44

    G.    Preservation of Causes of Action. ..........................................................................45

    H.    Injunctions. ............................................................................................................45

    I.    Binding Effect of the Plan. .....................................................................................46

ARTICLE 9. RETENTION OF JURISDICTION .................................................................46

    A.    Retention of Jurisdiction. .......................................................................................46

ARTICLE 10. MISCELLANEOUS PROVISIONS................................................................47

    A.    Final Fee Applications.............................................................................................47

    B.    Payment of Statutory Fees......................................................................................47

    C.    Modification of the Plan..........................................................................................48

#38870913

D.      Revocation or Deferral of the Plan. ........................................................................48

E.      Successors and Assigns. ..........................................................................................48

F.      Governing Law and Construction. ...........................................................................48

G.      Reservation of Rights. .............................................................................................49

H.      Setoffs and Recoupment. .........................................................................................49

I.      Section 1145 Exemption. .........................................................................................49

J.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes. ......................................................................................................49

K.      Section 1125(e) Good Faith Compliance. ...............................................................50

L.      Further Assurances. .................................................................................................50

M.      Service of Documents. .............................................................................................50

N.      Filing of Additional Documents. .............................................................................51

O.      No Stay of Confirmation Order. ..............................................................................51

#38870913

## INTRODUCTION AND SUMMARY

RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC (collectively, the "Debtors"), and Spectrum Origination LLC, propose the following plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. The Plan is a modification of the *First Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC* [ECF No. 157] (the "First Amended Plan"). The First Amended Plan provided two confirmation alternatives: the Refinancing Confirmation Option in favor of RREAF Holdings and the Conversion Confirmation Option in favor of Spectrum Origination. The Refinancing Confirmation Option expired under First Amended Plan on January 31, 2016, and may no longer be exercised. As modified herein, the Plan replaces the Refinancing Confirmation Option with a Redemption Option in favor of RREAF Holdings. The Redemption Option will expire on 11:59 p.m. (Eastern Time) on May 31, 2016, if RREAF Holdings has not exercised the Redemption Option in accordance with its terms by that time. If the Redemption Option is timely exercised, it will provide the same treatment to unsecured creditors and equity holders as the expired Refinancing Confirmation Option.

The Conversion Confirmation Option in the Plan treats all Holders of Claims against the Debtors the same as was set forth in Conversion Confirmation Option in the First Amended Plan, with the exception of Spectrum Origination, whose ownership interest in the Reorganized Debtors will be subject to the Redemption Option.

Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article 1.A. of the Plan. Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, businesses, properties, results of operations, historical financial information, projections, and future operations, together with a summary and analysis of the Plan.

The Debtors and Spectrum Origination are the co-proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Subject to the terms hereof and the provisions of the Bankruptcy Code and Bankruptcy Rules, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to the Effective Date.

ALL HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT AND TO READ THE PLAN CAREFULLY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

**ARTICLE 1.**
**DEFINITIONS AND RULES OF INTERPRETATION**

**A.    Definitions.**

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

**1.**    "Administrative Claim" means a Claim arising under section 507(a)(2) of the Bankruptcy Code for costs and expenses of administration under section 503(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

**2.**    "Administrative Claims Bar Date" means the first Business Day that is thirty (30) days after the Effective Date, unless otherwise extended by the Reorganized Debtors, and is the deadline for a Holder of an Administrative Claim (other than a Professional Fee Claim, which must be filed before the Professional Fee Claim Bar Date, or an Ordinary Course Administrative Claim) to file a request with the Bankruptcy Court for payment of such Administrative Claim. All fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930 are not subject to the Administrative Claims Bar Date.

**3.**    "Administrative Claims Objection Deadline" shall mean ninety (90) days after the Administrative Expense Claim Bar Date, or as extended pursuant to Article 2.A of the Plan.

**4.**    "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

**5.**    "Agreed Mutual Release Agreement" has the meaning set forth in the definition of Plan Supplement.

**6.**    "Allowed" means:

(x) with respect to any prepetition Claim or Equity Interest, except as otherwise provided herein: (a) as to which no objection to allowance or request for estimation has been interposed on or before the later of (i) the Claims Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; (b) a prepetition Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated, but only as to the

amount listed on the Schedules for such Claim; (c) a prepetition Claim or Equity Interest that is not Disputed and has been allowed by a Final Order; (d) a prepetition Claim or Equity Interest that is expressly allowed pursuant to the terms of this Plan; or (e) a Disputed Claim as to which a Proof of Claim has been timely filed and as to which no objection has been filed by the Claims Objection Deadline; and

(y) with respect to any postpetition Administrative Claim or Professional Fee Claim, either (i) an Administrative Claim or Professional Fee Claim for which allowance has been timely requested, prior to the Administrative Claims Bar Date or Professional Fee Claim Bar Date (as applicable), by a motion filed with the Bankruptcy Court, which motion for allowance of such Administrative Claim or Professional Fee Claim is granted by a Final Order of the Bankruptcy Court; or (ii) an Administrative Claim that the Debtors and Spectrum Origination both deem to be an Ordinary Course Administrative Claim which is timely paid by the Debtors in the ordinary course of business following the Petition Date.

**7.** "Amended and Restated Charter Documents" means the amended and restated certificate of formation, limited liability company agreement, and/or other organizational documents of each of the Reorganized Debtors, substantially in the forms included in the Plan Supplement. The Amended and Restated Charter Documents will become effective only if the Conversion Confirmation Option is implemented as of the Effective Date.

**8.** "Bankruptcy Code" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time.

**9.** "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas.

**10.** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Texas, the Local Rules of Civil Practice and Procedure of the United States District Court for the Western District of Texas, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

**11.** "Bar Date" means November 11, 2015, the date set by the Bankruptcy Court as the deadline to file prepetition proofs of Claim.

**12.** "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined by Rule 9006(a) of the Federal Rules of Bankruptcy Procedure).

**13.** "Cash" means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

3

**14.** "Cash Collateral" has the meaning ascribed to it in section 363(a) of the Bankruptcy Code.

**15.** "Causes of Action" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims, cross-claims, and the like (including, without limitation, all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code), matured or unmatured, known or unknown, then existing or thereafter arising, of any of the Debtors, the Debtors-in-Possession, and/or the Estates that exist or may be pending on the Effective Date against any Entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "Causes of Action" shall exclude any Causes of Action released under the Plan.

**16.** "Chapter 11 Cases" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned the following case numbers: 15-70094-rbk, 15-70095-rbk, 15-70096-rbk, and 15-70097-rbk, which are jointly administered under case number 15-70094-rbk.

**17.** "Claim" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against a Debtor.

**18.** "Claims Objection Deadline" means the last day for filing objections to Claims, which day shall be the latest of (a) 365 days after the Effective Date, (b) thirty (30) days after entry of a Final Order under section 502(j) of the Bankruptcy Code, or (c) such other later dates as may be established by order of the Bankruptcy Court upon a motion (or subsequent motion) of the Reorganized Debtors.

**19.** "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 3 herein pursuant to section 1122(a) of the Bankruptcy Code.

**20.** "Closing Cash" means any cash and cash equivalents, including any cash designated and existing as Debtors' Reserves and all cash in any bank accounts of the Debtors, existing at 6:00 p.m. (Eastern Time) on the Effective Date.

**21.** "Collateral" means any property or interest in property of a Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**22.** "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases subject to all conditions specified in Article 7.A having been satisfied.

4

**23.** "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**24.** "Confirmation Hearing" means the hearing before the Bankruptcy Court to consider Confirmation of the Plan.

**25.** "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**26.** "Contracts Schedule" means the schedule of Executory Contracts: (a) to be rejected pursuant to the Plan; and (b) to assumed pursuant to the Plan. The Contracts Schedule will initially be filed with the Plan Supplement and may, with the consent of Spectrum Origination, be amended, modified, or supplemented (including by adding or removing Executory Contracts) at any time thereafter through and including the Effective Date.

**27.** "Conversion Confirmation Option" has the meaning ascribed to such term in Article 4.B.2 of the Plan.

**28.** "Creditor" shall have the meaning in section 101(10) of the Bankruptcy Code.

**29.** "Cure Claim" means a Claim based upon a Debtor's monetary defaults under an Executory Contract at the time such Executory Contract is assumed by the Debtor under section 365 of the Bankruptcy Code.

**30.** "De Minimis Distribution" means any Distribution (other than a Distribution on an Allowed secured Claim) in an amount less than $50.

**31.** "Debtor," "Debtors," or "Debtors-in-Possession" means, individually and collectively, RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC.

**32.** "Debtors' Fee Cap" shall mean the sum of (i) the actual fees and expenses incurred by the Debtors' Professionals through November 30, 2015 plus (ii) the amount of any retainer held by the Debtors' Professionals. For purposes of computing the Debtors' Fee Cap, as of the date of this Plan, the aggregate amount of incurred, but unpaid fees and expenses incurred by the Debtors' Professionals through November 30, 2015 shall not exceed $35,000.

**33.** "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as it may be amended, supplemented, or modified from time to time.

**34.** "Disputed" means, with respect to any Claim or Equity Interest, or any portion thereof: (a) it is listed on the Schedules (as the Schedules may be amended) as unliquidated, disputed, or contingent, unless a Proof of Claim has been timely filed; (b) as

to which a Debtor, any other party in interest, or a Reorganized Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules before the Claims Objection Deadline; (c) as to which a Proof of Claim or interest was required to be filed but as to which a Proof of Claim or interest was not timely or properly filed; or (d) that is otherwise disputed by the Debtors, a party in interest, or the Reorganized Debtors in accordance with applicable law or the Plan and could be the subject of a timely objection by the Debtors or Reorganized Debtors, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order. For the avoidance of doubt, notwithstanding any objection to allowance or request for estimation filed or interposed by the Debtors, the Senior Lender Claims are not Disputed.

35.    "Distribution" means the distributions of Cash, New RREAF Manager LLC Interests (if the Conversion Confirmation Option is implemented), or other consideration to be made under and in accordance with the Plan.

36.    "Effective Date" means the first Business Day on which: (a) all the conditions specified in Article 7.B.1 of the Plan have been satisfied or waived as set forth in Article 7.C; and (b) all the conditions specified in Article 7.B.2 of the Plan or Article 7.B.3 of the Plan, as applicable, have been satisfied or waived as set forth in Article 7.C.

37.    "Effective Date Notice" means the notice of the occurrence of the Effective Date, which shall be filed within five (5) Business Days after the occurrence of the Effective Date and promptly thereafter served in the manner and on the Entities identified in the Confirmation Order. The Effective Date Notice shall state whether the Plan has been implemented pursuant to the Refinancing Confirmation Option or the Conversion Confirmation Option.

38.    "Entity" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

39.    "Equity Interest" means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors.

40.    "Estate" means the estate of each Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

41.    "Executory Contract" means an agreement, contract, or lease, whether for real or personal property, between or among one or more of the Debtors and a third party, that qualifies as an "executory contract" or "unexpired lease" under section 365 of the Bankruptcy Code.

42.    "February Cash Collateral Order" means the Final Order (I) Authorizing the Debtors' Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Other Relief [ECF No. 204] entered in the Debtors' bankruptcy cases.

43.     "File" or "Filed" or "Filing" means, with respect to any pleading, the entry of such pleading on the docket of the Chapter 11 Cases and the proper service of such pleading in accordance with the Bankruptcy Rules.

44.     "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

45.     "Final Order" means an order, determination, or judgment entered on the docket of the Bankruptcy Court, or any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order, determination, or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

46.     "Gallatin Land LLC" means Gallatin Land, LLC, a Tennessee limited liability company.

47.     "General Unsecured Claim" means any Claim against any Debtor that is not an Administrative Claim, a Professional Fee Claim, a Secured Governmental Unit Claim, a Priority Tax Claim, a Senior Lender Claim, an Other Secured Claim, or an Unsecured Priority Claim.

48.     "Guarantors" means Webb M. ("Kip") Sowden, III, the Webb and Marinelle Sowden Irrevocable Trust established on June 22, 2007, and William Douglas McKnight.

49.     "Holder" means an Entity holding a Claim or Equity Interest.

50.     "Impaired" means "impaired" within the meaning of sections 1123(a) and 1124 of the Bankruptcy Code with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

51.     "Initial Distribution Date" means the Effective Date or as soon thereafter as practicable, but no later than sixty (60) days after the Effective Date.

52.     "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

53.     "Interim Compensation Order" means the Order Granting Motion to Establish Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Case Professionals [ECF No. 121].

54.    "Lien" means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation.

55.    "New Management Agreement" means, the management services agreement to be entered into between the Reorganized Debtors and new management as selected by the Senior Lender, which shall be included in the Plan Supplement.

56.    "New RREAF Manager LLC Agreements" means, the applicable limited liability company agreements to be entered into by Reorganized RREAF2 Manager, Reorganized RREAF3 Manager, and the Senior Lender. Ownership of the New RREAF Manager LLC Interests distributed pursuant to the Plan shall be subject to the Redemption Option set forth herein.

57.    "New RREAF2 Manager LLC Interests" means, the membership interests in Reorganized RREAF2 Manager that will be Distributed pursuant to Article 4.E.3 of the Plan on the Effective Date. Ownership of the New RREAF2 Manager LLC Interests distributed pursuant to the Plan shall be subject to the Redemption Option set forth herein.

58.    "New RREAF3 Manager LLC Interests" means, the membership interests in Reorganized RREAF3 Manager that will be Distributed pursuant to Article 4.E.3 of the Plan on the Effective Date. Ownership of the New RREAF3 Manager LLC Interests distributed pursuant to the Plan shall be subject to the Redemption Option set forth herein.

59.    "New RREAF Manager LLC Interests" means, collectively, the New RREAF2 Manager LLC Interests and New RREAF3 Manager LLC Interests.

60.    "Ordinary Course Administrative Claim" means an Administrative Claim with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing in accordance with the terms and conditions of any agreements relating thereto, which the Debtors and Spectrum Origination recognize and acknowledge is an Ordinary Course Administrative Claim; provided, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, tenant complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, franchise agreement liability (or analogous hotel franchise arrangements), or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an Ordinary Course Administrative Claim.

61.    "Other Secured Claim" means a Claim, other than a Secured Governmental Unit Claim or a Senior Lender Claim, against the Debtors that is (a) secured by a Lien on property in which the Estates have an interest, which Liens are valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (b) that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estates' interest in such property or to the extent of the amount

subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**62.** "<u>PCBH LLC</u>" means Panama City Beach Hotel, LLC a Florida limited liability company.

**63.** "<u>Person</u>" means "person" as that term is defined in section 101(41) of the Bankruptcy Code.

**64.** "<u>Petition Date</u>" means July 8, 2015.

**65.** "<u>Plan</u>" means this plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or herewith, as the case may be.

**66.** "<u>Plan Proponents</u>" means, collectively, the Debtors and Spectrum Origination. The Plan Proponents are sometimes referred to individually in the Plan as a "Plan Proponent."

**67.** "<u>Plan Supplement</u>" means the supplement to the Plan, containing without limitation: (a) the Amended and Restated Charter Documents; (b) the New RREAF Manager LLC Agreements; (c) the New Management Agreement; (d) the Contracts Schedule (as the same may be amended from time to time through the Effective Date); (e) the identity of the initial directors, officers, managers, and/or members (as applicable) of the Reorganized Debtors; (f) the detail of RREAF2 Specified General Unsecured Claims and RREAF3 Specified General Unsecured Claims, (g) an agreement effectuating mutual releases, as described in Article 7.(B.)(3.)(v) of the Plan (the "<u>Agreed Mutual Release Agreement</u>"), (h) the form of Pledged Equity Option, and (i) such other documents that the Plan Proponents determine are necessary to include in the Plan Supplement for implementation of the Plan.  The only items within the Plan Supplement that shall be executed by any of the Debtors, Pledgors, or Guarantors (as applicable) are the Pledged Equity Option and Agreed Mutual Release Agreement, which shall be executed and delivered in advance of the Confirmation Hearing and shall be held in escrow by counsel for Spectrum Origination pending entry of the Confirmation Order.  The Pledged Equity Option may only be amended with the prior written consent of the Pledgors and Spectrum Origination.  The Agreed Mutual Release Agreement may only be amended with the prior written consent of the Guarantors and Spectrum Origination.  The remaining items (a) – (f) in this definition of Plan Supplement may be amended at any time prior to the Effective Date with the written consent of Spectrum Origination only.

**68.** "<u>Plan Supplement Documents</u>" means the documents contained in the Plan Supplement.

**69.** "<u>Pledge Agreements</u>" means: (a) that certain Assignment of Pledged Collateral (Security Agreement/Gallatin Land) dated as of April 29, 2014, by and among RREAF Holdings, Senior Lender, Gallatin Land, LLC, RREAF2 and UCF I Trust; and (b) that certain Assignment of Pledged Collateral (Security Agreement/PCBH) dated as of

April 29, 2014 by and among DM Florida, LLC, RREAF Holdings, Senior Lender, Panama City Beach Hotel, LLC, RREAF2, and UCF I Trust.

**70.** "<u>Pledged Equity</u>" means the equity interests in PCBH LLC and Gallatin Land LLC pledged by the Pledgors.

**71.** "<u>Pledged Equity Option</u>" means the Pledged Equity Option Letter Agreement, substantially in the form included in the Plan Supplement as Exhibit "G" thereto, which enables the Pledgors to require Spectrum Origination (and its assignees of Senior Lender Claims) to release any and all Liens that it may hold against equity interests in PCBH LLC and Gallatin Land LLC in exchange for the timely payment of the Pledged Equity Release Price, in full, in cash, on or before January 15, 2017.

**72.** "<u>Pledged Equity Release Price</u>" means one million dollars ($1,000,000), less any dividends or other distributions in respect of the Pledged Equity paid to or received by Spectrum Origination (or any of its affiliates or assignees of Senior Lender Claims) between the Effective Date and the date of exercise of the Pledged Equity Option.

**73.** "<u>Pledgors</u>" means RREAF Holdings and DM Florida, LLC, a Tennessee limited liability company.

**74.** "<u>Prepetition Guaranty Documents</u>" means, individually and collectively, any guaranty agreements supporting or relating to any of the obligations set forth in the Prepetition Loan Documents, including, without limitation, (i) that certain Guaranty of Recourse Obligations, dated on or about April 30, 2014, by and among Webb M. ("Kip") Sowden, III, the Webb and Marinelle Sowden Irrevocable Trust established on June 22, 2007, and William Douglas McKnight, and (ii) that certain Guaranty of Recourse Obligations, dated on or about November 21, 2014, by and among Webb M. ("Kip") Sowden, III, the Webb and Marinelle Sowden Irrevocable Trust established on June 22, 2007, and William Douglas McKnight.

**75.** "<u>Prepetition Loan Agreements</u>" means, individually and collectively: (i) that certain Loan Agreement, dated as of April 30, 2014, by and among RREAF O&G Portfolio #2 LLC, as borrower, Spectrum Origination LLC, as Lender, and the other signatories thereto, as amended from time to time; and (ii) that certain Loan Agreement dated as of November 21, 2014, by and among RREAF O&G Portfolio #3 LLC, as borrower, Spectrum Origination LLC, as Lender, and the other signatories thereto, as amended from time to time.

**76.** "<u>Prepetition Loan Documents</u>" means the Prepetition Loan Agreements, together with all security documents, pledge agreements, and all related exhibits, schedules, agreements, forbearance agreements, and other documents, evidencing a Claim against any of the Debtors, as the same may have been amended from time to time. The Prepetition Guaranty Documents shall not for purposes of this Plan be considered Prepetition Loan Documents. No document evidencing, or giving any right to any Equity Interests in any of the Debtors shall be deemed a Prepetition Loan Document.

**77.** "<u>Prepetition Loan Facility</u>" means the prepetition loan and credit facility, as evidenced by, among other things, the Prepetition Loan Documents.

**78.** "<u>Previously Assumed Contract</u>" has the meaning ascribed to such term in Article 6.E of the Plan.

**79.** "<u>Priority Tax Claims</u>" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims specifically do not include Claims for payment of real property taxes secured by a Lien on a Debtor's real or personal property; such secured claims shall be considered Secured Governmental Unit Claims.

**80.** "<u>Pro Rata</u>" means, with respect to any Allowed Claim, at any time, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**81.** "<u>Professional</u>" means any Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**82.** "<u>Professional Fee Claim</u>" means an Administrative Claim for compensation for services and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

**83.** "<u>Professional Fee Claim Bar Date</u>" means the date that is sixty (60) days after the Effective Date.

**84.** "<u>Proof of Claim</u>" means a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or pursuant to any Order of the Bankruptcy Court, together with supporting documents.

**85.** "<u>Property</u>" or "<u>Properties</u>" means one or more, as appropriate, of the eight (8) commercial real estate properties owned by the Debtors.

**86.** "<u>RCO Deadline</u>" means 6:00 p.m. (New York time) on January 15, 2016, or such later date to which Spectrum Origination may agree in writing; provided, however, that: if the Disclosure Statement is approved on or prior to January 10, 2016, then the RCO Deadline shall automatically be extended to 6:00 p.m. (New York time) on January 31, 2016, without prejudice to any additional extensions that Spectrum Origination may agree to in writing. The RCO Deadline is the last date by which the Plan may be implemented pursuant to the Refinancing Confirmation Option. This deadline has expired along with the unexercised Refinancing Confirmation Option, which is no longer available to be exercised.

87.    "Redemption Option" means the ability of RREAF Holdings to acquire from Spectrum Origination, in exchange for indefeasible payment to Spectrum Origination of the Redemption Option Payoff Amount, in full, in cash, on or before the Redemption Option Deadline, any and all of the equity in each of the Reorganized Debtors owned by (or subject to the control of) Spectrum Origination pursuant to this Plan.  Upon indefeasible timely payment to Spectrum Origination of the Redemption Option Payoff Amount on or before the Redemption Option Deadline, then: (i) Spectrum Origination shall convey to RREAF Holdings (or its assigns) all of the equity interests in each of the Reorganized Debtors then owned by (or subject to the control of) Spectrum Origination; (ii) any Liens, Claims, indebtedness, Equity Interests, and other rights of payment or ownership held by Spectrum Origination against any of the Debtors or Reorganized Debtors shall automatically be released and of no further effect, without the requirement of any further action by any other party, (iii) the Prepetition Loan Documents (and all obligations evidenced therein and any liens securing the same) shall be deemed to be immediately repaid and satisfied in full, cancelled, and of no further force or effect; and (iv) Spectrum Origination shall take such actions as may be reasonable to facilitate a transfer of the Reorganized Debtors' business operations to RREAF Holdings, upon the exercise of the Redemption Option.

88.    "Redemption Option Deadline" means 11:59 p.m. (Eastern Time) time on May 31, 2016. The Redemption Option Deadline cannot be extended or changed without written consent of Spectrum Origination.

89.    "Redemption Option Payoff Amount" means the sum of (a) fifty-eight million dollars ($58,000,000); plus (b) the Spectrum Legal Fees; plus (c) the Spectrum Transition Payments; less (d) the Sweep Payments, paid in full, in cash, on or before the Redemption Option Deadline. The amount and manner of payment of the Redemption Option Payoff Amount cannot be changed without  written consent of Spectrum Origination.

90.    "Refinancing Confirmation Option" has the meaning ascribed to such term in Article 4.B.1 of the Plan. This option has expired by its own terms and cannot be exercised under the Plan as now modified herein. The terms of the Refinancing Confirmation Option are effectuated under the Redemption Option. See Article 3 of the Plan.

91.    "Refinancing Transactions" means the refinancing or sale of the Properties in an amount sufficient to generate proceeds no less than the Refinancing Transactions Payoff Amount that will be paid to Spectrum Origination under the Refinancing Confirmation Option. Pursuant to the Refinancing Transactions, under the Refinancing Confirmation Option, Spectrum Origination shall be paid no later than the RCO Deadline, Cash in an amount no less than the Refinancing Transactions Payoff Amount. For the avoidance of doubt, the description of the Refinancing Transactions is not intended to limit the Debtors' ability to raise the funds to pay the amounts set forth in the preceding sentence to Spectrum Origination through other transactions so long as payment of the Refinancing Transactions Payoff Amount is made to Spectrum Origination by the RCO Deadline. The Refinancing Transactions are no longer available under the Plan as now modified herein.

92.     "Released Debtor Parties" means the Debtors, their Affiliates and each of their respective Representatives.

93.     "Released Parties" means the Released Senior Lender Parties and the Released Debtor Parties.

94.     "Released Senior Lender Parties" means the Senior Lender, its Affiliates and each of their respective Representatives.

95.     "Reorganized Debtors" means all of the Debtors, or any successors to the Reorganized Debtors by merger, consolidation, or otherwise, on and after the Effective Date.

96.     "Representatives" means, with regard to an Entity, that Entity's current and former officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents, and other representatives (including each of their respective officers, directors, employees, independent contractors, members, and professionals).

97.     "Retained Causes of Action" means all Causes of Action of any of the Debtors, the Debtors-in-Possession, and/or the Estates (including, without limitation, the Causes of Action Listed on the Retained Causes of Action Schedule) that are held or may be pending on the Effective Date against any Entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "Causes of Action" shall exclude any Causes of Action released under the Plan.

98.     "Retained Causes of Action Schedule" means the schedule of Causes of Action attached to the Disclosure Statement as Exhibit D.

99.     "RREAF Holdings" means RREAF Holdings LLC, a Texas limited liability company.

100.    "RREAF2" means RREAF O&G Portfolio #2 LLC, a Delaware limited liability company.

101.    "RREAF2 Investors" means RREAF O&G Portfolio #2 Investors LLC, a Delaware limited liability company and the sole Holder of prepetition Equity Interests in RREAF2 Manager.

102.    "RREAF2 Manager" means RREAF O&G Portfolio #2 Manager LLC, a Delaware limited liability company.

103.    "RREAF2 Specified General Unsecured Account" means an account established for the purpose of funding RREAF2 Specified General Unsecured Claims.

104.    "RREAF2 Specified General Unsecured Claims" means those General Unsecured Claims against RREAF2 that are identified by the Senior Lender as RREAF2 Specified General Unsecured Claims in the Plan Supplement.

105.    "RREAF3" means RREAF O&G Portfolio #3 LLC, a Delaware limited liability company.

106.    "RREAF3 Holdings" means RREAF Holdings (O&G Hospitality Portfolio Number 3), LLC, a Texas limited liability company and the sole Holder of prepetition Equity Interests in RREAF3 Manager.

107.    "RREAF3 Manager" means RREAF O&G Portfolio #3 Manager LLC, a Delaware limited liability company.

108.    "RREAF3 Specified General Unsecured Account" means an account established for the purpose of funding RREAF3 Specified General Unsecured Claims.

109.    "RREAF3 Specified General Unsecured Claims" means those General Unsecured Claims against RREAF3 that are identified by the Senior Lender as RREAF3 Specified General Unsecured Claims in the Plan Supplement.

110.    "Schedules" mean the schedules of assets and liabilities, schedules of executory contracts, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, each as may be amended from time to time, including after the Effective Date.

111.    "Secured Governmental Unit Claim" means a Claim held by a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code that is secured by a Lien in a Debtor's Property, including, but not limited to, those Claims for payment of real property taxes secured by a Lien on a Debtor's Property.

112.    "Senior Lender Claims" means the Allowed prepetition Claims of Spectrum Origination in the amounts set forth in the proofs of claim filed by Spectrum Origination, plus all post-petition interest, fees, and costs that may be Allowed under section 506(b) of the Bankruptcy Code as evidenced by the Prepetition Loan Documents.

113.    "Senior Lender" means Spectrum Origination.

114.    "Solicitation Procedures Order" means the Bankruptcy Court order granting the Debtors' *Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Shortening the Notice Period for the Plan Confirmation Hearing, (C) Establishing a Plan Objection Deadline and Related Procedures, (D) Approving the Solicitation Procedures, (E) Approving the Confirmation Hearing Notice, and (F) Establishing Procedures for the Assumption of Executory Contracts and Unexpired Leases Under the Plan* (Docket No. 150).

115.    "Spectrum Legal Fees" means actual legal fees, in an amount not to exceed $200,000.00 in the aggregate, incurred by Spectrum Origination in respect of the Debtors'

bankruptcy cases or otherwise payable under the Prepetition Loan Documents from and after October 18, 2015.

116.    "Spectrum Origination" means Spectrum Origination LLC, a Delaware limited liability company and the lender under the Prepetition Loan Agreements.

117.    "Spectrum Transition Payments" means, collectively, any amounts expended by Spectrum Origination after the Effective Date and through the exercise of the Redemption Option in order to (a) maintain any prepetition franchise agreements for the Properties as may be required by the franchisors for such Properties to otherwise comply with the terms of such franchise agreements, including, without limitation, any costs for cure payments made by Spectrum Origination pursuant to 11 U.S.C. § 365 or related to comfort letters from franchisors to Spectrum Origination; (b) fund improvements to any of the Properties; and (c) fund working capital needs of the Reorganized Debtors.  Any expenditures relating to the preceding items (a), (b), and/or (c) may be made from Closing Cash, provided, however, that to the extent that any such expenditures are made from Closing Cash, the amount by which the Redemption Option Payoff Amount shall be increased as a result of the use of such Closing Cash shall be limited to the lesser of (x) the actual amount of Closing Cash expended; and (y) one million dollars ($1,000,000).

118.    "Sweep Payments" means any cash payments made to Spectrum Origination LLC after November 11, 2015 in accordance with (a) the Corrected Final Order Authorizing Use of Cash Collateral [ECF No. 129] entered in the Debtors' bankruptcy cases;  or  the February Cash Collateral Order entered in the Debtors' bankruptcy cases.

119.    "Trade Unsecured Claim Release" mean a release in favor of the Reorganized Debtors to be executed by an Eligible RREAF2 Trade Holder or Eligible RREAF3 Trade Holder (as applicable) in order to receive a Specified RREAF2 Trade Payment or Specified RREAF3 Trade Payment (as applicable), in form and substance satisfactory to the Reorganized Debtors and Spectrum Origination and substantially in the form to be set forth in the Plan Supplement.

120.    "U.S. Trustee" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

121.    "Unencumbered" means, with respect to any asset or other property, not subject to (i) a Lien or (ii) a charge to use such asset or other property for a particular purpose to which the Debtors or the Reorganized Debtors have agreed or are bound.

122.    "Unimpaired" means not "impaired" within the meaning of section 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

123.    "Unsecured Priority Claims" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

**B.      Interpretation, Application of Definitions, and Rules of Construction.**

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (e) the words "herein," "hereof," "hereby," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part hereof or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**C.      Controlling Document.**

Except as may be provided in the Confirmation Order, in the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and a Plan Supplement Document, the terms of the Plan shall control. In the event of an inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall control.

**ARTICLE 2.**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

**A.      Administrative Claims.**

Except as otherwise provided in the Plan or the Confirmation Order, subject to the Administrative Claims Bar Date and other requirements of the Plan, on the later of (i) the Initial Distribution Date, or (ii) as soon as reasonably practicable after such Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Allowed amount of the Allowed Administrative Claim or (b) such other less favorable treatment as

to which the Reorganized Debtors and such Holder shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating to such Ordinary Course Administrative Claims.

Each Holder of an Administrative Claim (other than an Ordinary Course Administrative Claim or a Professional Fee Claim) shall file with the Bankruptcy Court by the Administrative Claims Bar Date a motion requesting allowance and payment of such Administrative Claim by electronic filing, mailing, hand delivering, or delivering by courier service such request for payment of Administrative Claim to the Bankruptcy Court and serve a copy on the Reorganized Debtors and the U.S. Trustee.

All objections to allowance of Administrative Claims (excluding Professional Fee Claims) must be filed by any parties in interest no later than (a) the Administrative Claims Objection Deadline or (b) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of Administrative Claims Objection Deadline or (ii) is agreed between the Reorganized Debtors and the affected Holder of an Administrative Claim.

**B.      Professional Fee Claims.**

All Professionals employed by the Debtors in these Chapter 11 Cases, including Debtors' attorneys, shall file and serve on the Reorganized Debtors and all other parties entitled to receive notice of the application under the Interim Compensation Order all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code for Professional Fee Claims through the Effective Date by no later than the Professional Fee Claim Bar Date. Objections to Professional Fee Claims for compensation or reimbursement of expenses must be filed by any party in interest and served on counsel for the Reorganized Debtors and the Professionals or other Entities to whose application the objections are addressed on or before the objection deadline set forth in the applicable application for allowance of a Professional Fee Claim. Notwithstanding anything herein to the contrary: (i) the aggregate amount of Professional Fee Claims payable by the Debtors and/or the Reorganized Debtors (including all amounts paid by the Debtors after the Petition Date and prior to the Effective Date) shall not exceed the Debtors' Fee Cap; and (ii) any Professional Fee Claims associated with the marketing and/or refinancing of the Properties shall not be Allowed (provided, however, that notwithstanding the limitation in this clause (ii), the Debtors' counsel shall, subject to the limitation set forth in the preceding clause (i), be entitled to allowance of Professional Fee Claims for services performed on or before October 15, 2015 associated with the marketing and/or refinancing of the Properties, and for services performed in connection with preparing this Plan and the Disclosure Statement as well as any services performed in connection with obtaining approval of the Disclosure Statement, and/or confirmation of this Plan, along with any matters related thereto). In consideration for the treatment afforded under the Plan, unless a Termination Date (as such term is defined in the February Cash Collateral Order) occurs prior to the Effective Date, neither the Reorganized Debtors, nor the Senior Lender, shall be entitled to raise objections to any Professional Fee Claims requesting final allowance of compensation totaling, in the

17

aggregate of the Debtors' Fee Cap or less and, upon the Effective Date, shall be deemed to have waived their right to challenge the allowance of any such Professional Fee Claims.

## C.      Priority Tax Claims.

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date, each Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Reorganized Debtors, (a) on the Initial Distribution Date, Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (b) deferred Cash payments over time pursuant to section 1129(a)(9)(C) of the Bankruptcy Code in an aggregate principal amount equal to the face amount of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the rate of interest determined under applicable non-bankruptcy law as of the calendar month in which the Plan is confirmed, or (c) such other less favorable treatment as to which the Reorganized Debtors and such Holder shall have agreed upon in writing.

## ARTICLE 3.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND
## EQUITY INTERESTS

## A.      Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Reorganized Debtors in respect of any Claim classified in an Unimpaired Class, including, without limitation, all rights in respect of objections to such Claims and any legal and equitable defenses to or rights of setoff or recoupment against any such Claim.

## B.      Voting and Nonconsensual Confirmation.

**1.**      In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

**2.**      The Plan Proponents reserve the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject the Plan or is deemed to reject the Plan, the Plan Proponents further reserve the right to modify the Plan in accordance with Article 10.C herein.

## C.      Summary of Classification and Treatment of Classified Claims and Equity Interests.

The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class

18

and shall be deemed classified in a different Class to the extent that such Claim or Equity Interest or any portion thereof qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan Proponents have not classified Administrative Claims, Professional Fee Claims, or Priority Tax Claims, as described in Article 2 of the Plan.

There are six (6) primary Classes, Classes 1-6, based on the type of Claim or Equity Interest. Each primary Class is further classified into separate sub-Classes based on the Debtor against which such Claim is Scheduled or Filed or Equity Interest held, as applicable. The sub-Classes for each primary Class of Claims and Equity Interests shall be as follows:

| Debtor | Applicable Classes of Claims |
|---|---|
| RREAF O&G Portfolio #2 LLC | 1A, 2A, 3A, 4A, 5A, and 6A. |
| RREAF O&G Portfolio #2 Manager LLC | 1B, 2B, 3B, 4B, 5B, and 6B. |
| RREAF O&G Portfolio #3 LLC | 1C, 2C, 3C, 4C, 5C, and 6C. |
| RREAF O&G Portfolio #3 Manager LLC | 1D, 2D, 3D, 4D, 5D, and 6D. |

A summary of the treatment for each primary Class[1] is set forth in the following table:[2]

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Governmental Unit Claims | Unimpaired | Not Entitled to Vote |
| 2 | Senior Lender Claims | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
| 4 | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired (and deemed to accept) if the Refinancing Confirmation Option is implemented<br><br>Impaired (and deemed to reject) if the Conversion | Not Entitled to Vote |

---

[1] Unless otherwise specified, all references to a primary Class shall be construed as a reference to and encompassing all sub-Classes within the primary Class. For example, any reference to "Class 1" shall be construed as a reference to Classes 1A, 1B, 1C, and 1D.

[2] The table is for informational purposes only and is qualified in its entirety by Article 3.D herein.

| | | Confirmation Option is implemented | |
|---|---|---|---|
| 6A, 6C | Equity Interests: RREAF O&G Portfolio #2 LLC RREAF O&G Portfolio #3 LLC | Unimpaired | Not Entitled to Vote |
| 6B, 6D | Equity Interests: RREAF O&G Portfolio #2 Manager LLC RREAF O&G Portfolio #3 Manager LLC | Unimpaired (and deemed to accept) if the Refinancing Confirmation Option is implemented. Impaired (and deemed to reject) if the Conversion Confirmation Option is implemented | Not Entitled to Vote |

**D.      Classification and Treatment.**

**1.      <u>Secured Governmental Unit Claims (Class 1)</u>**

  **(i)** *Classification*: Class 1 consists of the Secured Governmental Unit Claims against each respective Debtor.

  **(ii)** *Treatment*: On the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Secured Governmental Unit Claim, the Holder of such Allowed Secured Governmental Unit Claim shall receive at the election of the Reorganized Debtors, in full satisfaction, settlement, release, and discharge of and in exchange for, such Allowed Secured Governmental Unit Claim, (a) Cash equal to the value of its Allowed Secured Governmental Unit Claim, (b) the return of the Holder's Collateral securing the Secured Governmental Unit Claim, (c) payment in full as provided under sections 1129(a)(9)(C) and (D) of the Bankruptcy Code on the schedule provided for payment of General Unsecured Claims, or (d) such other less favorable treatment to which the Reorganized Debtors and such Holder shall have agreed upon in writing. To the extent such payments are paid over time, such payments shall be calculated to result in payment in full of the Allowed Secured Governmental Unit Claim with all accrued interest.

  **(iii)** *Voting*: Class 1 is Unimpaired and, therefore, the Holders of Secured Governmental Claims are deemed to have accepted the Plan.

**2.      <u>Senior Lender Claims (Class 2)</u>**

  **(i)** *Classification*: Class 2 consists of Senior Lender Claims.

  **(ii)** *Treatment*: On the Effective Date, the Senior Lender will receive the following treatment:

## THE CONVERSION CONFIRMATION OPTION

(1) all of the New RREAF Manager LLC Interests shall be issued to Spectrum Origination, the ownership of which shall be subject to the Redemption Option; (2) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (3) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (4) the Prepetition Loan Documents (and the Liens and Claims arising under the Prepetition Loan Documents) shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (5) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (6) all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect; provided, however, that the foregoing items (1)-(5) shall be subject to the Redemption Option. The foregoing item (6) shall continue to apply from and after the Effective Date, regardless of whether the Redemption Option occurs. The Prepetition Loan Documents shall be amended to provide: (i) for a maturity date of January 31, 2017; and (ii) to the extent that a monthly interest payment exceeds the Reorganized Debtors' excess cash flow, that portion of such monthly interest payment shall be paid in kind (all such paid in kind interest shall be added to the principal amount outstanding of the debt under the Prepetition Loan Agreements and shall accrue interest at the applicable rate set forth in the Prepetition Loan Agreements). At any time prior to the Effective Date, the Senior Lender shall have the option to elect to have a portion of the Senior Lender's claims converted, upon the Effective Date, to New RREAF Manager LLC Interests, provided, that Spectrum Origination's ownership of such interests shall be subject to the Redemption Option.

(iii)    *Voting*: Class 2 is Impaired and, therefore, the Holders of the Senior Lender Claims are entitled to vote to accept or reject the Plan.

(iv)    *No Novation*: For the avoidance of doubt, there is no intention, nor shall the plan be deemed or construed, to effect a novation of the Senior Lenders' Liens or Claims under the Conversion Confirmation Option.

## 3.    Other Secured Claims (Class 3)

(i)    *Classification*: Class 3 consists of the Other Secured Claims.

(ii)    *Treatment*: Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Other Secured Claim in Class 3 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Other Secured Claim, at the option of the Plan Proponents or Reorganized Debtors:

(a)    have its Allowed Class 3 Claim reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code,

21

notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of such Allowed Class 3 Claim to demand or receive payment of such Allowed Class 3 Claim prior to the stated maturity of such Allowed Class 3 Claim from and after the occurrence of a default; or

(b)     receive Cash in an amount equal to such Allowed Class 3 Claim, including any interest on such Allowed Class 3 Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 3 Claim.

(iii)     *Voting*: Class 3 is Unimpaired and, therefore, Holders of Other Secured Claims are deemed to have accepted the Plan.

### 4.     Unsecured Priority Claims (Class 4)

(i)     *Classification*: Class 4 consists of all Unsecured Priority Claims.

(ii)     *Treatment*: Except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed Unsecured Priority Claim in Class 4 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Unsecured Priority Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Unsecured Priority Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed Unsecured Priority Claim in Class 4 until the Senior Lender has received payment of the Refinancing Transactions Payoff Amount.

(iii)     *Voting*: Class 4 is Unimpaired and, therefore, Holders of Unsecured Priority Claims are deemed to have accepted the Plan.

### 5.     General Unsecured Claims (Class 5)

(i)     *Classification*: Class 5 consists of all General Unsecured Claims.

(ii)     *Treatment*:

(a)     *If the Redemption Option is exercised*, then the Reorganized Debtors, under the ownership of RREAF Holdings, will, at the time specified in Article 4.E herein, provide Holders of Allowed Class 5 General Unsecured Claims the same consideration as would have been provided to such Holders of Allowed Class 5 General Unsecured Claims under the Refinancing Confirmation Option. Consistent with the Refinancing Confirmation Option, Spectrum is not the Entity obligated to provide such consideration.

22

(b)     *If the Refinancing Confirmation Option is implemented*, then, except to the extent a Holder agrees to other, less favorable treatment, each Holder of an Allowed General Unsecured Claim in Class 5 shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed General Unsecured Claim, be paid in respect of such Claim the full amount thereof in Cash on the later of the Initial Distribution Date or as soon as reasonably practicable after such Claim becomes an Allowed Class 5 General Unsecured Claim; provided, however, that if the Refinancing Confirmation Option is implemented, no distribution shall be made to any Holder of an Allowed General Unsecured Claim in Class 5 until the Senior Lender has received indefeasible payment of the Refinancing Transactions Payoff Amount.

(c)     *If the Conversion Confirmation Option is implemented*, then, on the Effective Date, all General Unsecured Claims will be discharged and eliminated, and the Holders of any General Unsecured Claims will not receive any distributions or property from the Estates under the Plan on account of such Claims (unless the Redemption Option is exercised and consummated in accordance with this Plan).

**(iii)**     *Voting*: If the Refinancing Confirmation Option is implemented, Class 5 is Unimpaired and, therefore, Holders of General Unsecured Claims are deemed to have accepted the Plan. If the Conversion Confirmation Option is implemented, Class 5 is Impaired and conclusively deemed to have rejected the Plan, and therefore, Holders of General Unsecured Claims will not be entitled to vote in respect of the Plan.

**6.     <u>Equity Interests (Class 6)</u>**

**(i)**     *Classification*:

(a)     Class 6A consists of Equity Interests in RREAF2.

(b)     Class 6B consists of Equity Interests in RREAF2 Manager.

(c)     Class 6C consists of Equity Interests in RREAF3.

(d)     Class 6D consists of Equity Interests in RREAF3 Manager.

**(ii)**     *Treatment*:

(a)     Classes 6B and 6D:

(1)     *If the Refinancing Confirmation Option is implemented*, then Holders of Allowed Equity Interest in Classes 6B and 6D shall retain their Pro Rata Equity Interests in such Debtors.

**<u>or</u>**

23

(2) *If the Conversion Confirmation Option is implemented*, Holders of Allowed Equity Interests in Classes 6B and 6D shall have their Equity Interests cancelled and receive no Distribution from the Estates under the Plan.

(b) Classes 6A and 6C: Each Holder of Allowed Equity Interests in Classes 6A and 6C shall retain its equity interests in each respective subsidiary Debtor.

(iii) *Voting*:

(a) Classes 6B and 6D:

(1) *If the Refinancing Confirmation Option is implemented*, then Classes 6B and 6D are Unimpaired and, therefore, Holders of Equity Interests in Classes 6B and 6D are deemed to have accepted the Plan.

**or**

(2) *If the Conversion Confirmation Option is implemented*, then Classes 6B and 6D are Impaired by the Plan, and each Holder of Equity Interests in Classes 6B and 6D will be conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not be entitled to vote to accept or reject the Plan.

(b) Classes 6A and 6C: Classes 6A and 6C are Unimpaired and, therefore, Holders of Equity Interests in Classes 6A and 6C are deemed to have accepted the Plan.

## ARTICLE 4.
## IMPLEMENTATION OF THE PLAN

As discussed in detail in the Disclosure Statement and otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. Except as otherwise provided in the Plan, all Distributions made to holders of Allowed Claims or Equity Interests in any Class are intended to and shall be final.

**A.      Nonconsensual Confirmation.**

The Plan Proponents will seek to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class of

Claims or Equity Interests that does not vote to accept the Plan or is otherwise deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**B.    Alternate Confirmation Options.**

This Plan describes two paths to consummate the Plan: (i) the Refinancing Confirmation Option; and (ii) the Conversion Confirmation Option. Notwithstanding the description of the Refinancing Confirmation Option set forth herein, the Plan shall only be implemented pursuant to the Conversion Confirmation Option.

### 1.    The Refinancing Confirmation Option

The Plan can no longer be implemented pursuant to the Refinancing Confirmation Option, which expired unexercised. Had Debtors satisfied all requirements for the Refinancing Confirmation Option, then, inter alia, (i) the Senior Lender's Liens on the Properties and all other Senior Lender Collateral would be released, (ii) the Senior Lender's Liens on any equity interests in PCBH LLC and Gallatin Land LLC would be released, (iii) the Refinancing Transactions Payoff Amount would be distributed to Spectrum Origination, and (iv) any obligations under the Prepetition Guaranty Documents would be deemed released by the Senior Lender and fully satisfied, all in full and final satisfaction, settlement, release and discharge of, and as payment in full of, the Senior Lender Claims.

### 2.    The Conversion Confirmation Option

If all conditions to the Effective Date set forth in Articles 7.B.1 and 7.B.3 are satisfied or waived in accordance with Article 7.C, then the Plan will be implemented pursuant to the Conversion Confirmation Option. Under the Conversion Confirmation Option, the Senior Lender will receive on the Effective Date all of the New RREAF Manager LLC Interests, the ownership of which shall be subject to the Redemption Option. Furthermore, under the Conversion Confirmation Option, from and after the Effective Date, subject to the exercise of the Redemption Option: (1) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors; (2) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors; (3) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors; (4) the Senior Lender shall retain all of its Liens on the Pledged Equity (subject to the Pledged Equity Option); and (5) all obligations under the Prepetition Guaranty Documents shall be deemed cancelled and of no further effect; provided, however, that the foregoing items (1)-(4) shall be subject in all respects to the Redemption Option. The foregoing item (5) shall continue to apply from and after the Effective Date, regardless of whether the Redemption Option occurs.

Immediately upon the Effective Date of this Plan under the Conversion Confirmation Option, the Released Senior Lender Parties shall release, and shall be deemed to have released, without any further action by any other person or entity, all

claims, causes of action, debts, obligations, rights, suits, judgments, damages, actions, remedies, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date, that the Released Senior Lender Parties may have against any of the Guarantors (including, without limitation, any claims relating to the Prepetition Guaranty Documents); provided, however, that this release shall not release any such claims, causes of action, debts, obligations, rights, suits, judgments, damages, actions, remedies, and liabilities attributable to the fraud or willful misconduct of the Guarantors.

Upon the Effective Date of this Plan under the Conversion Confirmation Option, all Equity Interests in Classes 6B and 6D will be canceled and the Holders of Equity Interests in Classes 6B and 6D will not receive or retain Cash or other property from the Estates on account of such Equity Interests.

## C.     Cooperation of the Debtors and Senior Lender.

Upon entry of the Confirmation Order, the Debtors and Senior Lender, and each of their Representatives shall reasonably cooperate to take all reasonable acts to implement the terms of the Plan.

Without limiting the foregoing, if the Conversion Confirmation Option is implemented, the Debtors and their Representatives shall, reasonably and promptly cooperate with the Spectrum Origination and its Representatives to implement the Conversion Confirmation Option, including, without limitation, taking such actions as are reasonably necessary to accomplish the orderly transition of the management, books and records, and the Debtors' other assets to the managers and officers of the Reorganized Debtors.

In the event that the Redemption Option is timely exercised and the Redemption Option Payoff Amount is timely and indefeasibly paid to Spectrum Origination, then Spectrum Origination shall reasonably cooperate with RREAF Holdings (or its designees) to close the transactions contemplated under the Redemption Option.

For the avoidance of doubt, no Entity's duty to cooperate pursuant to this Article 4.C shall be construed to require such Entity to incur material expense, provide any representations or warranties of any kind, indemnify any party or to provide goods, materials, labor or services without reasonable compensation. The cooperation provisions set forth herein elsewhere in the Plan shall not obligate Spectrum Origination, the Guarantors, or other representatives of the Debtors to enter into any new agreements (whether written or oral), other than those agreements expressly identified in the Plan, those agreements required pursuant to the February Cash Collateral Order, and other documents reasonably necessary to implement the Plan or effectuate the provisions of the Plan. To the extent that any party disputes to the reasonableness of any request to enter into an agreement under the Plan, any such dispute regarding the reasonableness of the request to enter into the document or agreement shall be resolved by the Bankruptcy Court.

**D.     Distributions in Satisfaction.**

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan (including, without limitation, the Liens and Claims to be retained by the Senior Lender pursuant to the Prepetition Loan Documents as modified by the Plan), the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of, and Equity Interests in the Debtors, whether known or unknown, that arose or existed prior to the Effective Date.  Notwithstanding the foregoing or anything herein to the contrary: (a) the Senior Lender shall retain its claims against the Debtors and the Reorganized Debtors (subject to the Redemption Option); (b) the Senior Lender shall retain its prepetition Liens on the Properties and other assets of the Debtors and the Reorganized Debtors (subject to the Redemption Option); (c) the Prepetition Loan Documents shall otherwise remain in force and shall be deemed to have been reinstated on the Effective Date and all obligations of the Debtors thereunder shall be deemed to be obligations of the Reorganized Debtors (subject to the Redemption Option); and (d) the Senior Lender shall retain its Liens on the Pledged Equity (subject to the Pledged Equity Option).

**E.     Implementation of Reorganization.**

**1.     Implementation of Reorganization Generally**

The following steps shall be taken, whether the Plan is implemented pursuant to the Refinancing Confirmation Option or the Conversion Confirmation Option:

**(i)**     *Continuation of Subsidiary Equity Interests.*

On the Effective Date, existing Equity Interests in each of RREAF2 and RREAF3 shall continue in full force and effect.

**(ii)**     *Amended and Restated Charter Documents.*

On the Effective Date, or as soon thereafter as is practicable, the existing certificates of formation and other formation documents, as applicable, of each of the Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, including to prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code. The form of amended formation documents, as applicable, shall be included in the Plan Supplement.

**(iii)**     *Powers of Officers.*

The senior executive officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**(iv)**     *Corporate Action.*

27

Except as set forth herein, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of formation and limited liability company agreements, the issuance of securities and instruments or the selection of senior executive officers, managers, or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or members.

The Debtors or the Reorganized Debtors shall be authorized to execute, deliver, file, and record such documents (including those contained in the Plan Supplement), contracts, instruments, releases, and other agreements, and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court, corporate, board, or member approval or action.

(v) <em>Continued Corporate Existence</em>.

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a limited liability company under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law (including, without limitation, the right to change the state in which each Reorganized Debtor is formed), except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or by the Bankruptcy Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a Final Decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

**2.**     **[Reserved]**

**3.**     **Additional Implementation Steps Under Conversion Confirmation Option**.

The following additional steps shall be taken if the Plan is being implemented pursuant to the Conversion Confirmation Option (but not if the Plan is being implemented pursuant to the Refinancing Confirmation Option):

(i) <em>Issuance of New RREAF Manager LLC Interests; Cancellation of Equity Interests in RREAF2 Manager and RREAF3 Manager</em>.

On the Effective Date, Reorganized RREAF2 Manager and RREAF2 Manager shall issue the New RREAF Manager LLC Interests to Spectrum Origination pursuant to the terms of the Plan and the Plan Supplement Documents (which issuance shall be subject

28

to the Redemption Option). Also on the Effective Date, existing Equity Interests in RREAF2 Manager and RREAF3 Manager shall be deemed canceled and extinguished and shall be of no further force and effect. The Reorganized Debtors are authorized to issue or cause to be issued the New RREAF Manager LLC Interests for Distribution in accordance with the terms of the Plan, amended certificates of formation, and New RREAF Manager LLC Agreements without the need for any further corporate or member action (all of which shall be issued subject to the Redemption Option).

(ii) <i>Execution and Grant of Pledged Equity Option</i>

On the Effective Date, Spectrum Origination (and its assignees of Senior Lender Claims) shall execute and grant the Pledged Equity Option to the Pledgors.

(iii) <i>Appointment of Senior Executive Officers, Managers, and Directors.</i>

On the Effective Date, the terms of the current managing members and/or managers of the board of managers of the Debtors, as the case may be, shall automatically expire and such members and managers shall be deemed removed (without the need for any further action on the part of, or notice to, any Entity). The initial managing members and/or boards of managers of Reorganized RREAF2 Manager and Reorganized RREAF3 Manager shall be comprised of such members chosen by the Senior Lender. On the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the Amended and Restated Charter Documents and other constituent documents of each Reorganized Debtor. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent known, the identities and affiliations of the initial managers, board members, and senior executive officers of each Reorganized Debtor as of the Effective Date will be disclosed in the Plan Supplement. Any successors to the Reorganized Debtors' initial boards will be appointed in compliance with the applicable Reorganized Debtor's Amended and Restated Charter Documents, and each such manager and officer shall serve from and after the Effective Date pursuant to the terms of the Amended and Restated Charter Documents and other constituent documents of the Reorganized Debtors. In addition, the selection of the Entities who will serve as the initial directors, senior executive officers, members and/or managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or members of the applicable Reorganized Debtor.

(iv) [Reserved]

(v) <i>New RREAF Manager LLC Agreements.</i>

On the Effective Date all of the holders of New RREAF Manager LLC Interests (including any options, warrants, or securities convertible into, or exercisable or exchangeable for, New RREAF Manager LLC Interests) then outstanding shall be deemed to be parties to the New RREAF Manager LLC Agreements, without the need for execution by any such holder other than Reorganized RREAF2 and/or Reorganized

29

RREAF3 (as applicable). The New RREAF Manager LLC Agreements shall be binding on all parties receiving, and all holders of, New RREAF Manager LLC Interests (including any options, warrants, or securities convertible into, or exercisable or exchangeable for, New RREAF Manager LLC Interests) regardless of whether such parties execute the New RREAF Manager LLC Agreements.

### 4.    Additional Payments Required Upon Exercise of the Redemption Option

In the event that the Redemption Option is timely exercised and the Redemption Option Payoff Amount is timely and indefeasibly paid to Spectrum Origination on or before the Redemption Option Deadline, in full and in cash, then:

(i)    RREAF Holdings or its designees shall, within five (5) Business Days after Spectrum Origination's receipt of the Redemption Option Payoff Amount, file and docket a notice of exercise of the Redemption Option with the Bankruptcy Court; and

(ii)    Following the effectiveness of the transfer of the equity interests in the Reorganized Debtors to RREAF Holdings pursuant to its exercise of the Redemption Option, and the release (and documentation of such release) of Liens and Claims by Spectrum Origination required pursuant to the Redemption Option, the Reorganized Debtors, then owned by RREAF Holdings, shall, on the later of (a) forty-five (45) days after the transfer of 100% of the Reorganized Debtor equity interests to RREAF Holdings and release of Liens and Claims by Spectrum Origination contemplated under the Redemption Option and (b) the date that such Class 5 Claim becomes Allowed, make all payments to Holders of Allowed Class 5 Claims that would otherwise have been made if the Plan were implemented pursuant to the Refinancing Confirmation Option.  The Plan Proponents agree that Spectrum Origination does not hold any Class 5 Claims, and any payments made by the Reorganized Debtors pursuant to this Article 4.E.4 shall not require the Reorganized Debtors to make any payment to Spectrum Origination in respect of any alleged Class 5 Claims held by Spectrum Origination.

### 5.    Operating Covenants Until Expiration of Redemption Option

Notwithstanding the Plan's implementation pursuant to the Conversion Confirmation Option and the issuance of New RREAF Manager LLC Interests to Spectrum on the Effective Date, Spectrum and the Reorganized Debtors shall agree to the following covenants from the Effective Date through the Redemption Option Deadline:

**(i)**    Spectrum and the Reorganized Debtors will continue to operate and conduct the Reorganized Debtors' business affairs in the ordinary course of business;

**(ii)**    Any designee, purchaser, successor, transferee or assignee of any equity interests in any of the Reorganized Debtors shall agree, in writing, to be bound by the terms of this Plan, the Confirmation Order, and the other Plan Supplement Documents;

(iii)    None of the Reorganized Debtors shall incur any additional indebtedness (other than ordinary, unsecured trade payables);

(iv)    The Reorganized Debtors shall exhaust all Closing Cash prior to receiving any additional funds from Spectrum Origination in order to fund working capital or other operational expenses;

(v)    The Reorganized Debtors shall not distribute any of the Closing Cash to Spectrum Origination or any of its affiliates; provided, however, nothing shall prevent the use of the Closing Cash for the purposes set forth in the definition of Spectrum Transition Payments; and

(vi)    Spectrum and the Reorganized Debtors shall provide RREAF Holdings and any other proposed recipient designated by RREAF Holdings (subject to RREAF Holdings and such other recipients' execution of a non-disclosure agreement reasonably satisfactory to Spectrum Origination), from the Effective Date thorough the Redemption Option Deadline, with the same monthly reports and financial information currently furnished to Spectrum Origination pursuant to the Prepetition Loan Agreements.

**F.    Plan Prosecution and Implementation by Spectrum.**

Except for: (i) matters expressly requiring the consent or other action of the Debtors, Guarantors, or other third parties as set forth in Article 10 herein; or (ii) matters relating to the negotiation, documentation, formulation, and/or alteration, of the Redemption Option, Pledged Equity Option, or the Agreed Mutual Release Agreement; Spectrum Origination, as co-proponent of the Plan as Modified, shall be entitled to prosecute, confirm, consummate and implement this Plan through the Conversion Confirmation Option.

## ARTICLE 5.
## VOTING AND DISTRIBUTIONS

**A.    Voting of Claims.**

Each holder of an Allowed Claim or Equity Interest in an Impaired Class entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**B.    Designation of Party to Make Distributions.**

The Reorganized Debtors or a disbursing agent acting on their behalf shall make all Distributions provided for in the Plan. The Reorganized Debtors shall be empowered to take all necessary actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan.

31

C.    **Distributions on Allowed Claims.**

1.    **Delivery of Distributions**.

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made by the Reorganized Debtors or any disbursing agent acting on their behalf (a) at the addresses set forth on any Proof of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors or the Reorganized Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes filed with the Bankruptcy Court and served on the Reorganized Debtors by such Holder after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and no written notice of address change has been filed by such Holder with the Bankruptcy Court and served on the Reorganized Debtors.

2.    **Distribution of Cash**.

Any payment of Cash by the Reorganized Debtors or any disbursing agent acting on their behalf pursuant to the Plan shall be made, at the option and sole discretion of the Reorganized Debtors, by (a) Cash, (b) check drawn on a domestic bank, (c) wire transfer, or (d) ACH. Any Cash Distributions or payments will be issued to Holders in whole cents (rounded to the nearest whole cent when and as necessary).

3.    **Fractional Interests and De Minimis Distributions**.

No fractional New RREAF Manager LLC Interests shall be issued or distributed pursuant to the Plan. If any fraction of a New RREAF Manager LLC Interest would otherwise be required to be distributed, the actual Distribution shall reflect a rounding to the nearest whole interest (up or down), with fractions less than half being rounded down and fractions equal to half interests or more being rounded up.

The Reorganized Debtors shall not be required to, but may in their sole and absolute discretion, make Cash Distributions of less than $50. Any Claims affected by this Article 5.C.3 shall be discharged and forever barred from assertion against the Debtors, the Reorganized Debtors, and their respective Properties or Estates.

4.    **Undeliverable Distributions**.

If any Distribution or other payment to the Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, no Distribution shall be made unless and until the Reorganized Debtors have determined the then-current address of such Holder, at which time such Distribution shall be made without interest. Such returned Distributions shall be deemed unclaimed property one year after the Effective Date.

After such date, all unclaimed Distributions of Cash shall become the property of the Reorganized Debtors, in each case without the need for a further order of the Bankruptcy Court.

The Allowed Claim on account of which a Distribution could not be made in accordance with this Article 5.C.4 shall be deemed satisfied and released, with no recourse to the Reorganized Debtors, to the same extent as if the Distribution or payment had been made to the Holder of the Allowed Claim.

### 5. Time Bar for Checks.

Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article 5.C.5 shall be made directly to the Reorganized Debtors by the Holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

### D. Interest on Claims.

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no Claims shall be entitled to receive interest accruing on or after the Petition Date on any Claim.

### E. Payment of Specified General Unsecured Claims.

If the Plan is implemented pursuant to the Conversion Confirmation Option:

### 1. RREAF2 Specified General Unsecured Claims.
Within five (5) Business Days after the Effective Date, the Reorganized Debtors shall establish the RREAF2 Specified General Unsecured Account and contribute the amount set forth in an exhibit to the Plan Supplement into such account. Each Holder of a RREAF2 Specified General Unsecured Claim that (a) does not object to the confirmation of the Plan and (b) on or prior to the thirtieth (30th) day following the Effective Date, executes a Trade Unsecured Claim Release (an "Eligible RREAF2 Trade Holder") shall, unless otherwise agreed in writing between Reorganized RREAF2 and such Holder, receive a Cash payment from the RREAF2 Specified General Unsecured Account equal to the amount specified on such exhibit of its Class 5A General Unsecured Claim (any of the foregoing, a "Specified RREAF2 Trade Payment"). Any such cash payments shall be made no later than forty-five (45) days after the Effective Date. After all Specified RREAF2 Trade Payments have been distributed to Eligible RREAF2 Trade Holders, the undistributed amount remaining in the RREAF2 Specified General Unsecured Account shall become the sole and exclusive property of the Reorganized Debtors.

### 2. RREAF3 Specified General Unsecured Claims.
Within five (5) Business Days after the Effective Date, the Reorganized Debtors shall establish the RREAF3 Specified General Unsecured Account and contribute the amount set forth in an exhibit to the Plan Supplement into such account. Each Holder of a RREAF3 Specified

General Unsecured Claim that (a) does not object to the confirmation of the Plan and (b) on or prior to the thirtieth (30th) day following the Effective Date, executes a Trade Unsecured Claim Release (an "Eligible RREAF3 Trade Holder") shall, unless otherwise agreed in writing between Reorganized RREAF3 and such Holder, receive a Cash payment from the RREAF3 Specified General Unsecured Account equal to the amount specified on such exhibit of its Class 5C General Unsecured Claim (any of the foregoing, a "Specified RREAF3 Trade Payment"). Any such cash payments shall be made no later than forty-five (45) days after the Effective Date. After all Specified RREAF3 Trade Payments have been distributed to Eligible RREAF3 Trade Holders, the undistributed amount remaining in the RREAF3 Specified General Unsecured Account shall become the sole and exclusive property of the Reorganized Debtors.

## F.  Disputed Claims.

### 1.  No Distribution Pending Allowance.

Notwithstanding any other provision of the Plan, no Distributions shall be made on account of any Claim that is Disputed unless and until such Claim, or a portion thereof, becomes Allowed.

### 2.  Objection and Resolution; Objection Deadline.

After the Effective Date, the Reorganized Debtors shall have the right to make and to file objections to, or otherwise contest the allowance of, Claims (other than Professional Fee Claims) subsequent to the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court, objections to, or other proceedings concerning the allowance of, Claims (other than Professional Fee Claims) shall be filed and served upon the holders of the Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Professional Fee Claims shall be filed and served on or before the deadline set forth in the motion requesting allowance or payment of such Professional Fee Claims.

Objections to, or other proceedings contesting the allowance of, Claims (other than Professional Fee Claims) may be litigated to judgment, settled, or withdrawn by the Reorganized Debtors. In consideration for the treatment afforded under the Plan, unless a Termination Date (as such term is defined in the February Cash Collateral Order) occurs prior to the Effective Date, neither the Reorganized Debtors, nor the Senior Lender, shall be entitled to raise objections to any Professional Fee Claims requesting final allowance of compensation totaling, in the aggregate of the Debtors' Fee Cap or less and, upon the Effective Date, shall be deemed to have waived their right to challenge the allowance of any such Professional Fee Claims.

The Reorganized Debtors may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Entity, except as set forth herein. From and after the Effective Date, the Reorganized Debtors shall have the sole authority to administer and adjust the claims register to reflect such settlements or

compromises without any further notice to or action, order or approval of the Bankruptcy Court.

In the event any Proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended one or more times by the Bankruptcy Court on motion of the Reorganized Debtors without a hearing or notice to creditors.

## G.    Estimation of Claims.

The Plan Proponents or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time, including during the pendency of proceedings concerning such Claim and any appeal thereof. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount may constitute either (a) the Allowed amount of such Claim or (b) a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Reorganized Debtors may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objections, estimations, and resolution procedures are cumulative and not exclusive of one another.

## ARTICLE 6.
## TREATMENT OF EXECUTORY CONTRACTS,
## UNEXPIRED LEASES, AND INSURANCE POLICIES

## A.    Assumption and Rejection of Executory Contracts.

On the Effective Date, except as otherwise provided herein (including, specifically, in Article 6.F below and on the Contracts Schedule), all Executory Contracts will be automatically assumed by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts that:

(i)    have been previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court;

(ii)    are subject to a separate motion to assume, assume and assign, assign or reject under section 365 of the Bankruptcy Code that is pending on the Effective Date; or

(iii)    are rejected pursuant to the terms of the Plan and/or indicated on the Contracts Schedule as so rejected.

Except as otherwise provided herein or agreed to by the Reorganized Debtors with the applicable counterparty in writing, each assumed, assumed and assigned, or assigned

Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent any provision in any Executory Contract assumed, assumed and assigned, or assigned pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by the assumption, assumption and assignment, or assignment of such Executory Contract, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed, assumed and assigned, or assigned pursuant to this Article 6 shall vest in and be fully enforceable by the Reorganized Debtors or assignee, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, assumption and assignment or assignment, or applicable law. Without amending or altering any prior order of the Bankruptcy Court approving the assumption, assumption and assignment, or rejection of any Executory Contract, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.    Limited Extension of Time to Assume or Reject.**

In the event the Reorganized Debtors become aware after the Effective Date of the existence of an Executory Contract that was not included in the Schedules or Contracts Schedule, the right of the Reorganized Debtors to move to assume, assume and assign, or assign such Executory Contract shall be extended until the date that is thirty (30) days after the date on which the Reorganized Debtors become aware of the omission of such Executory Contract. The deemed assumptions provided for in this Article 6 shall not apply to any such Executory Contract.

The Plan Proponents reserve the right to amend the Contracts Schedule and list of Executory Contracts to be rejected, assumed, or assigned to a transferee other than a Reorganized Debtor at any time prior to the Confirmation Hearing.

**C.    Cure Amounts.**

The applicable Reorganized Debtor or assignee, as applicable, will cure any and all undisputed defaults under any Executory Contract that is assumed or is to be assumed and assigned by such Reorganized Debtor under the Plan. On or before the deadline set forth in the Solicitation Procedures Order, the Debtors shall file and serve upon counterparties to such Executory Contracts, an Assumption Notice that: (a) lists the applicable Cure Claim

amount, if any; (b) lists the proposed assignee of the Executory Contract if an Entity other than the Reorganized Debtor; and (c) describes the procedures for filing objections to the proposed assumption, assumption and assignment, or assignment of the Executory Contract. Any objection by a counterparty to an Executory Contract to a proposed assumption, assumption and assignment, assignment or related Cure Claim amount must be filed, served and actually received by the Debtors on or before the deadline set forth in the Solicitation Procedures Order. Any counterparty to an Executory Contract that fails to object timely to the proposed assumption, assumption and assignment, assignment or Cure Claim amount related thereto will be deemed to have assented to such matters and will be deemed to have forever released and waived any objection to the proposed assumption (or assumption and assignment or assignment, as applicable) and Cure Claim amount. All such Cure Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 8 hereof. In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to assumption, such claim shall be deemed a Disputed Claim until the entry of a Final Order or orders resolving the dispute and approving the assumption. All Allowed Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made within 30 days following the entry of a Final Order or orders resolving the dispute and approving the assumption (which Final Order may be the Confirmation Order). If an objection to the proposed Cure Claim or any other term of the proposed assumption, assumption and assignment, or assignment of an Executory Contract is sustained by the Bankruptcy Court, the Debtors, solely at the direction of Spectrum Origination, or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract in lieu of assuming it.

**D.      Rejection Damage Claims.**

All Claims for damages arising from the rejection of Executory Contracts pursuant to the Plan or the Confirmation Order must be filed with the Bankruptcy Court in accordance with the terms of the order authorizing such rejection, but in any event no later than 30 days after service of the Effective Date Notice. All Allowed Claims arising from the rejection of Executory Contracts shall be classified as General Unsecured Claims (unless the Bankruptcy Court determines or the Holder of such Claim agrees that such Claims should be subordinated to a priority lower than a General Unsecured Claim pursuant to section 510 of the Bankruptcy Code).

Any counterparty with a Claim arising from the rejection of an Executory Contract that fails to timely file such Claim shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Debtors, the Reorganized Debtors, or their respective Properties and Estates. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 8 hereof.

### E.    Previously Assumed Executory Contracts.

Notwithstanding anything to the contrary in an Executory Contract that was assumed by a Debtor by Order of the Bankruptcy Court entered prior to the Confirmation Date (a "Previously Assumed Contract"), upon the occurrence of the Effective Date, the applicable Reorganized Debtor may assign such Previously Assumed Contract to an assignee identified in the Contracts Schedule in accordance with section 365(f) of the Bankruptcy Code.

### F.    Insurance Policies.

With respect to insurance policies, each such insurance policy whether or not identified as assumed on the Contracts Schedule shall be assumed as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy (a) previously was rejected by the Debtors pursuant to a Bankruptcy Court order, (b) is identified as rejected on the Contracts Schedule, or (c) is the subject of a motion to reject pending on the Effective Date.

The discharge, injunction and release provisions set forth in Article 8 of the Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors, or any other Entity.

### G.    Post-Petition Date Contracts and Leases.

The Debtors shall not be required to assume or reject any contract or lease entered into by the Debtors after the Petition Date. Such contracts and leases will continue in effect after the Effective Date and will be performed by the Reorganized Debtors or assignee thereof in the ordinary course of business in accordance with their terms.

### H.    Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease on the Contracts Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors, the Senior Lender or the Reorganized Debtors that any such contract or lease is in fact an Executory Contract or that any Debtor or Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE 7.
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**A.** **Conditions to Confirmation.**

Confirmation of the Plan by the Bankruptcy Court is subject to the following conditions precedent:

**1.** The Disclosure Statement shall have been approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, and notice having been given to all relevant parties in accordance with applicable Bankruptcy Rules; and

**2.** The Plan and Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, including the Contracts Schedule, have been filed in substantially final form satisfactory to the Senior Lender in its sole discretion.

**B.** **Conditions to the Effective Date.**

**1.** *General Effective Date Conditions.* The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived pursuant to Article 7.C of the Plan:

**(i)** The Confirmation Order, in form and substance reasonably satisfactory to Spectrum Origination and the Debtors, shall have been entered and shall not be stayed. It is not a requirement that the Confirmation Order be a Final Order;

**(ii)** All material authorizations, consents, and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained; and

**(iii)** All material actions, documents and agreements necessary to implement the Plan shall have been executed, exchanged, and are effective.

**2.** *Lapsed Refinancing Confirmation Option Effective Date Conditions.* The Plan may no longer be implemented pursuant to the Refinancing Confirmation Option, as the RCO Deadline expired prior to the submission of this Plan.

**3.** *Conversion Confirmation Option Effective Date Conditions.* For the Plan to be implemented pursuant to the Conversion Confirmation Option, the Plan shall not become effective unless and until it has been confirmed and the following conditions, in addition to those in Article 7.B.1, have been satisfied in full or waived pursuant to Article 7.C of the Plan:

**(i)** [Reserved];

**(ii)**     [Reserved];

**(iii)**    The Amended and Restated Charter Documents and the New RREAF Manager LLC Agreements shall have been amended or entered into as provided in Article 4.E.3 of the Plan, each in form and substance satisfactory to Spectrum Origination;

**(iv)**    The New RREAF Manager LLC Interests to be issued pursuant to Article 4.E.3 of the Plan shall be consistent with the Plan;

**(v)**     Each of Spectrum Origination, the Guarantors and the Pledgors shall have executed an agreement effecting mutual releases of claims by and among such parties, in form and substance reasonably satisfactory to Spectrum Origination, the Guarantors, and the Pledgors, which releases shall carve out conduct relating to fraud or willful misconduct; provided, however, that such agreement shall not release the Pledgors from their obligations under the Pledge Agreements and shall not release the Senior Lender's interest in the Pledged Equity;

**(vi)**    Each of the Plan Supplement Documents that relates to the Conversion Confirmation Option (other than the Pledged Equity Option and Agreed Mutual Release Agreement) shall be in form and substance satisfactory to Spectrum Origination  in its sole discretion; and

**(vii)**   The Pledged Equity Option and Agreed Mutual Release Agreement shall be in form and substance satisfactory to the Debtors and Spectrum Origination and shall have been executed and distributed in accordance with the Plan.

## C.     **Waiver of Conditions.**

**1.**     Notwithstanding the foregoing, the Debtors and Spectrum Origination (as applicable) reserve the right to waive the occurrence of one or more conditions precedent to Confirmation or the Effective Date or to modify the foregoing conditions precedent in accordance with and as provided in this Article 7.C. Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice (except that given to the Debtors or Spectrum Origination, as applicable), without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.

**2.**     Notwithstanding the satisfaction or waiver of each condition precedent to the Effective Date, the Effective Date shall not occur until the Debtors  or Spectrum Origination  file with the Bankruptcy Court a notice stating that the Effective Date has occurred. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

3.     The General Conditions to the Effective Date of the Plan set forth in Articles 7.B.1(ii) and (iii) above are waivable by agreement of the Debtors and Spectrum Origination.

4.     [Reserved].

5.     The Conversion Confirmation Option Conditions to the Effective Date set forth in Article 7.B.3 above are waivable as follows: (A) Articles 7.B.3(i), 7.B.3(ii), 7.B.3(iii), 7.B.3(v), and 7.B.3(vii) are each waivable only by agreement of the Debtors and Spectrum Origination; and (B) Articles 7.B.3(iv) and (vi) are each waivable only by Spectrum Origination.

6.     Except as expressly stated in this Article 7.C no other conditions to the confirmation of the Plan or the Effective Date may be waived.

## D.     Failure of Conditions.

The Plan may no longer be implemented pursuant to the Refinancing Confirmation Option. Subject to the satisfaction or waiver, as applicable, of the conditions to the Effective Date set forth in Articles 7.B.1 and 7.B.3 of the Plan, the Plan shall, upon the filing by the Senior Lender of a notice stating that the Effective Date has occurred, automatically be implemented pursuant to the Conversion Confirmation Option. If the Effective Date shall not have occurred on or prior to March 31, 2016, this Plan may no longer be implemented and shall be null and void without further action taken by any party or order of the Court.

## E.     Substantial Consummation.

"Substantial Consummation" of the Plan, as defined in section 1102(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE 8.
## DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A.     Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## B.     Vesting of Property.

Except as otherwise provided herein, on the Effective Date, the property of the Debtors' Estates shall automatically vest or revest in the Reorganized Debtors free and clear of all liens, Claims, charges, or other encumbrances. Except as specifically provided in the Plan or the Confirmation Order, the Reorganized Debtors and their property shall receive the benefit of any and all discharges under the Plan. On and after the Effective

Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate the Debtors' business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**C.     Cancellation of Notes and Equity Interests.**

As of the Effective Date, except as set forth herein with respect to the Claims of Spectrum Origination, all notes and securities evidencing Claims or Equity Interests and the rights thereunder of the Holders thereof shall be deemed canceled, null and void, and of no further force and effect, and the Holders thereof shall have no rights against the Debtors, the Reorganized Debtors, or the Estates except the right to receive the Distributions and other rights provided for in the Plan; provided, however, that (1) if the Plan is implemented pursuant to the Refinancing Confirmation Option, then the securities evidencing Equity Interests and the rights thereunder of the Holders thereof shall remain intact and shall be unaffected by the confirmation of the Plan; and (2) if the Plan is implemented pursuant to the Conversion Confirmation Option, then the notes and other documents underlying the Senior Lender Claims, other than those notes and Senior Lender Claims converted into the New RREAF Manager LLC Interests, shall remain in effect as set forth in Articles 3.D.2 and 4.B.2. of this Plan (and subject to the Redemption Option). For the avoidance of doubt, Liens, Claims, and encumbrances of the Senior Lender upon the exercise of the Conversion Confirmation Option shall be reinstated and remain in full force and effect against the Reorganized Debtors and their assets.

**D.     Discharge.**

**1.**     The rights, Liens and Claims of Senior Lender will remain in full force and effect against the Reorganized Debtors and will not be discharged.  All other rights, Claims, and Equity Interests, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors-in-Possession, or any of their respective assets or Properties, arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, the Confirmation Order shall act, as of the Effective Date, as a discharge of all debts of, Claims or Equity Interest against, and Liens on the Debtors, their respective assets and Properties, arising at any time before the Effective Date, regardless of whether a Proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder. Except as otherwise expressly specified in the Plan, after the Effective Date, any Holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or Properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.

**2.**     If the Plan had been implemented pursuant to the Refinancing Confirmation Option, then the securities evidencing Equity Interests and the rights thereunder of the

Holders thereof would remain intact and would be unaffected by the confirmation of the Plan; and (2) if the Plan is implemented pursuant to the Conversion Confirmation Option, then the notes and other documents underlying the Senior Lender Claims, other than those notes and Senior Lender Claims converted at the option of Spectrum into the New RREAF Manager LLC Interests, shall remain in effect as set forth in Articles 3.D.2 and 4.B.2. of this Plan (subject to the Redemption Option).

E.     **Releases.**

      1.     <u>**Releases by the Debtors**</u>.

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE EFFECTIVE DATE, THE DEBTORS, ON BEHALF OF THEMSELVES AND THEIR ESTATES, SHALL BE DEEMED TO RELEASE UNCONDITIONALLY, THE RELEASED SENIOR LENDER PARTIES AND THE RELEASED DEBTOR PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, CAUSES OF ACTION, DEBTS, OBLIGATIONS, RIGHTS, SUITS, JUDGMENTS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW OR AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE OR CIRCUMSTANCES, INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY THE DEBTORS, EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF ANY OF THE DEBTORS OR ESTATES AND FURTHER INCLUDING THOSE IN ANY WAY RELATED TO THE ESTATES, THE CHAPTER 11 CASES, OR THE PLAN, EXCEPT THAT (I) THE REORGANIZED DEBTORS SHALL NOT RELINQUISH OR WAIVE THE RIGHT TO ASSERT ANY OF THE FOREGOING AS A LEGAL OR EQUITABLE DEFENSE OR RIGHT OF SET OFF OR RECOUPMENT AGAINST ANY CLAIMS OF ANY SUCH ENTITIES ASSERTED AGAINST THE DEBTORS, (II) THE FOREGOING RELEASE SHALL NOT APPLY TO ANY OBLIGATIONS THAT REMAIN OUTSTANDING IN RESPECT OF LOANS OR ADVANCES MADE TO OTHER PERSONS OR ENTITIES BY THE DEBTORS, (III) THE FOREGOING RELEASE SHALL NOT IN ANY WAY RELEASE OR IMPAIR THE POTENTIAL EXERCISE OF THE REDEMPTION OPTION OR ANY OTHER RIGHTS OR CLAIMS RELATING TO ENFORCEMENT OF THE PLAN, (IV) THE FOREGOING RELEASE SHALL NOT BE A RELEASE OF ANY RELEASED SENIOR LENDER PARTY OR RELEASED DEBTOR PARTY'S FRAUD OR WILLFUL MISCONDUCT, AND (V)

THE FOREGOING RELEASE APPLIES TO THE RELEASED PARTIES SOLELY IN THEIR RESPECTIVE CAPACITIES DESCRIBED ABOVE.

### 2.    Mutual Releases Among and By Debtors and Senior Lender

EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, THE DEBTORS AND THE SENIOR LENDER SHALL BE DEEMED TO RELEASE ONE ANOTHER AND THEIR RESPECTIVE REPRESENTATIVES, AFFILIATES AND SUBSIDIARIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, CAUSES OF ACTION, DEBTS, OBLIGATIONS, RIGHTS, SUITS, JUDGMENTS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW OR AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE OR CIRCUMSTANCES (INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY THE DEBTORS) EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THEIR PROPERTY, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF ANY OF THE DEBTORS OR ESTATES AND FURTHER INCLUDING THOSE IN ANY WAY RELATED TO THE ESTATES, THE CHAPTER 11 CASES, OR THE PLAN, EXCEPT THAT (I) THE FOREGOING RELEASE SHALL NOT APPLY TO THEIR RESPECTIVE OBLIGATIONS ARISING UNDER THE PLAN, (II) NEITHER THE REORGANIZED DEBTORS NOR THE SENIOR LENDER SHALL RELINQUISH OR WAIVE THE RIGHT TO ASSERT ANY OF THE FOREGOING AS A LEGAL OR EQUITABLE DEFENSE OR RIGHT OF SET OFF OR RECOUPMENT AGAINST ANY CLAIMS OF ANY SUCH ENTITIES ASSERTED AGAINST THE DEBTORS OR THE SENIOR LENDER, (III) THE FOREGOING RELEASE SHALL NOT APPLY TO THE PLEDGED EQUITY OR OBLIGATIONS ARISING UNDER THE PLEDGE AGREEMENTS, (IV) THE FOREGOING RELEASE SHALL NOT APPLY TO THE REDEMPTION OPTION, (V) THE FOREGOING RELEASE SHALL NOT BE A RELEASE OF ANY RELEASED PARTY'S FRAUD OR WILLFUL MISCONDUCT, AND (VI) THE FOREGOING RELEASE APPLIES TO THE RELEASED PARTIES SOLELY IN THEIR RESPECTIVE CAPACITIES DESCRIBED ABOVE.

### F.    Exculpation.

Notwithstanding anything contained in the Plan to the contrary, the Released Parties shall neither have nor incur any liability to any direct or indirect Holder of a Claim or Interest, or a governmental entity on behalf of a Holder of a Claim or Equity Interest, for

any postpetition act taken or omitted to be taken in connection with, or related to, the Chapter 11 Cases, including but not limited to the formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; **provided**, **however**, that the foregoing provisions of this Article 8.F shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; **provided**, **further**, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties.

G.      **Preservation of Causes of Action.**

The Reorganized Debtors shall retain all Retained Causes of Action, other than as expressly provided in this Article 8 of the Plan (including the release and exculpation provisions of this Plan) or in a Final Order of the Bankruptcy Court. Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Retained Causes of Action. Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, Retained Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived or relinquished by the Plan. Retained Causes of Action may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Except as expressly provided in the Plan or the Confirmation Order, the Reorganized Debtors may settle any such Retained Causes of Action without Bankruptcy Court approval.

H.      **Injunctions.**

**1.**      Except as otherwise expressly provided for in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Parties and Entities who have held, hold, or may hold Claims or Equity Interests against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from:

**(i)**      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor or Reorganized Debtor, the Released Parties, or their respective successors and assigns and their respective assets and properties, with respect to any such Claim or Equity Interest;

**(ii)**      enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, Reorganized Debtor, or Released Party, or their respective successors and assigns and their respective assets and properties, on account of any such Claim or Equity Interest;

       **(iii)**    creating, perfecting or enforcing any encumbrance of any kind against any Debtor, Reorganized Debtor, or the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest;

       **(iv)**    asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor or Reorganized Debtor, or against the property or estate of any Debtor or Reorganized Debtor, on account of such Claim or Equity Interest, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim and adjudicated to be valid and enforceable by a Final Order of the Bankruptcy Court; or

       **(v)**    commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or cause of action released or settled hereunder.

**I.**      **Binding Effect of the Plan.**

       Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against or Equity Interest in the Debtors, the Estates, and their respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not the Holder has Filed a Claim. The rights, benefits, and obligations of any Entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such Entity (including, without limitation, any trustee appointed for the Debtors under Chapter 7 or 11 of the Bankruptcy Code).

**ARTICLE 9.**
**RETENTION OF JURISDICTION**

**A.**      **Retention of Jurisdiction.**

       Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Estates, all property of the Estates, and the Plan as is legally permissible, including, without limitation, jurisdiction to: (1) allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests; (2) grant, deny, or otherwise resolve any and all applications of Professionals or Entities retained in the Chapter 11 Cases for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date; (3) resolve any matters related to the assumption, assignment, or rejection of any Executory Contract to which a

46

Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom; (4) ensure that Distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan; (5) decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, provided, however, the right of the Reorganized Debtors to commence actions in all appropriate jurisdictions shall be fully reserved; (6) enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement; (7) resolve any cases, controversies, suits, or disputes that may arise in connection with the Effective Date, interpretation, or enforcement of the Plan, including any documents or agreements contained in the Plan Supplement, or any Entity's obligations incurred in connection with the Plan; (8) issue injunctions, enforce them, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan; (9) enforce Article 8.D, Article 8.E, Article 8.F, and Article 8.I hereof; (10) enforce the Injunctions set forth in Article 8.H hereof; (11) resolve any cases, controversies, suits, or disputes with respect to the releases, injunction, and other provisions contained in Article 8 hereof, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions; (12) enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated; (13) resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement; (14) enforce, implement, or interpret the Redemption Option and matters reasonably related thereto; and (15) enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE 10.
## MISCELLANEOUS PROVISIONS

### A. Final Fee Applications.

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of accrued Professional compensation shall be the Professional Fee Claim Bar Date.

### B. Payment of Statutory Fees.

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Reorganized Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each and every one of the Reorganized Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular

Reorganized Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

### C.      Modification of the Plan.

Subject to the limitations contained in the Plan: (a) prior to the entry of the Confirmation Order, the Plan may only be modified, amended, or withdrawn with the express written consent of both the Debtors and Spectrum Origination (and subject to compliance with section 1127 of the Bankruptcy Code); and (b) after the entry of the Confirmation Order, the Reorganized Debtors may, with the express written consent of Spectrum Origination, and upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  After entry of the Confirmation Order, no provision of the Plan concerning the Guarantors, the Redemption Option, the Pledged Equity, or the release of any claims against the Guarantors or Pledged Equity may be amended or modified without the express written consent of the Guarantors.

### D.      Revocation or Deferral of the Plan.

**1.**      Revocation of the Plan prior to entry of the Confirmation Order shall require the express written consent of both the Debtors and Spectrum Origination.

**2.**      If the Plan is revoked or withdrawn as permitted by Article 10.D.1 hereof, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

### E.      Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### F.      Governing Law and Construction.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof. Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of, and so as to give effect to, the Confirmation Order. All exhibits and schedules to the Plan

and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

**G.     Reservation of Rights.**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) the Debtors or the Senior Lender with respect to the Debtors, Holders of Claims, Equity Interests, or other parties-in-interest; or (b) any Holder of a Claim or other party-in-interest prior to the Effective Date.

**H.     Setoffs and Recoupment.**

The Reorganized Debtors, as applicable, may, to the extent permitted by sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim or Interest on which payments or distributions are to be made pursuant to the Plan, any Causes of Action or Retained Causes of Action of any nature whatsoever that the Debtors, the Reorganized Debtors, or the Estates may have against the Holder of such Claim or Interest; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim or Interest shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Estates of any right of setoff or recoupment that the Debtors, the Reorganized Debtors, or their respective Properties or Estates may have against the Holder of such Claim or Interest, nor of any other Cause of Action or Retained Cause of Action.

**I.     Section 1145 Exemption.**

Pursuant to, in accordance with, and solely to the extent provided under section 1145 of the Bankruptcy Code, if the Conversion Confirmation Option is implemented, the issuance of the New RREAF Manager LLC Interests and distribution or redemption thereof under the Plan will be exempt from registration under applicable securities laws (including without limitation, Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security). To the extent such issuance is deemed to be a public offering, the New RREAF Manager LLC Interests may be sold without registration in accordance with section 1145(a) of the Bankruptcy Code.

**J.     Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.**

**1.**     The Reorganized Debtors, the Senior Lender, and their respective designees, as applicable, shall be authorized to: (i) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (ii) certify or attest to any of the foregoing actions.

**2.**     Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, sales and use tax or similar tax: (a) any transaction undertaken to implement the terms of this Plan; (b) the transfer to the Reorganized Debtors of any Reorganized Debtors' assets at any time; (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements or agreements of consolidation, disposition, liquidation or dissolution executed in connection with any transaction pursuant to the Plan (including, if the Refinancing Confirmation Option is implemented, the Refinancing Transactions); (d) if the Conversion Confirmation Option is implemented, the issuance, transfer or exchange under the Plan of New RREAF Manager LLC Interests; and (e) the making or assignment of any lease or sublease.

**K.      Section 1125(e) Good Faith Compliance.**

The Debtors and their respective Representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**L.      Further Assurances.**

The Debtors, the Senior Lender, the Reorganized Debtors, all Holders of Claims and Equity Interests receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**M.      Service of Documents.**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

> To the Debtors:

> > c/o RREAF Holdings LLC
> > 4245 N. Central Expressway, Ste 420
> > Dallas, TX 75205
> > Attn: Kip Sowden, Chief Executive Officer

> *with a copy to*:

> > Holland & Knight LLP
> > 200 Crescent Court, Ste 1600
> > Dallas, TX 75201
> > Attn: Brent R. McIlwain

To the Senior Lender:

    c/o Spectrum Group Management
    1253 Springfield Ave, Ste 201
    New Providence, NJ 07974
    |Attn: Jeffrey Schaffer

*with a copy to*:

    c/o Spectrum Group Management
    1250 Broadway, 19th Floor
    New York, NY 10001
    Attn: Peter Locke

*with a copy to*:

    Haynes and Boone, LLP
    1221 McKinney Street, Suite 2100
    Houston, TX 77010
    Attn: Lenard M. Parkins

**N.**     **Filing of Additional Documents.**

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**O.**     **No Stay of Confirmation Order.**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

*[signature on following page]*

Dated:  February 8, 2016

RREAF O&G PORTFOLIO # 2 LLC

By:      /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

RREAF O&G PORTFOLIO # 2 MANAGER LLC

By:      /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

RREAF O&G PORTFOLIO # 3 LLC

By:      /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

RREAF O&G PORTFOLIO # 3 MANAGER LLC

By:      /s/ Webb M. ("Kip") Sowden III
         Webb M. ("Kip") Sowden
         Chief Executive Officer

SPECTRUM ORIGINATION LLC

By:      /s/ Jeffrey A. Schaffer
         Jeffrey A. Schaffer
         Managing Member

## **Exhibit B**

**Confirmation Notice**

(see attached)

#39036208

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **RREAF O&G PORTFOLIO #2 LLC;** | § | **LEAD CASE NO. 15-70094-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #2 MANAGER LLC;** | § | **CASE NO. 15-70095-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 LLC;** | § | **CASE NO. 15-70096-rbk** |
| | § | |
| **RREAF O&G PORTFOLIO #3 MANAGER LLC;** | § | **CASE NO. 15-70097-rbk** |
| | § | |
| **Jointly Administered Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 15-70094-rbk)** |
| | § | |

## NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE CONFIRMING THE SECOND AMENDED PLAN OF REORGANIZATION OF RREAF O&G PORTFOLIO #2 LLC, RREAF O&G PORTFOLIO #2 MANAGER LLC, RREAF O&G PORTFOLIO #3 LLC, AND RREAF O&G PORTFOLIO #3 MANAGER LLC PROPOSED BY THE DEBTORS AND SPECTRUM ORIGINATION LLC, AS MODIFIED

**PLEASE TAKE NOTICE** that on February ___, 2016, the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") entered its Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC Proposed by the Debtors and Spectrum Origination LLC, as Modified (the "Confirmation Order"), which confirmed the Second Amended Plan of Reorganization of RREAF O&G Portfolio #2 LLC, RREAF O&G Portfolio #2 Manager LLC, RREAF O&G Portfolio #3 LLC, and RREAF O&G Portfolio #3 Manager LLC proposed by the Debtors and Spectrum Origination LLC, as Modified (the "Plan") [1];

**PLEASE TAKE FURTHER NOTICE** that on February [__], 2016 (the "Effective Date"), the Effective Date occurred and the Plan was substantially consummated;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

#39036208

**PLEASE TAKE FURTHER NOTICE** that effective as of the Effective Date, except as otherwise provided in the Plan or Confirmation Order: (a) treatment of all Claims and Equity Interests shall be in full and final satisfaction, settlement, release, discharge, and termination of all Claims and Equity Interests of any nature whatsoever, whether known or unknown, against, any Equity Interests in, the Debtors, any property of the Estates, the Reorganized Debtors or property of the Reorganized Debtors; and (b) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date;

**PLEASE TAKE FURTHER NOTICE** that all final requests for payment of Administrative Claims must be filed and served so as to be actually received no later than thirty (30) days after the Effective Date;

**PLEASE TAKE FURTHER NOTICE** that all final requests for payment of Professional Fee Claims must be filed and served so at to be actually received no later than sixty (60) days after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan, the Plan Supplement, the Confirmation Order, or any other document filed in these cases may be obtained by either (a) contacting counsel for the Reorganized Debtors identified below, or (b) by using the PACER system by visiting ecf.txwb.uscourts.gov

/s/ Karl Burrer
HAYNES AND BOONE, LLP
Lenard M. Parkins
Karl Burrer
David Staab
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone:     (713) 547-2231
Facsimile:      (713) 236-5402

*Counsel for the Reorganized Debtors*

2

#39036208